UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

D'Pergo Custom Guitars, Inc.

    v.                                          Civil No. 17-cv-747-LM
                                                Opinion No. 2018 DNH 243

Sweetwater Sound, Inc.

## O R D E R

D'Pergo Custom Guitars, Inc. ("D'Pergo") brings this suit against Sweetwater Sound, Inc. ("Sweetwater"), alleging claims of copyright and trademark infringement and violations of the New Hampshire Consumer Protection Act ("CPA"). D'Pergo claims that Sweetwater used a copyrighted photograph of D'Pergo's trademarked custom guitar necks to promote and sell Sweetwater products on Sweetwater's website. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Sweetwater moves to dismiss Counts II through V of the first amended complaint—the CPA claims and the trademark infringement claims. Sweetwater also moves to strike D'Pergo's request for attorney's fees under Count I (copyright infringement). D'Pergo objects. For the following reasons, Sweetwater's motion to dismiss is denied and its motion to strike is granted.

**STANDARD OF REVIEW**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, and draw all reasonable

inferences from those facts in the plaintiff's favor.  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71, 75 (1st Cir. 2014).  In addition to the complaint, the court may consider documents attached to it or expressly incorporated into it.  Id. at 72.  It must then "determine whether the factual allegations in the plaintiff's complaint set forth 'a plausible claim upon which relief may be granted.'"  Id. at 71 (internal quotation marks omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

**BACKGROUND**

The following facts are taken from D'Pergo's first amended complaint and the attached documents.  D'Pergo manufactures and sells custom guitars.  In 2003, D'Pergo created a photograph showcasing a number of its unique guitar necks, which it published to its website.  D'Pergo later registered the copyright for the photograph and registered its signature guitar neck headstock as a trademark.  Doc. nos. 44-2, 44-4.

Sweetwater is a retailer that sells musical instruments, including guitars, through its website.  D'Pergo alleges that Sweetwater copied D'Pergo's photograph and published it on

2

Sweetwater's website.  More specifically, Sweetwater used the photograph in an "Electric Guitar Buying Guide," in the section titled "Guitar necks explained."  Doc. no. 44-3 at 2, 5.  The end of the Buying Guide features a number of guitars from various manufacturers for purchase, as well as a hyperlink to "Shop for Electric Guitars."  Id. at 7-8.

In December 2017, D'Pergo brought this action alleging claims of copyright infringement (Count I), unfair competition in violation of the CPA (Count II), and deceptive business practices in violation of the CPA (Count III) based upon Sweetwater's use of the photograph on its website.  D'Pergo's first amended complaint added two additional counts: false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a)(1) (Count IV) and trademark infringement in violation of 15 U.S.C. § 1114(1)(a) (Count V).

## DISCUSSION

Sweetwater moves to dismiss Counts II through V.  The court will first address Sweetwater's arguments concerning the two state law claims, and then turn to the two trademark infringement claims.

I.  New Hampshire Consumer Protection Act Claims (Counts II and III)

Counts II and III allege that Sweetwater's use of D'Pergo's photograph constituted unfair competition and a deceptive business practice in violation of the CPA, New Hampshire Revised Statutes Annotated ("RSA") chapter 358-A. Specifically, D'Pergo alleges that, by using the photograph, Sweetwater has "passed off [its] goods, specifically guitars, for purchase and sale" as D'Pergo's goods, and that Sweetwater's use of the photograph is likely to cause confusion as to the source or origin of Sweetwater's goods and their affiliation with D'Pergo. Doc. no. 44 at ¶¶ 47-48, 52.[1]

Sweetwater contends that Counts II and III should be dismissed for many of the same reasons it argues that the trademark infringement claims, Counts IV and V, should be dismissed. See doc. no. 45 at 7, 11-12. Its arguments are based on the premise that, in order to state a viable CPA claim, D'Pergo must allege that it used the photograph itself as a trademark or otherwise successfully allege a trademark

---

[1] Sweetwater has twice unsuccessfully tried to dismiss the CPA claims. See doc. nos. 18 (denying Sweetwater's motion to dismiss Counts II and III as preempted by federal law), 30-1 at 7 (Sweetwater's objection to D'Pergo's motion to amend complaint, arguing state claims were futile).

infringement claim. See id. at 11-12, doc. no. 53 at 4. The court disagrees with this premise.

