UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


D'Pergo Custom Guitars, Inc.

    v.                                      Civil No. 17-cv-747-LM
                                                Opinion No. 2019 DNH 008

Sweetwater Sound, Inc.


# **O R D E R**

D'Pergo Custom Guitars, Inc. ("D'Pergo") brings this suit against Sweetwater Sound, Inc. ("Sweetwater"), alleging claims of copyright and trademark infringement and violations of the New Hampshire Consumer Protection Act ("CPA"). D'Pergo alleges that Sweetwater used a copyrighted photograph of D'Pergo's trademarked custom guitar necks to promote and sell Sweetwater products on Sweetwater's website. Both D'Pergo and Sweetwater move to compel the opposing party to respond to discovery requests. For the reasons discussed below, both motions are granted in part and denied in part.

## **STANDARD OF REVIEW**

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . [which] need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A party may serve on

another party a request "to produce and permit the requesting party or its representative to inspect, copy, test, or sample" certain documents that are within the scope of Federal Rule of Civil Procedure 26(b) and are in the party's custody and control.  Fed. R. Civ. P. 34(a)(1).  "A party seeking discovery may move for an order compelling an answer, designation, production, or inspection.  The motion may be made if . . . (iv) a party fails to respond that inspection will be permitted-or fails to permit inspection-as requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B).

**BACKGROUND**

D'Pergo manufactures and sells custom guitars.  In 2003, D'Pergo created a photograph showcasing a number of its unique guitar necks, which it published to its website.  D'Pergo later registered the copyright for the photograph and registered its signature guitar neck headstock as a trademark.

Sweetwater is a retailer that sells musical instruments, including guitars, through its website.  D'Pergo alleges that Sweetwater copied D'Pergo's photograph and published it on Sweetwater's website.  More specifically, Sweetwater used the photograph in an "Electric Guitar Buying Guide," in the section titled "Guitar necks explained."  The end of the Buying Guide features a number of guitars from various manufacturers for

purchase, as well as a hyperlink to "Shop for Electric Guitars." Sweetwater admits that it used the photograph as early as August 5, 2004, and claims that it discontinued using the photograph within two days of receiving notice from D'Pergo on January 4, 2016.[1]  See doc. no. 63 at 5.

D'Pergo asserts five claims in its amended complaint: 1) copyright infringement in violation of the Copyright Act (Count I); 2) unfair competition in violation of the CPA (Count II); 3) deceptive business practices in violation of the CPA (Count III); 4) false designation of origin and unfair competition in violation of the Lanham Act (Count IV); and 5) trademark infringement in violation of the Lanham Act (Count V).

**DISCUSSION**

D'Pergo moves for an order compelling Sweetwater to provide further responses to D'Pergo's Request for Production and its First Set of Interrogatories.  See doc. no. 60.  Sweetwater moves for an order compelling D'Pergo to provide further responses to Sweetwater's first and second requests for production of documents.  See doc. no. 62.  The court first addresses D'Pergo's motion and then turns to Sweetwater's motion.

---

[1] To be consistent with the parties' filings, the court will refer to the photograph at the center of the parties' dispute as "the image."

I. D'Pergo's Motion

Broadly speaking, D'Pergo's motion focuses on the parties' disagreement over the effect of the three-year statute of limitations applicable to each of D'Pergo's claims in this case. Sweetwater refuses to produce any information prior to December 26, 2014, three years before D'Pergo filed this suit, arguing that such information is irrelevant because it is outside of the statute of limitations. In addition, Sweetwater contends that D'Pergo's requests are overbroad and that it would be unduly burdensome to respond.

A. Applicable Limitations Period

The parties agree that a claim under the Copyright Act must be brought within three years after the claim accrues. See 17 U.S.C. § 507(b). The parties further agree that D'Pergo's CPA claims and its trademark claims under the Lanham Act also have a three-year statute of limitations.[2] See RSA § 508:4, I. In addition, the parties agree for purposes of D'Pergo's motion

---

[2] The Lanham Act does not contain a statute of limitations, but courts most often apply analogous state statutes of limitations to federal Lanham Act claims. See Kusek v. Family Circle, Inc., 894 F. Supp. 522, 529 (D. Mass. 1995). The parties agree that the statute of limitations for analogous New Hampshire state-law claims is three years. See RSA § 508:4, I.

