UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

D'Pergo Custom Guitars, Inc.

    v.                                        Civil No. 17-cv-747-LM
                                               Opinion No. 2019 DNH 068

Sweetwater Sound, Inc.

**O R D E R**

D'Pergo Custom Guitars, Inc. ("D'Pergo") brings this suit against Sweetwater Sound, Inc. ("Sweetwater"), alleging claims of copyright and trademark infringement and violations of the New Hampshire Consumer Protection Act ("CPA"). D'Pergo alleges that Sweetwater used a copyrighted photograph of D'Pergo's trademarked custom guitar necks to promote and sell Sweetwater products on Sweetwater's website.

On January 14, 2019, the court granted in part and denied in part both parties' motions to compel. See doc. no. 76. Sweetwater moves for reconsideration of "two distinct issues" within that order, which it argues the court determined incorrectly. D'Pergo objects.

Separately, D'Pergo moves to withdraw and amend its responses to Sweetwater's Request for Admission, asserting that it has recently learned that its responses to three specific requests were incorrect. Sweetwater objects to D'Pergo's motion.

**BACKGROUND**

D'Pergo manufactures and sells custom guitars. In 2003, D'Pergo created a photograph showcasing a number of its unique guitar necks, which it published to its website. D'Pergo later registered the copyright for the photograph and registered its signature guitar neck headstock as a trademark.

Sweetwater is a retailer that sells musical instruments, including guitars, through its website. D'Pergo alleges that Sweetwater copied D'Pergo's photograph and published it on Sweetwater's website. More specifically, Sweetwater used the photograph in an "Electric Guitar Buying Guide," in the section titled "Guitar necks explained." The end of the Buying Guide features a number of guitars from various manufacturers for purchase, as well as a hyperlink to "Shop for Electric Guitars." Sweetwater admits that it used the photograph as early as August 5, 2004 and claims that it discontinued using the photograph within two days of receiving notice from D'Pergo on January 4, 2016.[1] See doc. no. 63 at 5.

D'Pergo asserts five claims in its amended complaint: (1) copyright infringement in violation of the Copyright Act (Count

---

[1] To be consistent with the parties' filings, the court will refer to the photograph at the center of the parties' dispute as "the image."

I); (2) unfair competition in violation of the CPA (Count II); (3) deceptive business practices in violation of the CPA (Count III); (4) false designation of origin and unfair competition in violation of the Lanham Act (Count IV); and (5) trademark infringement in violation of the Lanham Act (Count V).

**DISCUSSION**

I. <u>Sweetwater's Motion for Reconsideration</u>

Reconsideration of an order "is an extraordinary remedy which should be used sparingly." Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006) (internal quotation marks omitted). To succeed, a movant must "demonstrate that the order was based on a manifest error of fact or law . . . ." LR 7.2(d). Reconsideration is not "a vehicle for a party to undo its own procedural failures" or a means to "advance arguments that could and should have been presented to the district court prior to" its decision. Iverson v. City of Boston, 452 F.3d 94, 104 (1st Cir. 2006). As such, the court will not grant reconsideration based on arguments that were not previously made or based on arguments that were rejected in the prior order. Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014).

Sweetwater takes issue with two aspects of the court's order on the parties' motions to compel. Sweetwater contends that the court erred when it stated in that order: (1) D'Pergo

3

is not asserting trade dress infringement claims in this case;[2] and (2) Sweetwater included the image in its Electric Guitar Buying Guide to aid purchasers in choosing the appropriate electric guitar. According to Sweetwater, the court should reconsider these statements because the court "cites no authority or record evidence to support its statements" and both statements were "clear legal error" that would result in manifest injustice if allowed to stand. Doc. no. 78 at 1.