The CPA makes it "unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." RSA 358-A:2. Prohibited acts include, but are not limited to:

> I. Passing off goods or services as those of another;
> II. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
> III. Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another.

RSA 358-A:2, I-III. By its plain language, the CPA does not require proof of an underlying trademark or trademark infringement claim in order to bring a CPA claim. Compare RSA 358-A:2, with RSA 350-A:11 (authorizing cause of action for infringement of state registered trademark). Instead, the CPA prohibits a broader range of unlawful activity than federal trademark law. See Ne. Lumber Mfrs. Assoc. v. N. States Pallet Co., 710 F. Supp. 2d 179, 188 (D.N.H. 2010). It may well be that conduct that constitutes federal trademark infringement is also prohibited by the CPA. See RSA 358-A:2, II-III (prohibiting causing likelihood of consumer confusion as to source or affiliation of goods); 15 U.S.C. § 1125(a) (authorizing civil action for use of trademark in commerce that

is likely to cause confusion as to the affiliation or association of user with another person). But that does not make the opposite true—conduct need not necessarily constitute trademark infringement in order to be prohibited by the CPA. Thus, even assuming that the complaint fails to allege that Sweetwater used the photograph as a trademark or otherwise fails to state a claim for trademark infringement, that deficiency is not necessarily fatal to D'Pergo's CPA claims. Sweetwater's motion to dismiss Counts II and III is therefore denied.

II. <u>Trademark Infringement Claims (Counts IV and V)</u>

D'Pergo's first amended complaint added two claims related to Sweetwater's alleged infringement of D'Pergo's trademark, which is a distinctive design for its guitar necks:

 

Doc. nos. 44-4 at 2, 44-5 at 2 (resized from originals). Both claims allege that Sweetwater's display of the photograph

depicting D'Pergo's trademarked guitar necks on Sweetwater's website is likely to cause confusion and mislead customers into believing that Sweetwater's goods are affiliated or connected with D'Pergo.  Count IV appears to rest on the fact that D'Pergo's guitar neck trademark is unregistered, while Count V appears to rest on the fact that the trademark is federally registered.  See Borinquen Biscuit Corp. v. M.V. Trading Corp., 443 F.3d 112, 117 (1st Cir. 2006) ("Both registered and unregistered trademarks may be eligible for protection against infringing uses.").  These distinct claims exist because Sweetwater allegedly engaged in infringement both prior to and after the official registration of D'Pergo's trademark.  See doc. nos. 44-3 at 2 (Sweetwater's Electric Guitar Buying Guide featuring the allegedly infringing photograph, published in May 2013), 44-4 at 2 (D'Pergo's trademark registration, effective August 2016).  Despite this distinction, most of Sweetwater's arguments apply to both Counts IV and V.  The court therefore addresses those claims together, unless otherwise noted.

Sweetwater advances four arguments in support of its motion to dismiss Counts IV and V.  The court addresses each in turn.

A.  Use as a Trademark

Sweetwater argues that the complaint fails to state viable claims for trademark infringement because it does not allege

7

that Sweetwater engaged in a "trademark use" of D'Pergo's signature guitar necks. Doc. nos. 45 at 4-6, 53 at 4-6. In other words, Sweetwater contends that it used the photograph depicting the trademarked guitar necks in a "non-trademark way," i.e. in an informational capacity that did not suggest an association between Sweetwater and D'Pergo. The court is not persuaded.

The fact that a defendant engaged in a "trademark use" of the plaintiff's trademark is not a separate element of a trademark infringement claim in the First Circuit. To establish a claim for trademark infringement, a plaintiff must demonstrate that: (1) its mark merits protection; and (2) the allegedly infringing use is likely to cause consumer confusion. Borinquen Biscuit, 443 F.3d at 116. In assessing the likelihood of consumer confusion, the First Circuit considers eight non-exclusive factors, none of which carries dispositive weight. See id. at 120; see also Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp., 376 F.3d 8, 15 (1st Cir. 2004).