4

that D'Pergo's action is timely, meaning that its claims accrued
no earlier than December 26, 2014.[3]

Although the parties agree as to the appropriate
limitations period, they disagree as to its effect on discovery
about D'Pergo's damages. D'Pergo asserts that it is entitled to
discovery about information regarding Sweetwater's sales of
electric guitars beginning two years before Sweetwater began
using the image (in 2004) and continuing until it ceased using
the image (in 2014). In response, Sweetwater contends that
D'Pergo is entitled to no information for the period prior to
December 26, 2014, the earliest possible date that D'Pergo's
claims accrued.

In support of its position, Sweetwater relies almost
entirely on the Supreme Court's decision in Petrella v. MGM, 572
U.S. 663 (2014). In Petrella, the Supreme Court held that the
equitable defense of laches does not apply to claims for

---

[3] Although Sweetwater admits that it first used the image in
2004, for purposes of D'Pergo's motion, Sweetwater does not
dispute that D'Pergo discovered Sweetwater's use of the image on
or after December 26, 2014. The limitations period of a claim
under the Copyright Act begins when the plaintiff discovers, or
with due diligence should have discovered, the injury that forms
the basis for the claim. Warren Freedenfeld Assocs., Inc. v.
McTigue, 531 F.3d 38, 44-46 (1st Cir. 2008). D'Pergo's other
claims are also subject to the discovery rule. See RSA 508:4, I
(an action "shall be commenced within 3 years of the time the
plaintiff discovers, or in the exercise of reasonable diligence
should have discovered, the injury and its causal relationship
to the act or omission complained of"). Therefore, Sweetwater
concedes for purposes of D'Pergo's motion that D'Pergo's claims
are timely.

5

copyright infringement brought within the limitations period under the Copyright Act.[4]  See id. at 687.  Sweetwater seizes on the following language in Petrella:

> In sum, Congress provided two controlling time prescriptions: the copyright term, which endures for decades, and may pass from one generation to another; and <u>§ 507(b)'s limitations period, which allows plaintiffs during that lengthy term to gain retrospective relief running only three years back from the date the complaint was filed</u>.

Id. at 671 (emphasis added).  Sweetwater interprets this language from Petrella as limiting D'Pergo's right to recover damages on its Copyright Act claim—and, therefore, it's right to discover information—to three years prior to the date it filed its complaint in this action.

Sweetwater's argument is unpersuasive.  The language from Petrella upon which Sweetwater relies is dicta, as it "was a case about laches, and the holding is limited to that issue." [Grant Heilman Photography, Inc. v. McGraw-Hill Companies, Inc., 28 F. Supp. 3d 399, 411 (E.D. Pa. 2014)](#).  As D'Pergo notes, several defendants in Copyright Act cases have attempted to use the dicta quoted above from Petrella to limit a plaintiff's

---

[4] As discussed further below, the parties' arguments on the statute of limitations focus primarily on the impact of the language in Petrella and D'Pergo's Copyright Act claim.  For the reasons discussed below, the court focuses its analysis of the issue on the effect of the Copyright Act's limitations period, and need not address in detail the limitations period applicable to the CPA or the Lanham Act.