A. Trade Dress

The amount of time and energy the parties have devoted to litigating the issue of whether D'Pergo is asserting a trade dress infringement claim in this case borders on the absurd. First, in response to D'Pergo's motion to amend its complaint, Sweetwater objected, arguing that permitting D'Pergo to amend its complaint to assert the "trademark or trade dress" claims contained in Counts IV and V would be futile. Doc. no. 30-1 at 7. D'Pergo made it clear in its reply to the objection that it was asserting trademark, and not trade dress, infringement claims in those counts. See doc. no. 38 at 8 (classifying its claims as based on "trademark infringement"). The court granted D'Pergo's motion.

---

[2] Sweetwater contends that Counts IV and V, brought under the Lanham Act, are trade dress infringement claims.

Next, Sweetwater moved to dismiss Counts IV and V of the amended complaint, arguing that those claims were based on trade dress infringement and failed to state a viable claim for relief. D'Pergo objected, stating that it "has not however alleged in these counts (or any counts) that Defendant has infringed Plaintiff's <u>trade dress</u>." Doc. no. 49-1 at 10 (emphasis in original). D'Pergo reiterated that Counts IV and V assert claims based on trademark, and not trade dress, infringement.[3]

Finally, Sweetwater moved to compel D'Pergo to produce documents that were "critically relevant" to D'Pergo's trade dress claims. Doc. no. 62 at 4. In response, D'Pergo stated that it "<u>again</u> asserts that <u>it has not asserted a trade dress claim</u>. Plaintiff has informed Defendant of this several times." Doc. no. 65 at 7 (emphasis in original). Sweetwater did not file a reply to D'Pergo's objection. The court denied Sweetwater's motion to the extent it sought information related to a trade dress infringement claim because, as D'Pergo represented, D'Pergo had not asserted any trade dress infringement claim in this case. The court held that, therefore, Sweetwater had failed to carry its burden to show

---

[3] The court denied Sweetwater's motion to dismiss Counts IV and V, noting that even if the court assumed those claims were based on trade dress infringement, Sweetwater had not shown that those claims should be dismissed.

5

that the discovery it sought was relevant. See Rutledge v. Elliot Health Sys., No. 17-cv-110-JD, 2018 WL 1187406, at *1 (D.N.H. Mar. 7, 2018) ("Initially, the party moving to compel bears the burden of showing that the discovery it seeks is relevant.").

Sweetwater did not file a response to D'Pergo's objection to its motion to compel, in which D'Pergo again represented to the court that it was not asserting a trade dress infringement claim. Nevertheless, Sweetwater now argues that the court committed "clear legal error" by "rel[ying] on no authority" in support of its statement that D'Pergo has not asserted a trade dress infringement claim in this case. Doc. no. 78 at 4. Sweetwater contends that absent reconsideration, it will be significantly prejudiced and unable to mount a defense.

Sweetwater is mistaken in all respects. In reaching its conclusion as to the absence of a trade dress infringement claim in this case, the court relied on D'Pergo's repeated representations to Sweetwater and the court that Counts IV and V are not trade dress claims. Sweetwater appears to be under the misimpression that it is a defendant's prerogative to define a plaintiff's claim in whatever manner best lends itself to an adequate defense. That is not the way the law works. See Oldja v. Warm Beach Christian Camps & Conference Ctr., No. C09-0122, 2011 WL 13100726, at *1 (W.D. Wash. Oct. 25, 2011) (rejecting

defendant's motion for reconsideration which argued that the plaintiff's general negligence claim "was merely a duty to disclose claim in disguise," stating that the "Court is unwilling to permit Defendant to recharacterize Plaintiff's claim out of existence").

To the extent Sweetwater argues that it will be prejudiced absent reconsideration because it cannot mount a defense to D'Pergo's claims, that is simply not the case. Sweetwater will not be prejudiced because <u>no trade dress infringement claims exist in this case</u>.

To the extent after discovery Sweetwater believes that it is entitled to judgment on D'Pergo's trademark infringement claims asserted in Counts IV and V, Sweetwater may move for summary judgment on those claims. But to claim legal error entitling Sweetwater to relief on reconsideration is pure folly. Sweetwater's motion is denied to the extent it requests reconsideration of the court's order as to whether D'Pergo has asserted a trade dress infringement claim in this case.