Notwithstanding this controlling authority, Sweetwater does not address the eight-factor test and instead relies primarily on Sixth Circuit precedent in support of its position. In the Sixth Circuit, the "likelihood of consumer confusion" analysis "involves a preliminary question: whether the defendants are

using the challenged mark in a way that identifies the source of their goods." Hensley Mfg. v. ProPride, Inc., 579 F.3d 603, 610 (6th Cir. 2009) (internal quotation marks omitted); see also Interactive Prod. Corp. v. a2z Mobile Office Sols., Inc., 326 F.3d 687, 695 (6th Cir. 2003). If defendants are not, then the mark is being used in a "non-trademark" way and the eight-factor analysis applicable in the First Circuit does not even apply. See Hensley, 579 F.3d at 610.

The First Circuit has not ruled on this approach.[2] Accordingly, the court will neither apply that approach here nor dismiss Counts IV and V because the complaint fails to allege that Sweetwater engaged in a "trademark use" of D'Pergo's trademarked guitar neck design.

B. Timing of Registration of Trademark

Sweetwater next argues that Count V fails to state a valid claim of trademark infringement because the complaint does not allege any instances of Sweetwater's infringing use occurring after the issuance of the federal trademark registration in

---

[2]At least one Circuit Court of Appeals has rejected the Sixth Circuit's "use as a trademark" rule, and commentators have criticized it. See Kelly-Brown v. Winfrey, 717 F.3d 295, 307-08 (2d Cir. 2013) (declining to adopt Sixth Circuit's "use as a trademark" requirement); 4 McCarthy on Trademarks and Unfair Competition § 23:11.50 (5th ed.) (expressing view that Sixth Circuit's "use as a trademark" rule "finds no support either in the Lanham Act or in precedent").

9

August 2016.³  See doc. nos. 45 at 7-8, 53 at 6-7.  Drawing all reasonable inferences from the facts alleged, however, the first amended complaint alleges Sweetwater's ongoing use of the federally registered trademark.  See doc. no. 44 at ¶¶ 14-18, 25-27, 56-60, 66-70.  Although the complaint could be more precise about the timing of Sweetwater's alleged infringement, the allegations suffice to withstand a Rule 12(b)(6) motion.

 Sweetwater also contends that the complaint is deficient in that it does not specifically allege that Sweetwater continued its infringing use after receiving D'Pergo's notice to take down the photograph ("takedown notice").  Doc. no. 45 at 6.  This argument appears to be based on Sweetwater's assertion that it took the infringing photograph down from its website on January 6, 2016—two days after D'Pergo issued a takedown notice and eight months prior to the date D'Pergo registered its trademark (August 23, 2016).  See doc. no. 30-1 at 4.  At this phase of the proceedings, however, the court may not consider those facts, drawn from outside the complaint.  See Foley, 772 F.3d at 71-72.  Examining the allegations in the complaint, one could

---

³Although Sweetwater asserts this argument as to both Counts IV and V, the court considers it only as to Count V.  As explained above, the court construes Count IV as a claim for infringement of an unregistered trademark.  Therefore, the timing of trademark registration is not germane to that claim.

10

reasonably infer that Sweetwater did not take down the photograph: it alleges that D'Pergo notified Sweetwater of its improper use in January 2016, Sweetwater admitted it had used the photograph on its website, and Sweetwater claimed its use was "fair use," implying that it thought the use was legal. Doc. no. 44 at ¶¶ 17-18.

### C. Trade Dress or Trademark Infringement

Sweetwater characterizes Counts IV and V as based on a claim of "trade dress" infringement rather than trademark infringement. A "trademark" is "any word, name, symbol, or device, or any combination thereof" used to identify and distinguish goods "from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. By contrast, "trade dress" is "the design and appearance of a product together with the elements making up the overall image that serves to identify the product presented to the consumer." Yankee Candle Co. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 38 (1st Cir. 2001) (internal quotation marks omitted). Trade dress has two varieties: product packaging and "product design/configuration." Id.