6

claim for damages. Courts have repeatedly rejected these attempts because the three-year look-back rule for damages does not apply when the discovery rule extends the limitation period. See PK Music Performance, Inc. v. Timberlake, No. 16-CV-1215 (VSB), 2018 WL 4759737, at *9-10 (S.D.N.Y. Sept. 30, 2018) (discussing and explaining damages under the discovery rule and discussing Petrella); Sohm v. Scholastic Inc., No. 16-CV-7098 (JPO), 2018 WL 1605214, at *11 (S.D.N.Y. Mar. 29, 2018) (The "Court rejects Scholastic's argument that damages [in a Copyright Action case] should be limited to three years before the filing of this case."); Mitchell v. Capitol Records, LLC, 287 F. Supp. 3d 673, 678 (W.D. Ky. 2017); Panoramic Stock Images, Ltd v. McGraw-Hill Glob. Educ. Holdings, LLC, No. 12 C 9881, 2015 WL 393381, at *2 (N.D. Ill. Jan. 27, 2015). Thus, information relating to a defendant's first infringing act, even when it occurs prior to the discovery of infringement, is discoverable. See Mitchell v. Universal Music Grp. Inc., No. 3:15-CV-174-JHM, 2018 WL 1573233, at *3 (W.D. Ky. Mar. 30, 2018), objections sustained in part and overruled in part sub nom. Mitchell v. Capitol Records, LLC, No. 3:15-CV-00174-JHM, 2018 WL 2011934 (W.D. Ky. Apr. 30, 2018) ("Mitchell's discovery requests for financial documents dating back to 1988 (or whatever date he believes defendants' first infringing act occurred on) are highly relevant to his claims, and defendants

7

cannot impose a three-year limitation period on the financial records they produce in discovery.").

Because D'Pergo is entitled to discovery pertaining to its claim for damages beyond the three-year limitations period in the Copyright Act, the court need not address Sweetwater's similar arguments pertaining to the limitations period applicable to D'Pergo's Lanham Act claims.[5]  The court notes, however, that Sweetwater does not cite any case in its objection to support its contention that damages for a timely-filed Lanham Act claim are limited by the analogous state statute of limitations.  And, as both parties acknowledge, courts in this circuit have allowed claims for damages under the Lanham Act for periods of time beyond the applicable limitations period.  See Venture Tape Corp. v. McGills Glass Warehouse, 540 F.3d 56, 64 (1st Cir. 2008) (upholding district court's award of three-and-a-half years' worth of damages in a Lanham Act case subject to a three-year statute of limitations); Santana-Cuesta v. Maldonado-Vargas, No. CV 14-1456 (CCC/BJM), 2016 WL 9459759, at *8 (D.P.R. Jan. 29, 2016) (awarding damages for seven years of infringing activity in a Lanham Act case), report and recommendation adopted, No. CV 14-1456CCC, 2016 WL 9458791 (D.P.R. Mar. 7, 2016).

---

[5] Neither party addresses the impact of the limitations period applicable to D'Pergo's CPA claims.

8

For those reasons, D'Pergo may seek information in support of its claim for damages from before December 26, 2014.

B. Scope of the Requests

Sweetwater contends that D'Pergo's requests are overbroad in that they seek information relating to Sweetwater's sales of electric guitars, rather than its sales of guitar necks. Sweetwater argues that because the image depicts only guitar necks, D'Pergo is limited to seeking information about Sweetwater's sales of that product.

There are two problems with Sweetwater's argument. First, D'Pergo's federal trademark registration for its Headstock Design, Registration No. 5,025,254, is registered for use of the class of both electric guitars and necks for electric guitars. See doc. no. 44-4 at 2. Second, the image appears in Sweetwater's Electric Guitar Buying Guide. See doc. no. 44-3. In that publication, Sweetwater provides an "anatomy of an electric guitar," which includes "tonewoods," bodies, and guitar necks. The publication ends with a link to "shop for electric guitars," as well as several listings and reviews for electric guitars.

In other words, the publication in which the image appears is one advertising the sale of electric guitars, not guitar necks. There is no option to purchase, nor a suggestion that an

9

individual reading the guide could purchase, a guitar neck without the remainder of the guitar. The image is included in the publication to aid purchasers in choosing the appropriate electric guitar.

For these reasons, D'Pergo is not limited to seeking information related to the sale of guitar necks only.