B. <u>Purpose of Image in Electric Guitar Buying Guide</u>

D'Pergo moved to compel Sweetwater to produce information related to Sweetwater's sales of electric guitars. Sweetwater objected to requests to produce that information, arguing that the requests were overbroad "because the image depicts only

7

guitar necks" and, therefore, "D'Pergo is limited to seeking information about Sweetwater's sale of that product." Doc. no. 76 at 9.

In its order granting in part D'Pergo's motion to compel, the court noted that there were two problems with Sweetwater's argument. The first was that D'Pergo's federal trademark registration for its Headstock design is registered for use of the class of both electric guitars and necks for electric guitars. Id. As for the second problem with Sweetwater's argument, the court stated:

> [T]he image appears in Sweetwater's Electric Guitar Buying Guide. See doc. no. 44-3. In that publication, Sweetwater provides an "anatomy of an electric guitar," which includes "tonewoods," bodies, and guitar necks. The publication ends with a link to "shop for electric guitars," as well as several listings and reviews for electric guitars. In other words, the publication in which the image appears is one advertising the sale of electric guitars, not guitar necks. There is no option to purchase, nor a suggestion that an individual reading the guide could purchase, a guitar neck without the remainder of the guitar. <u>The image is included in the publication to aid purchasers in choosing the appropriate electric guitar</u>.

Id. at 9-10 (emphasis added).

Sweetwater challenges the last sentence, arguing that the court erred in making that "conclusory" determination without an evidentiary hearing and without citing any evidence. It requests that the court correct its "unsupported determination as to the purpose of including the image in the Electric Guitar

8

Buying Guide," absent which it contends it will suffer manifest injustice. Doc. no. 78 at 5.

The court notes for the sake of clarity that any conclusion set forth in the court's order on D'Pergo's motion to compel as to the purpose of the image is relevant only as to that order. It is not a factual finding that has preclusive effect for purposes of a motion for summary judgment or at trial. Thus, at worst, the impact of any error in that statement is that Sweetwater must produce sales information in discovery that may be overbroad. Overbroad discovery hardly rises to the level of "manifest injustice."

Regardless, Sweetwater has not shown any error. To the extent Sweetwater criticizes the court for resolving the parties' dispute without an evidentiary hearing, that argument is misplaced, as Sweetwater did not request either an evidentiary hearing or oral argument on D'Pergo's motion to compel. See doc. no. 63.

Sweetwater's reference to evidence in the record that purportedly refutes the court's conclusion is equally unavailing. Sweetwater points to the declaration of David Stewart, its Executive Vice President and Chief Marketing Officer. See doc. no. 32. Specifically, Sweetwater quotes paragraph six of the declaration, which provides:

> The Guide described the various parts and attributes of a typical electric guitar, allowing someone with limited experience with guitars to be more comfortable with the terminology of their parts and attributes. The Guide also highlighted photographs of the distinct "Gibson Les Paul Sunburst" and a diagram of the classic "Fender Stratocaster."

Id. at ¶ 6. According to Sweetwater, this portion of Stewart's affidavit "would negate [the court's] conclusory finding altogether." Doc. no. 78 at 5.

The problem for Sweetwater is twofold. First, it did not submit Stewart's declaration in its response to D'Pergo's motion to compel—indeed, Sweetwater did not mention the declaration or Stewart at all. Nor did Sweetwater respond in its objection or surreply to D'Pergo's argument as to the purpose of the image's placement in the Electric Guitar Buying Guide. Therefore, it cannot use a motion for reconsideration to advance those arguments. Biltcliffe, 772 F.3d at 930. To the extent Sweetwater faults the court for not taking it upon itself to search the record for any shred of evidence that could possibly support Sweetwater's position, that contention is unpersuasive.[4]

The second problem is that, in any event, Stewart's declaration is hardly inconsistent with the court's determination. Stewart states that the Electric Guitar Buying

---

[4] The court notes that Stewart's declaration is attached as an exhibit to Sweetwater's objection to D'Pergo's motion to amend its complaint. See doc. no. 30-2.