Both trademarks and trade dress are eligible for federal trademark protection. See id. at 37-38. Trade dress infringement claims, like trademark infringement claims, require

11

proof that the mark is "distinctive."  See id. at 38 (as to trade dress); Borinquen Biscuit, 443 F.3d at 116 (stating that, in order to meet the first requirement of meriting protection, trademark must be "distinctive").  "Distinctiveness" may be established in two ways: a mark is "considered distinctive (and, thus, eligible for trademark protection) if it either is inherently distinctive or exhibits acquired distinctiveness gained through secondary meaning."  Borinquen Biscuit, 443 F.3d at 116-17; see also Yankee Candle, 259 F.3d at 38.  However, the Supreme Court has held that trade dress of "product design" can never be "inherently distinctive," and therefore is only deserving of protection if plaintiff shows that the trade dress has acquired distinctiveness through secondary meaning.  See Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 214-16 (2000).  It is upon this legal principle that Sweetwater attempts to capitalize.  Sweetwater argues that viewing Counts IV and V as claims for trade dress protection of product design, the complaint fails to allege that the trade dress acquired distinctiveness through secondary meaning prior to Sweetwater's first use.  Doc. no. 45 at 11.

Even assuming for the sake of argument that Counts IV and V are premised upon product design "trade dress" rather than trademark, the complaint contains an allegation that the guitar

12

neck design acquired distinctiveness through secondary meaning. The complaint alleges that D'Pergo has used its unique guitar neck design since 2002. Doc. no. 44 at ¶ 23. The complaint asserts that D'Pergo guitars are known nationally and internationally for their "unique and distinctive headstock" and that the headstock has "become exclusively identified" with D'Pergo. Id. at ¶¶ 19, 67; see Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 13 (1st Cir. 2008)(defining acquisition of "secondary meaning" as when a mark "becomes associated with a single commercial source").

Although the complaint does not specify the time of Sweetwater's first alleged infringing use, the Electric Guitar Buying Guide was published in 2013, over a decade after D'Pergo began using the guitar neck design.[4] See doc. no. 44-3 at 2. Drawing all reasonable inferences in D'Pergo's favor, the complaint alleges that D'Pergo's guitar neck design acquired distinctiveness through secondary meaning prior to Sweetwater's first infringing use. Thus, even assuming Counts IV and V assert trade dress infringement claims, the court is not

---

[4] Based upon ongoing discovery, Sweetwater maintains that its first use of the photograph occurred between August 2003 and August 2004. See doc. no. 45 at 11. The court must, however, confine its analysis to the allegations in the complaint and attached documents. See Foley, 772 F.3d at 71-72.

13

persuaded that they should be dismissed for the reasons asserted by Sweetwater.

D.  Fair Use Defense

Sweetwater also argues that Counts IV and V should be dismissed because it engaged in "fair use" of D'Pergo's trademark.  "Fair use" is a statutory affirmative defense to a trademark infringement claim.  See 15 U.S.C. § 1115(b)(4); KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111, 114 (2004).  An affirmative defense like fair use may be adjudicated on a Rule 12(b)(6) motion if certain conditions are met.  In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003).  It is appropriate to dismiss an action based on an affirmative defense only if: "the facts that establish the defense [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of public record, and other matters of which the court may take judicial notice" and those facts "conclusively establish the affirmative defense."  Id.

The fair use defense allows a defendant to use the plaintiff's trademark for descriptive purposes, usually to describe the defendant's own product.  See Int'l Ethical Labs., Inc. v. Advance Generic Corp., No. CV 10-1381 (ADC), 2011 WL 13232287, at *6 (D.P.R. Mar. 31, 2011).  To successfully assert

14

this affirmative defense, the defendant must prove that the use was made: (1) other than as a mark; (2) in a descriptive sense; and (3) in good faith. Kelly-Brown v. Winfrey, 717 F.3d 295, 305 (2d Cir. 2013). Addressing the third element (good faith) first, the complaint does not conclusively establish it. Indeed, the complaint alleges the opposite.