C. Burden of Producing Information

Sweetwater contends that responding to D'Pergo's discovery requests would be unduly burdensome. It argues that responding to D'Pergo's requests would require a review of millions of files and documents, necessitate thousands of work-hours, and cost tens of thousands of dollars in researching and copying expenses.[6]

For the reasons discussed above, D'Pergo is entitled to information concerning Sweetwater's profits from the sale of electric guitars during the time Sweetwater admits it used the image. In addition, D'Pergo's request for such information,

---

[6] Sweetwater also briefly contends that discovery should be limited to its sales of electric guitars having the headstock of the Fender brand of guitar because it is the only guitar with a neck similar to those shown in the image. The argument is without merit. Even were the court to accept Sweetwater's unsupported assertion that the Fender brand of guitar is the only brand that has a D'Pergo-style neck, D'Pergo's claim for damages is based, in part, on Sweetwater capitalizing on D'Pergo's reputation and goodwill by falsely suggesting to customers that it has an association with D'Pergo's brand.

beginning two years prior to Sweetwater's use of the image, is reasonably calculated to lead to admissible evidence, as it may be relevant to whether the use of the image led to increased profits for Sweetwater.

The court agrees with Sweetwater, however, that D'Pergo's discovery requests are disproportionate to the needs of the case. Fed. Energy Regulatory Comm'n v. Silkman, No. 1:16-CV-00205-JAW, 2017 WL 6597510, at *7 (D. Me. Dec. 26, 2017) (noting that the 2015 amendments to Federal Rule of Civil Procedure 26 "crystaliz[ed] the concept of reasonable limits on discovery through increased reliance on the common-sense concept of proportionality"). Although the sheer volume of the parties' filings suggests otherwise, this case involves a straightforward and limited set of factual allegations. Sweetwater allegedly used D'Pergo's image in its Electric Guitar Buying Guide for several years until D'Pergo requested that Sweetwater cease doing so. D'Pergo alleges that although Sweetwater did not advertise or sell D'Pergo guitars, customers were confused and believed that Sweetwater was in some way affiliated or associated with D'Pergo because Sweetwater used the image in its Guide. According to D'Pergo, this confusion both allowed Sweetwater to capitalize on D'Pergo's goodwill and tarnished D'Pergo's brand by suggesting that it was affiliated with Sweetwater.

Because D'Pergo's claims seek to recover any profits that Sweetwater gained from the alleged brand confusion, information relating to Sweetwater's profits from the sale of electric guitars during the relevant period is discoverable. On the other hand, D'Pergo fails to show how the vast majority of its 109 document requests are proportional to the needs of the case. For example, D'Pergo seeks detailed information concerning Sweetwater's photography techniques, its costs of shipping and advertising, all documents pertaining to electric guitars, and all documents and communications concerning advertising or design vendors Sweetwater retained. Even if this information contained some marginal relevance to D'Pergo's claims, D'Pergo has not shown that the discovery is proportional to the needs of the case.

Sweetwater shall provide D'Pergo with information showing its profit from the sales of electric guitars from August 2002 through January 6, 2016: two years before Sweetwater began using the image through the date it stopped using the image. Requiring Sweetwater to provide D'Pergo with this information will not be unduly burdensome to Sweetwater. To the extent D'Pergo moves to compel Sweetwater to provide information responsive to its requests or interrogatories outside of this limited category of information, the court denies the motion.

II. Sweetwater's Motion

Sweetwater moves for an order compelling D'Pergo to further respond to its First and Second Requests for Production of Documents. D'Pergo objects, arguing that its production complies with its discovery obligations.

A. First Request for Production

Sweetwater asserts that D'Pergo has failed to adequately respond to two specific requests in its First Request for Production: Request Nos. 127 and 145.

1. Request No. 127

Request No. 127 seeks: "Documents which indicate the purchaser's name, address, phone number any (sic) client identification code or number for the purchaser of any guitars from Plaintiff since January 1, 2013." D'Pergo objected to the request, contending that the request was overbroad and unduly burdensome. It further objected that the request was not proportional to the needs of the case, sought confidential information, and was irrelevant.