10

Guide lists the various parts of an electric guitar so that potential purchasers can become more comfortable with those parts. Nothing in Stewart's statement contradicts that: (1) the image appears in an "Electric Guitar Buying Guide"; (2) the publication ends with a link to purchase electric guitars; (3) the publication advertises electric guitars, not guitar necks; and (4) there is no option to purchase, or suggestion that a customer could purchase, guitar necks separately from electric guitars. To the extent Sweetwater argues that despite these facts, Stewart's statement conclusively shows that the purpose of the image in the Electric Guitar Buying Guide was <u>not</u> to aid in the purchase of electric guitars, that contention is without merit.

For all the aforementioned reasons, the court denies Sweetwater's motion for reconsideration.

## II. D'Pergo's Motion to Withdraw and Amend its Responses

D'Pergo moves to withdraw and amend its responses to three requests in Sweetwater's Request for Admission. Sweetwater objects.

Under [Federal Rule of Civil Procedure 36](), a party may serve written requests for admissions on another party. "A matter admitted under this rule is conclusively established unless the

court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

The court may allow the moving party to withdraw or amend its admissions "if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Id. Prejudice for purposes of Rule 36(b) is not simply that the proponent of the admission would have to prove the fact but instead requires a showing of a particular difficulty in proving the case such as the absence of a witness or evidence. Farr Man & Co., Inc. v. M/V Rozita, 903 F.2d 871, 876 (1st Cir. 1990); see Brook Village N. Assocs. v. Gen. Elec. Co., 686 F.2d 66, 70 (1st Cir. 1982). The party who requested the admission bears the burden of showing prejudice. See Dillon v. United States, 357 F. Supp. 3d 49, 56 (D. Mass. 2019). A court has "considerable discretion over whether to permit withdrawal or amendment of admissions made pursuant to Rule 36." Farr Man, 903 F.2d at 876.

D'Pergo moves to withdraw and amend its responses to requests number 9, 10, and 12 of Sweetwater's Request for Admission. All three responses state, in one form or another, that D'Pergo has not sold guitar necks separately from a completed guitar since January 1, 2013.

D'Pergo asserts that it learned that its responses to those three requests were not entirely accurate on November 15, 2018, when Sweetwater took the Rule 30(b)(6) deposition of D'Pergo's corporate representative, Stefan Dapergolas. The record shows that Sweetwater deposed Dapergolas twice: once on November 14, 2018 in Dapergolas's individual capacity, see doc. no. 83-5, and again the following day in his capacity as D'Pergo's corporate representative under Rule 30(b)(6), see doc. no. 83-4.

On November 14, Dapergolas testified as follows in his individual capacity:

> Q: Okay. How many necks do you sell without guitars?
>
> A: So I'll be very clear about this. I do not sell necks separate, apart from an instrument. I sell necks to someone who owns an authentic, genuine D'Pergo that is in need of a replacement neck, and the company has to install that neck.

Doc. no. 83-5 at 5. The following day, Dapergolas offered the following testimony as D'Pergo's Rule 30(b)(6) designee:

> Q: Yesterday you mentioned that you've sold a small number of necks as replacement for other D'Pergo necks; is that correct?
>
> A: Correct.
>
> Q: When did you sell your first?
>
> A: I don't recall the date.
>
> * * * * *
>
> Q: There haven't been too many of them, right?

> A: It's not been a lot. Maybe between a dozen and two dozen.
>
> Q: Really?
>
> A: Uh-hum.
>
> Q: I wouldn't have thought your number was that high, wow, okay. And you have no records on that, correct?
>
> A: I would have a recent record. Someone just purchased one this past – in the last few months, last year.
>
> Q: Your records would only be 2015 and later; is that correct?
>
> A: Sure, yes.