A defendant's "intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship" is evidence of bad faith. Id. at 312 (internal quotation marks omitted); see also Int'l Stamp Art, Inc. v. U.S. Postal Serv., 456 F.3d 1270, 1274-75 (11th Cir. 2006). Here, the complaint alleges that Sweetwater used D'Pergo's trademark guitar headstock in the Electric Guitar Buying Guide "to capitalize off the significant goodwill associated with" D'Pergo's trademark. Doc. no. 44 at ¶ 72. It also alleges that Sweetwater's infringement of D'Pergo's trademark "is knowing, willful, deliberate, fraudulent, and intentional, and was made with knowledge that such violation would enhance [Sweetwater's] image, sales, and reputation by association with [D'Pergo]." Id. at ¶ 76. In light of these allegations, it cannot be said that the complaint conclusively establishes the element of good faith, or the defense of fair use.

In sum, the court is unpersuaded by Sweetwater's arguments in support of its motion to dismiss Counts IV and V. Its motion to dismiss those counts is denied.

III. Punitive Damages

The complaint includes a general request in the prayer for relief for "an award of exemplary or punitive damages in an amount to be determined by the Court." Doc. no. 44 at ¶ G. Sweetwater imputes this general request to each of D'Pergo's five claims and argues that the request must be dismissed because punitive damages are not an available remedy for any of those claims. Doc. no. 45 at 8-10. The court is not convinced.

A general request for punitive damages is not a "claim for relief" within the meaning of Federal Rule of Civil Procedure 8(a)(2), but a request for a remedy. See Murphy v. Wal-Mart Stores, Inc., No. CIV. 00-117-B, 2001 WL 253426, at *4 (D. Me. Mar. 13, 2001)("'Punitive damages' is not a claim but a remedy."). As such, the court will not dismiss D'Pergo's request for punitive damages at this stage of the proceedings. See, e.g., Douglas v. Miller, 864 F. Supp. 2d 1205, 1220 (W.D. Okla. 2012) ("[W]hether [punitive] damages are recoverable is not a proper subject for adjudication in a Rule 12(b)(6) motion, as the prayer for relief is not a part of the cause of action."); Elias v. Navasartian, No. 115CV01567LJOGSAPC, 2017 WL

1013122, at *4 (E.D. Cal. Feb. 17, 2017) (collecting cases supporting same proposition).

IV. Motion to Strike

Sweetwater does not move to dismiss the copyright infringement claim (Count I), but moves to strike D'Pergo's request for attorney's fees on that claim. Doc. no. 45 at 3-4. D'Pergo concedes that, pursuant to the court's prior order, see doc. no. 43 at 9, its request for attorney's fees associated with that claim must be stricken from the first amended complaint, see doc. no. 49-1 at 2. Therefore, Sweetwater's motion to strike D'Pergo's request for attorney's fees under Count I of the first amended complaint is granted. See doc. no. 44 at ¶ 45.

V. D'Pergo's Request for Attorney's Fees as Sanction

Finally, D'Pergo requests attorney's fees for having to respond to Sweetwater's motion to dismiss. Doc. no. 49-1 at 13. It argues that Sweetwater has previously unsuccessfully moved to dismiss its state law and trademark infringement claims and that the present motion "recycle[s] many of its failed arguments." Id.

Sweetwater's conduct does not warrant sanctions. Sweetwater previously moved to dismiss the state law claims on

17

different legal grounds, and the court specifically left open the possibility that Sweetwater could raise some of its trademark infringement arguments in later motion practice. See doc. nos. 18 (court order denying motion to dismiss state law claims as preempted by federal law), 43 at 7 (refusing to address one of Sweetwater's arguments in objection to D'Pergo's motion to amend complaint as insufficiently developed, but noting that Sweetwater was "free to raise [it] in the future"). D'Pergo's request for attorney's fees incurred in responding to the present motion to dismiss is denied. Cf. Mariani v. Doctors Assocs., Inc., 983 F.2d 5, 8 (1st Cir. 1993) (affirming imposition of sanctions for filing of second motion that "consisted of virtually verbatim argumentation from the first motion" on which party had not prevailed).

## CONCLUSION

For the foregoing reasons, Sweetwater's motion to dismiss Counts II through V of the first amended complaint is denied. Sweetwater's motion to strike D'Pergo's request for attorney's fees under Count I of the first amended complaint is granted. See doc. no. 44 at ¶ 45. Additionally, D'Pergo's request for

attorney's fees incurred in responding to the pending motion is denied.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

December 11, 2018

cc: Counsel of record