Other than claiming D'Pergo's objections are baseless, Sweetwater's sole response is that the request is relevant to D'Pergo's trade dress claim. The problem with Sweetwater's response is that D'Pergo is not asserting a trade dress claim in

13

this case.  Information relating to such a claim is, therefore, irrelevant.  Nevertheless, D'Pergo states that it has produced over 100 pages of documents in response to the request (and identifies those documents by Bates numbers), and maintains the remainder of its objections.

Sweetwater did not file a reply or argue that the production referenced in D'Pergo's objection is inadequate.  Therefore, the court denies Sweetwater's motion as to Request No. 127.

### 2. Request No. 145

Request No. 145 seeks: "Documents which indicate that consumers are likely to believe that goods sold by Defendant are provided by, sponsored by, approved by, licensed by, affiliated or associated with or in some way connected to Plaintiff as alleged in paragraph 39 of the Complaint."  D'Pergo asserted several objections to the request, including that it sought information protected by the attorney-client privilege and attorney work-product doctrine.  Notwithstanding its objections, D'Pergo produced documents responsive to the request.

Sweetwater does not appear to take issue with D'Pergo's production, but notes that D'Pergo has failed to provide a privilege log listing documents that it withheld as privileged in response to Request No. 145.  In its objection to

14

Sweetwater's motion, D'Pergo asserts that it has not withheld documents relating to this request on the basis of privilege, but that, to the extent it later withholds documents as privileged as it continues to supplement its production, it will produce a privilege log. Therefore, the court denies Sweetwater's motion as to Request No. 145 and, as such, denies the motion as to Sweetwater's First Request for Production.

B. Second Request for Production

Sweetwater seeks an order compelling D'Pergo to respond adequately to its Second Request for Production. Sweetwater takes issue with D'Pergo's responses to five categories of requests: 1) Requests relating to D'Pergo's trade dress claim; 2) Financial and sales documents created on or after August 5, 2004; 3) D'Pergo's past litigation history and communications through the Internet website www.thegearpage.net; 4) Documents exchanged between D'Pergo and one of its long-term customers, Julien Kasper; and 5) Documents supporting D'Pergo's statement in the proposed discovery plan that it had sustained damages in the amount of $50,000 in attorneys' fees and expert fees in connection with the case. The court separately addresses each category below.

1. Trade dress claim

Sweetwater points to 15 separate requests in its Second Request for Production which

> sought sales records, number and description of electric guitar necks produced, number and description of guitars produced, marketing and advertising, statements sent to press or third parties regarding alleged fame or notoriety, news press, reviews or critiques, and its employees' names and related information for the relevant period, all of which were directly focused on Plaintiff's initial use of, and the establishment of secondary meaning for, the alleged trade dress.

Doc. no. 62 at 7.[7] D'Pergo objected to the requests as irrelevant, unduly burdensome, and not likely to lead to admissible evidence. It produced no documents in response to the requests.

As noted above, D'Pergo is not asserting a trade dress claim and, therefore, Sweetwater fails to explain why the requested materials are relevant to any of the claims or defenses in this case. See Rutledge v. Elliot Health Sys., No. 17-cv-110-JD, 2018 WL 1187406, at *1 (D.N.H. Mar. 7, 2018) ("Initially, the party moving to compel bears the burden of showing that the discovery it seeks is relevant."). For that reason, the court denies Sweetwater's motion as to the requests seeking information related to a trade dress claim.

---

[7] These requests are Nos. 5, 7, 8, 9, 10, 12, 14, 16, 19, 20, 21, 22, 23, 24, and 25.

2. Post-August 2004 Financial and Sales Documents

Sweetwater points to two requests (Request Nos. 6 and 15) in which it sought from D'Pergo financial and sales documents for the period after August 5, 2004, when Sweetwater first used the image. Sweetwater contends that these requests focus on D'Pergo's continued use of the alleged trademark and brand up to the present date. According to Sweetwater, D'Pergo has produced no documents in response to these requests.