Doc. no. 83-4 at 4-5.

D'Pergo moves to withdraw and amend its responses to requests no. 9, 10, and 12 to reflect Dapergolas's deposition testimony. Sweetwater objects, largely on the ground that it would suffer prejudice if the court permits D'Pergo to amend its responses. To the extent Sweetwater addresses the first factor—whether allowing the amendment would promote the presentation of the merits of the action—it contends that the factor weighs against allowing withdrawal and amendment because D'Pergo fails to provide any "documentary evidence" to support its requested amendment. Doc. no. 88 at 2.

The court disagrees. D'Pergo has submitted the sworn deposition testimony of its Rule 30(b)(6) witness to support its request. Therefore, in light of this evidence, allowing D'Pergo

14

to amend its responses to reflect this testimony "would facilitate the development of the case in reaching the truth." Farr Man, 903 F.2d at 876.

As to the second factor, Sweetwater argues that allowing the amendment would severely prejudice it in defending this action. Specifically, Sweetwater states that it: (1) has already conducted depositions in New Hampshire, Massachusetts, and Florida in part based on D'Pergo's responses to its Request for Admission; (2) filed an action in the Trademark Trial and Appeal Board based in part on D'Pergo's responses; (3) would be forced to retake both Dapergolas's and potentially other depositions; and (4) would possibly be forced to amend its counterclaims.

In response, D'Pergo states that the only deposition Sweetwater took prior to November 15, 2018—the date of the Rule 30(b)(6) deposition—was that of Dapergolas in his individual capacity on the previous day. D'Pergo further represents that Sweetwater took only two depositions after November 15, 2018. Both deponents were D'Pergo customers and neither deposition included questioning related to the purchase of stand-alone guitar necks. D'Pergo also notes that Sweetwater filed its counterclaims, see doc. no. 77, and its amended petition with the Trademark Trial and Appeal Board in January 2019,

15

approximately two months after Dapergolas's depositions. Sweetwater does not dispute these assertions.

Sweetwater has not carried its burden to demonstrate prejudice. Although Sweetwater contends that it "has filed numerous pleadings and has conducted countless hours of discovery and research on the belief that Plaintiff does not sell stand-alone guitar necks," as D'Pergo has shown, that is an overstatement.[5] Because, as the court has noted in prior orders, both parties in this action have taken a scorched-earth approach to what amounts to a relatively simple dispute, this case is nowhere close to conclusion. The deadline for completion of discovery is not until July 1, 2019, and trial is not scheduled until November 13, 2019. Thus, Sweetwater has not shown that it will be prejudiced under the Rule 36(b) standard.[6]

---

[5] Indeed, D'Pergo notes that Sweetwater served its first requests for production, which included 169 requests, over one month prior to receiving D'Pergo's responses to its Request for Admission.

[6] Sweetwater also complains about D'Pergo's "undue delay" in bringing this motion. Although not included in the Rule 36(b) standard, certain "courts have been willing to consider a party's lack of diligence as a reason to deny withdrawal of admissions." Zimmerman v. Cambridge Credit Counseling Corp., 529 F. Supp. 2d 254, 265 (D. Mass. 2008). Because time remains in the discovery schedule, the delay has not prejudiced Sweetwater.

For these reasons, the court grants D'Pergo's motion to withdraw and amend its response to Sweetwater's Request for Admission.[7]

**CONCLUSION**

For the foregoing reasons, Sweetwater's motion for reconsideration (doc. no. 78) is denied and D'Pergo's motion to withdraw and amend its responses to Sweetwater's Request for Admission (doc. no. 83) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

April 18, 2019

cc: Counsel of Record

---

[7] Sweetwater requests that if the court grants D'Pergo's motion, the court award "attorney fees and costs Defendant will incur for new depositions, amending pleadings, etc." Doc. no. 88. The court has considered the request and denies it.