In its objection, D'Pergo states that it has "declined to produce this information because Defendant has vehemently asserted that any of Defendant's documents from period extending back beyond December 26, 2014 are not discoverable, and thus Plaintiff was declined (sic) to produce information in the event Defendant does not do the same." Doc. no. 65 at 10-11. In this order, the court has resolved this discovery dispute in D'Pergo's favor. See supra pp. 4-9. As the parties' "tit for tat" dispute is the sole basis for D'Pergo's failure to produce information in response to Requests 6 and 15, the court grants Sweetwater's motion as to those requests.

3. Litigation History and Website

Sweetwater seeks to compel D'Pergo to provide information relating to prior cases/lawsuits in which D'Pergo purportedly sued other defendants to recover for alleged damage to its brand

17

and reputation.  Sweetwater also seeks information relating to
D'Pergo's "communications to and through" the website
www.thegearpage.net.[8]  Sweetwater does not explain the relevancy
of this latter request.

As D'Pergo notes, Sweetwater mischaracterizes the nature of
its requests.  The requests at issue in this category seek
information relating to D'Pergo's activities on
www.thegearpage.com,[9] and do not seek any information relating to
D'Pergo's prior litigation.  As noted, Sweetwater fails to
explain the relevancy of these requests and, regardless, D'Pergo
represents that the website is a public discussion forum and all
information responsive to the requests is publicly available.
Therefore, the court denies Sweetwater's motion as to
information relating to www.thegearpage.net or
www.thegearpage.com.


   4.   Julien Kasper

In Request No. 17, Sweetwater seeks documents exchanged
between D'Pergo and Julien Kasper from January 1, 2002 through
the present.  In its motion to compel, Sweetwater asserts that

---

[8] The requests related to this category of information are Nos. 1, 2, 3, and 11.

[9] Although both parties refer to the website as "www.thegearpage.net" in their filings, the requests seek information related to www.thegearpage.com.  The discrepancy does not appear to be material to Sweetwater's motion.

Kasper is a long-term purchaser/customer of D'Pergo products and has specific knowledge of the alleged customer confusion, as shown in other documents produced by D'Pergo.

In response to Sweetwater's motion, D'Pergo states that it has produced documents responsive to Request No. 17. Sweetwater does not contest D'Pergo's representation. Therefore, the court denies Sweetwater's motion as it pertains to Request No. 17.

5. Documents related to fees

In the parties' proposed April 4, 2018 discovery plan, D'Pergo represented that it has incurred more than $50,000 in damages in seeking legal advice and in hiring an expert on photography. Request No. 18 seeks information relating to that claim for damages. D'Pergo has refused to provide any information responsive to Request No. 18, arguing that the costs it incurred are irrelevant and would require D'Pergo to disclose confidential and privileged information.

D'Pergo's justification for refusing to produce documents in response to Request No. 18 is unpersuasive. "'As a general matter, it is clear that discovery as to damages is proper.'" Barclay v. Gressit, No. 2:12-CV-156-JHR, 2013 WL 3819937, at *4 (D. Me. July 24, 2013) (quoting 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, Federal Practice and Procedure § 2008.4, at 194-95 (3d ed. 2010)). D'Pergo stated in the

proposed discovery plan that it incurred $50,000 "in damages" in seeking legal advice and hiring an expert. Sweetwater is entitled to all non-privileged information supporting that claim. Therefore, the court grants Sweetwater's motion as to Request No. 18 to the extent it seeks non-privileged information.[10]

**CONCLUSION**

For the foregoing reasons, D'Pergo's motion to compel (doc. no. 60) and Sweetwater's motion to compel (doc. no. 62) are granted in part and denied in part in accordance with this order.

SO ORDERED.

_____
Landye McCafferty
United States District Judge

January 14, 2019

cc: Counsel of Record.

---

[10] Both parties request that the court order the opposing party to pay the fees and costs associated with bringing their respective motions. The court finds that circumstances make the award of expenses unjust and declines to award fees and costs to either party. See Fed. R. Civ. P. 37(a)(5)(A)(iii).