# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

|  |  |  |
|---|---|---|
| D'Pergo Custom Guitars, Inc., | ) ) ) ) | |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Civil Action No. 1:17-CV-000747-LM |
| Sweetwater Sound, Inc., | ) ) | |
| *Defendant.* | ) ) ) ) | |

**<u>PRELIMINARY EXPERT REPORT OF PROFESSOR JEFFREY SEDLIK</u>**

Submitted May 1, 2019

I have been engaged by plaintiff D'Pergo Custom Guitars, Inc. ("D'Pergo" or "Plaintiff") in the above-referenced matter ("Matter") brought by D'Pergo against defendant Sweetwater Sound, Inc. ("Sweetwater" or "Defendant"), to provide expert testimony as set forth below.

I have been asked by D'Pergo to provide expert opinions on damages and other issues related to D'Pergo's claims of copyright infringement by Defendant. My opinions are based in part on more than 25 years of service in high-level positions in trade associations and standard-setting bodies in the photography, advertising, product marketing, technology, and design industries. I have been an internationally recognized advertising photographer for more than 30 years, working with many clients, observing and interacting with large numbers of professional photographers, advertising agencies, design firms, corporate clients, model agencies, stock agencies, product manufacturers, and others in the United States and abroad. I have served as Project Manager in projects involving development, operation, and maintenance of websites, web applications, and other applications. I have also owned and operated a publishing company, producing and selling photography-related products for more than 20 years.

In addition to my personal knowledge, my opinions are based on an independent examination of documents and materials produced in the Matter to date. I understand that discovery in the Matter is ongoing. Should additional relevant information become available, I respectfully reserve the right to amend or supplement my opinions as necessary.

This Preliminary Expert Report ("Report") has been prepared in connection with the above-referenced Matter. Section VI of the Report outlines my opinions.

If called upon as a witness in the Matter, I could and would make the following statements of my own personal knowledge and experience.

## I.    QUALIFICATIONS

I currently serve as the President and CEO of the PLUS Coalition. "PLUS" is an acronym for "Picture Licensing Universal System." The PLUS Coalition is a non-profit, international standards body and trade association representing the shared business interests of all industries involved in the creation, licensing, and use of photography and illustration, including photographers, illustrators, advertisers, advertising agencies, graphic design studios, publishers, artists' representatives, museums, libraries, stock photo agencies and all other image licensees and licensors. The PLUS Coalition develops, propagates, and maintains universal standards for use by licensees and licensors in transactions involving photography and illustration. As a founding member of the PLUS Board of Directors, I developed the core concept of the Coalition and its copyright licensing standards.

I am the past National President of the Advertising Photographers of America ("APA"), the leading trade association for commercial photographers in the United States. I also served APA as Chief National Advisor on Licensing and Copyright, and provided leadership level guidance on topics, including copyright, photography, advertising, and modeling, industry standards, contract terms, model release terms, and business practices. I represented the APA in discussions with the United States Copyright Office and worked with organizations across the world to develop and maintain standards for licensing, modeling, and other image-related business matters. On a local basis, I also served on the Board of Directors and Legal Affairs Committee of the Los Angeles Chapter of the APA.

I currently serve on the Photo Metadata Working Group for the International Press Telecommunications Council ("IPTC"), the global standards body for photography metadata. In the past I have served on the Digital Image Submission Guidelines Working Group for Universal Digital Image Guidelines ("UPDIG"), and as an "Invited Expert" on the Permissions and Obligations Working Group of the World Wide Web Consortium ("W3C"). I currently serve as a Director of the Linked Content Coalition ("LCC"), a global non-profit organization dedicated to facilitating and expanding the legitimate use of content through interoperable identifiers and metadata. I have

also been a partner in the Rights Data Integration initiative, focusing on the integration of systems that manage and trade intellectual property rights online across all types of content, usage and media.  I also currently serve as a Director of the American Society for Collective Rights Licensing ("ASCRL"), a collective management organization for the visual arts. For the American Society of Media Photographers ("ASMP"), I serve on their copyright speakers bureau, and authored the "Photography Licensing" chapter of their publication, "Professional Business Practices in Photography."

I am frequent speaker at copyright events hosted by the US Copyright Office, the US Patent Office, and the US Department of Commerce. At the request of the Register of Copyrights, I served as a guest instructor at Stanford Law School in conjunction with a US Copyright Office sponsored Copyright Practicum. I have been a faculty member of the American Law Institute for Continuing Legal Education events, providing insights on licensing practices and on the practical application of copyright law in the visual arts. I have been a guest speaker on copyright law for many institutions and organizations, including Duke University Law School, New York University Law School, and the Copyright Society of the United States. In addition, I have testified before Congress on copyright law, and worked closely with legislators, stakeholder groups, and the United States Copyright Office on legislation, regulations, and policy issues related to copyright protections, registration, and remedies. I have assisted legislators and government agencies in drafting and revising copyright legislation. I am an active participant in the Copyright Alliance, serving on both the Creators Advisory Board and the Academic Advisory Board.

Adobe Systems, creator of Photoshop and other digital image and design software, selected me to be a member of its "Prerelease Team", and its Adobe Photographers' Council, a group of twelve leading photographers to advise the company on trends in digital photography and the photography industry at large.

Selected honors include the 2005 Industry Leadership Award from the International Photography Council of the United Nations, the 2006 PhotoMedia Photographer of

3

the Year award, the 2007 APA Industry Advocacy Award, and in 2008, an honorary Master's Degree from the Brooks Institute of Photography.

I am a long-time faculty member and Professor at the Art Center College of Design in Los Angeles, where I sit on the Intellectual Property Committee and teach advanced courses on the artistic, technical, production, legal, and business aspects of traditional and digital photography. Legal topics include copyright law, copyright registration, copyright licensing and contract interpretation. Technical topics include digital techniques and advanced lighting for photography of people, products and automobiles. I also provide instruction on advertising, marketing and branding.

After more than 30 years as an award-winning commercial photographer and studio owner, I continue to operate an advertising and entertainment photography production company in California, with a client list that includes such companies as Nike, Federal Express, Farmers Insurance, SBC, GTE, NBC, Sony, AT&T, Blue Cross, Epson, IKEA, United Airlines, Warner Brothers, Toyota, Nestlé, Disney, Bank of America, and others. My publishing company, Mason Editions, produces and distributes fine photographic reproductions.

I frequently provide forensic image analysis in civil and criminal matters, and provide consulting services to organizations and individuals on issues related to copyright, licensing, negotiating, and business practices and procedures related to photography, advertising, and modeling. I have testified as an expert witness in litigation involving photography, illustration, product design, copyright, metadata, advertising, branding, graphic design, right of publicity/privacy, breach of contract, criminal matters, and other topics. The cases in which I have testified at trial or by deposition within the last four years are:

In Re: Multiple Listing Service Real Estate Photo Litigation
United States District Court, Southern District of California
Case # 3:14-cv-01158-BAS-JLB

Brian Harness v Forever 21 Retail, Inc.
United States District Court, Northern District of Texas, Dallas Division
Civil Action # 3:14-cv-01316

EVOX Productions, LLC v California Rent-A-Car, Inc.
United States District Court, Central District of California, Western Division
Case # 15-CV-08046 MWF (RAOx)

Timed Out, LLC v 13359 Corp
Superior Court of the State of California, County of Los Angeles
Case # BC583739

Jerome Turner v Metals USA, Inc.
24th Judicial District Court for the Parish of Jefferson, State of Louisiana
Case # 751-431

TC Reiner v Ryon Nishimori et al.
United States District Court, Middle District of Tennessee, Nashville Division
Case # 3:15-cv-00241

David McNeese v Access Midstream Partners, L.P.
United States District Court, Western District of Oklahoma
Case # CIV-14-503-D

VHT, Inc. v Zillow Group, Inc.
United States District Court, Western District of Washington, at Seattle
Case # 2:15-cv-1096-JLR

EVOX Productions, LLC v Kayak Software Corporation
United States District Court, Central District of California, Western Division
Case # CV15-05053-PSG (AGR)

Under-A-Foot Plant, Co. v Exterior Design, Inc.

United States District Court, District of Maryland

Civil # BPG-15-871


Sustainable Sourcing, LLC v Brandstorm, Inc. et al.

United States District Court, District of Massachusetts, Western Division

Case # 12-CV-30093


Dana Ruth Lixenberg v Bioworld Merchandising, Inc.; et al.

United States District Court, Central District of California

Case # 2:15-cv-07242 MWF-MRW


Capri Krakana, Johan Krakana

Arizona Superior Court, Maricopa County

Case #JSS18301


Osram Sylvania v Photographic Illustrator Corporation v Brooks Electrical et al.

American Arbitration Association

Case # 01-16-0000-2652


Capri Krakana D.O.B. 12/18/2009, Johan Krakana D.O.B. 09/12/2007

United States Superior Court of the State of Arizona, in and for the County of Maricopa

Case # FC2016-050246


Nelson Araujo, et al v City of San Jacinto et al.

Superior Court of California, Riverside County

Case # RIC1411590


Laspata Decaro Studio Corporation v Rimowa GmbH et al.

United States District Court, Southern District of New York

Case # 16-cv-00934-LGS

Glen Craig v UMG Recordings, Inc. et al.

United States District Court, Southern District of New York

Case # 16 Civ. 5439 (JPO)


Brittney Gobble Photography, LLC v WENN Limited et al.

United States District Court, Eastern District of Tennessee, Knoxville Division

Case # 3:16-cv-00306


The Andy Warhol Foundation for the Visual Arts, Inc. v Goldsmith et al.

United States District Court, Southern District of New York

Case # 1:17cv2532


Jason Putsche v Alley Cat Allies, Inc.

United States District Court, Southern District of Maryland

Case No. 8:17-cv-00255-PWG


Yves Michel Fontaine v MMLery LLC, 61-73 Ellwood, LLC, 533 41st Street

Realty, LLC and Sharp Management Corp.

Supreme Court of the State of New York, County of Kings

Case No. 6580/12


Brittney Gobble Photography, LLC v Sinclair Broadcast Group, Inc., et al.

United States District Court, District of Maryland, Baltimore Division

Case # 1:18-cv-03403-RDB


My publication list is included in my curriculum vitae, a copy of which is attached to the Report as Exhibit A.

## II.   COMPENSATION

My work on the Matter is being billed at my standard rate of $650.00 per hour. My compensation is not contingent upon, dependent upon, or related in any way to the outcome of the Matter.

## III.   MATERIALS CONSIDERED

In preparation for the Report and for the expert testimony that I may be called on to provide, I have considered the materials listed in Exhibit B.

## IV.   ASSUMPTIONS

Retaining counsel instructed that I rely on the following assumptions in forming my opinions in the Matter. As the scope of my engagement does not include verification of the accuracy of the assumptions, my reliance on the assumption/s does not reflect a lack of rigor in the formation of my opinions. If any assumption is determined to be incorrect, I may revise my opinions. If later asked to verify the accuracy of the assumptions, I will do so where possible. I have been instructed to:

A. Assume that Defendant's reproduction and display of D'Pergo's photograph of guitar necks and headstocks ("the Photograph")[1] was limited to the below listed usages, and that as of this writing, no other usage has been discovered or admitted:

   a. During the period August 5, 2004 to January 6, 2016, Defendant reproduced, distributed and displayed the Photograph in Defendant's Electric Guitar Buying Guide ("EGBG") published by Defendant on Defendant's website www.sweetwater.com, at URLs including the following:

      i. https://www.sweetwater.com/insync/electric-guitar-buying-guide/

      ii. http://www.sweetwater.com/shop/guitars/electric-guitars/buying-guide

---

[1] First Amended Complaint, August 23, 2018 ("Complaint"), § 39.

b.  During the period June 9, 2013 to January 6, 2016, Defendant displayed one or more social media buttons on the EGBG, thus encouraging visitors to Defendant's website to "share" the EGBG on social media platforms.

c.  During the period January 1, 2007 to January 6, 2016, Defendant made reproductions of the Photograph, as published by Defendant in the EGBG, available to visitors to Defendant's retail store in Fort Wayne, Indiana on a total of six to nineteen interactive electronic displays.

B.  Assume that Defendant's reproduction, distribution and display of the Photograph in Defendant's stores, on Defendant's website, and via social media sharing icons infringed on Plaintiff's copyright in the Photograph under 17 U.S.C § 501.

C.  Assume that Plaintiff is entitled to recover actual damages from Defendant, including but not limited to an amount equal to a license fee for Defendant's use of the Photograph in various media, during the period August 5, 2004 to January 6, 2016.

D.  Assume that actual damages in this matter are to be determined in part by the fee/s that a willing Defendant would have been reasonably required to pay to Plaintiff prior to each instance of use.

E.  Assume that actual damages in this matter are to be based on the approximated average 2016 market rate for an image license permitting Defendant's use of the Photograph in the manner in which Defendant used the Photograph, ending in 2016.

F.  Assume that in during the period 2004 to 2016, few production photographs featuring a semi-symmetrical arrangement of a quantity of necks of various profiles, manufactured from a various wood, were available for licensing or use, and that the Photograph was both rare and scarce in the photography licensing marketplace.

G.  Assume that Defendant competes with Plaintiff with regard to electric guitar sales, and that Defendant's usage of the Photograph was competitive with Plaintiff.

H. Assume that the United States Copyright Office issued Plaintiff copyright registration certificate #VA000196150 for the Photograph, and that the information specified on that certificate is true and correct.

I. Assume that Plaintiff is the author and sole and exclusive copyright owner in the Photograph.

J. Assume that the information provided by Plaintiff in the Table of Usages, Exhibit C, is correct.

K. Assume that Defendant's use of the Photograph was not innocent infringement.

L. Assume that Defendant's use of the Photograph was not fair use under 17 U.S.C. § 107.

M. Assume that Defendant is not entitled to safe harbor under 17 U.S.C. § 512.


## V.   BACKGROUND

D'Pergo is a New Hampshire corporation with its primary place of business located at 3 Pine Hill Road / PO Box 1023 Windham, NH 03087

Sweetwater is an Indiana corporation with its primary place of business at 5501 US Hwy 30 W, Fort Wayne, IN 46818

D'Pergo manufactures custom, handmade electric guitars. In 2003, D'Pergo authored the Photograph, depicting an arrangement of mid-production guitar necks and headstocks manufactured exclusively by D'Pergo.[2] In that same year, D'Pergo published the Photograph in a "Gallery" section on D'Pergo's website, DpergoGuitars.com, in order to demonstrate the quality of manufacture and materials of D'Pergo products, and to advertise D'Pergo's custom-made guitars for sale to potential customers.[3]

---

[2] Complaint, at 10
[3] Telephonic Interview of Stefan Dapergolas, April 29, 2019

In January 2015, Julien Kasper, a business associate of D'Pergo, advised D'Pergo that Kasper had learned that a photograph of D'Pergo products appeared in a buying guide, guitar guide or catalog published on Defendant's website, Sweetwater.com.[4]

Upon further investigation, D'Pergo identified a copy of the Photograph, published in Defendant's "Electric Guitar Buying Guide" on Defendant's website, Sweetwater.com.[5]

D'Pergo's counsel communicated with Sweetwater regarding the unauthorized use of the Photograph on Sweetwater.com.[6] The parties were unable to resolve the Matter, and D'Pergo filed a complaint on December 26, 2017, seeking damages, injunctive relief, and costs.[7]

## VI. DISCUSSION

### A. General Background Regarding Image Copyright Licensing

In the image licensing industries, clients seeking to make use of images may either commission new images ("assignment images"), or acquire rights to existing images ("stock images").

#### 1. Assignment Images

Artists create assignment images (also known as "commissioned images") when clients contract with artists or their agents to create new works. Artists typically retain copyright ownership of the images that they create. Artists often grant limited licenses to their clients in exchange for a license fee based in great measure on the scope of the

---

[4] Deposition of Stefan Dapergolas, November 14, 2018 ("Dapergolas Depo"); 24:11; 28:5;26:20
[5] Dapergolas Depo; 25:13;26:20
[6] James Steiner letter to Charles Surack, December 23, 2015
[7] D'Pergo Custom Guitars, Inc., v Sweetwater Sound, Inc., December 26.2017.

rights granted. Artists often later engage in licensing such images to parties other than the commissioning client, throughout the copyright life of the images. In the alternative, artists may agree to assign copyright ownership to their clients, or may agree to create works under work-made-for-hire terms, whereby copyright ownership vests with the commissioning client upon creation.

2. Stock Images

Artists often create stock images independently and speculatively, then offer these existing images for licensed usage by clients. This offering is typically made on stock image websites, either by the artist or by a "stock agency" acting as an authorized licensor for the artist's images.

Clients seeking stock images typically visit stock image websites, search for images meeting their requirements, and then purchase licenses and download the images for usage. Such purchases may be made via an automated process, or by communicating with sales staff at the stock agencies or an artist's office.

Clients may acquire rights to stock images under various "licensing models." While some vendors specialize in certain licensing models, many vendors offer images under several licensing models. Common licensing models include:

(a) Royalty Free ("RF"): This model allows a client to pay a single, one-time fee based on the size of the digital image file desired by the client. The client receives a license allowing broad usage of the image—typically in unlimited media, for unlimited time, at any size, in any quantities, worldwide, for nearly any purpose, including but not limited to the promotion of products and services. For example, such a license may allow a client to use an image on any number of websites in any and all countries, worldwide, forever. There may be any number of detailed restrictions on RF licenses but in general,

the licenses allow broad usage. RF images are often professionally produced, and are typically less unique than many images offered under the Rights Managed model (see below).

(b) Microstock: A variant of RF licensing, microstock is a less expensive alternative. Like RF, microstock licenses provide broad rights for a low price, based on the size of the image file desired by the client. Like RF, microstock licenses include restrictions but typically permit usage in unlimited media, unlimited quantities, unlimited sizes, unlimited countries, for an unlimited time. Whereas RF images are typically provided by professional artists and semi-pros, microstock images are provided by amateurs as well.

(c) Subscription models: Many licensors now offer subscription-based licensing schemes. Subscription licensing is a variant of RF licensing, under which clients pay a monthly or annual license subscription fee and receive a broad license permitting the downloading of a quantity of images during each subscription period—either per year, per month or per day. Such licensors nearly always employ a system of graduated pricing tiers under which clients pay an amount commensurate with a maximum quantity of images available for downloading during each subscription period. There are many variants on subscription licensing schemes, driven by competitive pressures.

(d) Rights Managed ("RM"): A long-standing licensing model, rights managed licensing remains a common form of stock image licensing. In RM licensing, usage fees are based not on file size, but upon the scope of usage desired by the client. In general, the greater the scope of usage desired, the greater the licensing fee required of the client. Scope is defined broadly by the general category of the use, whether commercial or editorial, and is defined more specifically by the type of media, the size and quantity of

reproductions, the placement/s of the image, geographic regions in which the reproductions will be distributed, the duration of use, exclusivity desired, and other factors. The scope of use permitted under RM licenses spans the full spectrum, from very narrow, to very broad. RM images are primarily created by professional artists. Fees associated with RM licenses are often (but not always) higher than fees for RF licenses.

Seeking to maximize profitability and sales, stock agencies have been experimenting with new, hybrid models, such as licenses requiring payment based on the quantity of viewers of images published online, or payment for advertising placement in or on an image published online. The market continues to evolve.

Based upon my review of the documents, information and materials provided to me in the Matter, and with a reasonable degree of certainty, had D'Pergo and Defendant engaged in one or more license agreements allowing Defendant to make use of the Photograph, the resulting license/s would have been "Rights Managed" license/s, and would have contemplated both the scarcity of the Photograph, and the competitive nature of Defendant's use of the Photograph.

**B.    The Photograph**

A single photograph is at issue in the Matter. The Photograph is depicted below.

14



The Photograph is of professional quality, evidencing D'Pergo's careful attention to concept, styling, composition, arrangement, lighting, color, exposure and other aesthetic and technical qualities. Based on my knowledge and experience in licensing photography, the photograph has independent economic value.

**C.     D'Pergo's Original Authorship in the Photograph**

Stefan Dapergolas, CEO of D'Pergo, conceived the idea underlying the Photograph in 2003, intended to support D'Pergo's efforts to advertise D'Pergo's products for sale, and to promote public understanding of D'Pergo's trademarks and the quality of workmanship and materials in D'Pergo's products. After creating numerous sketches, Dapergolas arrived at a composition allowing Dapergolas to depict eight guitar necks and headstocks, illustrating D'Pergo's use of different woods (rare primary growth materials), fingerboards, and left and right handed necks.

On the day of the photo session, Dapergolas further experimented with various compositions, exercising selection, coordination and arrangement in order to achieve desired expression, with attention to perspective, leading lines, and curves. Dapergolas then selected a camera position, focal length, and aperture, to achieve creative expression.

15

Dapergolas then installed a seamless backdrop, and used professional lighting equipment including flash generators, softboxes, umbrellas, reflector cards, and a variety of additional light modifiers to achieve creative expression. For each light source, Dapergolas adjusted the distance, angle, and quality of light, to achieve creative expression.

Dapergolas found that lighting and positioning all of the necks and headstocks to accurately depict the qualities of the product was both a creative and technical challenge, requiring extensive work to achieve the desired result. Over a full day period, Dapergolas further experimented with variations on lighting, camera angle, exposure, and composition, to improve the quality of the Photograph and to achieve a desired creative expression.

After capturing the Photograph, Dapergolas then exercised additional creative expression by post-processing the Photograph in Photoshop and by making adjustments to tone, contrast, color and shading.

Dapergolas invested more than twenty hours from concept to completion of the Photograph, and was confident that the resulting image was consistent with D'Pergo's brand and was ideally suited to promoting sales of D'Pergo's custom-made guitars.[8]

**D.     The Purpose of the Photograph**

D'Pergo authored the Photograph in order to exploit the Photograph for the exclusive purpose of advertising and promoting D'Pergo's sales of custom-made guitars to the public. After authoring the Photograph, D'Pergo promptly commenced use of the Photograph to advertise D'Pergo's sales of custom-made guitars to the public, by publishing the Photograph to D'Pergo's commercial website.[9]

---

[8] Telephonic Interview of Stefan Dapergolas, April 30, 2019.
[9] Telephonic Interview of Stefan Dapergolas, April 29, 2019.

### E.     Sweetwater's Unauthorized Exploitation of the Photograph.

Defendant first published the Photograph on Defendant's website Sweetwater.com on or about August 5, 2004, in Defendant's "Electric Guitar Buying Guide." [10]

During the period August 5, 2004 to mid-2013, Defendant exploited the Photograph in Defendant's EGBG as depicted below:



During the period mid-2013 to January 6, 2016, Defendant exploited the Photograph in Defendant's EGBG as depicted below:



---

[10] Defendant's Response to Plaintiff's First Set of Interrogatories; Answer to Interrogatory 16

17

On or about June 9, 2013, Defendant placed social media sharing buttons in the EGBG, to encourage the public to share links to the EGBG on social media platforms.

**Social Media buttons in EGBG, June 9, 2013[11]**



During the period January 1, 2007 to January 6, 2016, Defendant made the EGBG available to the visitors to Defendant's retail store, on interactive electronic displays.[12]

---

[11]https://web.archive.org/web/20130609011614/https://www.sweetwater.com/insync/electric-guitar-buying-guide/
[12] Assumption A(c)

**Screen capture from 2015 video depicting interactive electronic displays in Defendant's retail store[13]**



**Screen capture from 2015 video depicting interactive electronic displays in the "Electric Guitar Room" in Defendant's retail store[14]**



---

[13] Screen capture of 2015 Sweetwater video on YouTube, https://youtu.be/eTWTTZIggig?t=298

[14] Screen capture of 2015 Sweetwater video on Youtube; https://youtu.be/eTWTTZIggig?t=310

On January 4, 2016, counsel for D'Pergo contacted Defendant regarding Defendant's unauthorized use of the Photograph.[15] On or about January 7, 2016, Defendant removed the Photograph from Defendant's website.[16]

Defendant neither sought nor obtained permission from D'Pergo for use of the Photograph on Defendant's website or in any other media.[17]

**F.    The Purpose for which Sweetwater Exploited the Photograph**

Defendant exploited the Photograph for the purpose of promoting the sale of products offered by Defendant.

Order denying Sweetwater's Motion for Reconsideration and granting D'Pergo's motion to withdraw and amend its responses to Sweetwater's Request for Admission; Opinion 2019 DNH 068, Document 92, dated April 18, 2019, at 11:

*"...the image appears in an "Electric Guitar Buying Guide."*

Order on motions to compel discovery; Opinion 2019 DNH 008, Document 76, dated January 14, 2019, at 9:

*"The publication ends with a link to "shop for electric guitars," as well as several listings and reviews for electric guitars."*

Order on motions to compel discovery; Opinion 2019 DNH 008, Document 76, dated January 14, 2019, at 10:

*"The image is included in the publication to aid purchasers in choosing the appropriate electric guitar."*

---

[15] Complaint, at 17
[16] Defendant's Answer to Plaintiff's Interrogatory #11
[17] Complaint, at 16

### G. Sweetwater Had Ample Opportunity to Request Permission to Exploit the Photograph, but Failed to Request Permission

D'Pergo published the Photograph only on D'Pergo's website, DpergoGuitars.com, only on D'Pergo's "Gallery" page. D'Pergo did not publish the Photograph on any other website, nor did D'Pergo publish the Photograph in any printed matter.[18] With a reasonable degree of professional certainty, Sweetwater accessed the Photograph on D'Pergo's website, then made an unauthorized reproduction of the Photograph from D'Pergo's website, then made a derivative version of the Photograph, then published that derivative version to the EGBG on Sweetwater's website.

At all times prior to D'Pergo's first publication of the Photograph on D'Pergo's website, and continuing to this day, D'Pergo's website has included D'Pergo's telephone number and email address. Sweetwater, in accessing the Photograph on D'Pergo's website, had ample opportunity to access D'Pergo's contact information and to contact D'Pergo to request permission to exploit the Photograph on Sweetwater's website. Sweetwater failed to request D'Pergo's permission, and proceeded to reproduce, create derivative/s of, display and distribute the Photograph, with neither license nor authorization.

### H. Actual Damages

In the event that the Court finds that Defendant infringed on D'Pergo's copyright in the Photograph, it is my understanding that D'Pergo is entitled to seek actual damages, among other remedies.[19]

Actual damages are determined in part by the fee that a willing buyer would have been reasonably required to pay at the time of the infringement.[20] In the photography marketplace, each licensor sets his/her own fees, based upon the photograph and upon criteria defining the scope of a license.

---

[18] Telephonic Interview of Stefan Dapergolas, April 29, 2019
[19] 17 U.S.C. § 504
[20] *Davis v. Gap, Inc.,* 246 F.3d 152, 166, 172 (2d Cir. 2001)

21

To arrive at a reasonable estimate of licensing fees applicable to the infringing usages, I obtained comparative stock photography license fee quotes from three stock photography agencies. I calculated total fees based on the information available to me, including some or all of these factors: the media in which the Photograph was reproduced, circulation, size, placement, and period of use. Where data for one or more criteria were unknown, I made the best approximation possible under the circumstances.

In addition to the license fee computations performed by obtaining reference fee quotes reasonably matching the alleged unauthorized usages to the greatest extent possible, I have relied on my personal knowledge and experience in image licensing and in the development and management of industry standards for image licensing.

I requested that D'Pergo provide an accounting of the usages discovered to date. D'Pergo provided an accounting, "Table of Usages," attached as Exhibit C.[21] In the event that the usage data provided by D'Pergo is determined to be incorrect, I will review and consider that information, and will make revisions to my calculations where appropriate.

Based on the information available to me as of this writing, and based on my personal knowledge, experience, and a review of the documents, materials, and testimony in the Matter, a reasonable base fee for the calculation of base actual damages, if applicable, would be as follows:

**License Fees (Base Actual Damages) by Media Category**

| Media Category | Base Actual Damages |
|---|---|
| Advertising - Print, Display and TV - Point of Sale | $15,120.00 |
| Digital Media - Corporate and Promotional Site | $14,872.00 |
| Digital Media - Social Media | $1,677.00 |
| **Total Base Actual Damages** | **$31,669.00** |

---

[21] Also see "Assumptions," Section IV

The total amount, $31,669.00, is the approximated 2016 fair market value of licenses of the Photographs for the alleged unauthorized usages by Defendant, prior to necessary adjustment contemplating the scarcity of the Photographs in 2016, and prior to necessary adjustment contemplating the competitive use by Defendant.[22]  For a detailed accounting of the calculations supporting this total, See Exhibit H, "Table of Licenses and Actual Damages" and additional supporting exhibits listed below.

I have attached the following tables and information as exhibits to the Report, documenting my calculations.

Table of Usages (Exhibit C)
List of instances of the usage of the Photographs, and supporting information.

Agency Stock Quotes Combined (Exhibit D)
Copies of market pricing survey documentation.

2019 and 2016 License Fee Samples for License Fee Adjustment 2019 vs 2016 (Exhibit E)
Provides screenshots of image vendor license fee quotes substantiating the Market Rate Adjustment detailed in Exhibit F, "Market Rate Adjustment 2019 vs 2016"

Market Rate Adjustment 2019 vs 2016 (Exhibit F)
Describes an adjustment of 2019 market rates to 2016 market rates. To arrive at a reasonable approximation of the differential (if any) between 2019 market rates and 2016 market rates, I compared sample 2019 license fees to sample 2016 license fees,[23] selecting the same image from the same vendor. I determined that the license fee in 2019 was the same dollar amount as the license fee in 2016. Based on this determination, it was not necessary to adjust the 2019 license in order to arrive at fees applicable to 2016 licenses.

---

[22] See Sections I and J
[23] Also see Exhibit E, "2019 and 2016 License Fee Samples for License Fee Adjustment 2019 vs 2016"

See also "Table of Market Rate Calculations" (Exhibit G). The fees are applied in "Table of Licenses and Actual Damages" (Exhibit H).

Table of Market Rate Calculations (Exhibit G)

List of license fees based on market rates for image licenses applicable to the license periods for the licenses listed in "Table of Licenses and Actual Damages," Exhibit H. I surveyed three vendors, then averaged their license fees to determine the 2019 average market rate for each License Type. I then confirmed that no adjustment was required for 2016 market rates (See Exhibits E and F).

Table of Licenses and Actual Damages (Exhibit H)

List of licenses applied to the Usages appearing in "Table of Usages" Exhibit C. Market rates are derived from "Table of Market Rate Calculations," Exhibit G. Actual damages calculations are based on one-year license periods.  Each one-year license period is represented as a "License Unit" in the table.

**I.      Actual Damages Multiplier for Scarcity**

The actual damages estimated above do not contemplate the scarcity of the Photograph in 2016. At that time, and continuing today, few if any similar stock photographs are offered for licensing. This scarcity is evidenced by Defendant's selection and exploitation of the Photograph. Scarce images typically demand significantly greater license fees than common images, often 3 to 5 times the fee for a common image. With a reasonable degree of professional certainty, a non-punitive multiplier of 3x to 5x is necessary to adjust the average market rate for a common, generic photograph to a fee applicable to a license for a rare or scarce photograph. The application of the scarcity multiplier is not a punitive measure. The scarcity multiplier serves only to adjust the fair market value of generic, common photographs to the value of a relatively scarce photograph of guitar necks and headstocks. Below I provide a range of actual damages, adjusted for the scarcity of the

Photographs in 2016. Given the unique qualities of the image, a multiplier in the high end of the range is appropriate.

**Adjustments for Scarcity**

| Base Actual Damages | With 3X Scarcity Multiplier | With 5X Scarcity Multiplier |
|---|---|---|
| $31,669.00 | $95,007.00 | $158,345.00 |

## J.     Actual Damages Multiplier for Competitive Use

The above calculations do not contemplate a scenario in which an image licensor is approached by a direct competitor seeking to purchase licenses to make competing use of the licensor's photographs. Under such a scenario the image licensor would reasonably expect to require and receive a substantially greater fee than would be required of a non-competitor, and the competitor would reasonably expect to pay such a substantially greater fee.

Based on my knowledge and experience, a licensor would reasonably require a competitor to pay a license fee that is 5 to 10 times greater than market rates otherwise available to a non-competing licensee.

Defendant made use of the Photograph to offer electric guitars for sale in competition with D'Pergo. Accordingly, I conclude that Defendant, in seeking to purchase a license for the Photograph from D'Pergo, would have been reasonably required by D'Pergo to pay between $475,035.00 and $1,583,450.00 for the licenses.  To arrive at this range, I applied the 5x to 10x multipliers to the license fee after applying the above-described 3x to 5x adjustments for scarcity.  The application of the competitive use multiplier is not a punitive measure. Given the nature of the competition between Defendant and Plaintiff, a multiplier in the high end of the range is appropriate.

**Adjustments for Competitive Use, after 3x Scarcity Multiplier**

| Actual Damages with 3X Scarcity Multiplier | With 5X Competitive Use Multiplier | With 10X Competitive Use Multiplier |
|---|---|---|
| $95,007.00 | $475,035.00 | $950,070.00 |

**Adjustments for Competitive Use, after 5x Scarcity Multiplier**

| Actual Damages with 5X Scarcity Multiplier | With 5X Competitive Use Multiplier | With 10X Competitive Use Multiplier |
|---|---|---|
| $158,345.00 | $791,725.00 | $1,583,450.00 |

## K.    Profits

I understand that under 17 U.S.C. 504(b), D'Pergo is entitled to seek disgorgement of Defendant's profits attributable to Defendant's infringements of D'Pergo's copyright that are not taken into account in computing actual damages.

I understand that D'Pergo is seeking to disgorge Defendant's profits attributable to Defendant's unauthorized reproduction, distribution and display of the Photograph.  I further understand that D'Pergo has engaged another expert to opine on disgorged profits, causal nexus, and related topics. If later called upon to opine on issues related to Defendant's profits in a supplemental or rebuttal report, I may do so.

## L.    Defendant's Knowledge, Intent and Willfulness

Defendant is actively engaged in creating, using, and managing copyright protected works (e.g., photographs, video, other content, etc.). In my experience, companies in Defendant's class of business are knowledgeable concerning copyrights. In fact, Defendant routinely seeks to enforce

Defendant's copyrights in Defendant's intellectual property, including photographs.[24] Defendant typically requires employees to seek authorization prior to making use of assets not owned by Defendant.[25]

Defendant had ample opportunity to seek authorization to make use of the Photograph, but did not do so. Defendant had ample opportunity to manage and audit Defendant's website to ensure that all use of all assets was authorized, but Defendant did not do so.

Defendant's public statements and testimony in this matter demonstrate Defendant's keen understanding and awareness of copyright law, infringement issues, and the significant value of proprietary content:

> *Sweetwater Founder and President Chuck Surack said, "It's shameful that, in this industry I love, there are so many unscrupulous individuals and companies. We hear constantly how musicians, companies, and our industry are damaged by music piracy and illegal software and plug-in downloads, yet there seems to be no hesitation on the part of many retailers in our industry to take proprietary web content. At Sweetwater, we invest a great deal into creating unique, valuable content for Sweetwater.com, and to have it blatantly plagiarized and reposted on another retailer's site, often word-for-word, is truly disheartening. As much as we dislike having to take action, we simply cannot sit by while our property is taken and misused. [26]*

> *"The owners of the guilty sites have sometimes tried to pin the blame on lazy or irresponsible employees or even subcontractors taking the easy way out by copying Sweetwater's content. And it may be true that an employee or subcontractor is actually at fault. However, this*

---

[24] Sweetwater CEO Charles Surack, quoted in Sweetwater press release, January 20, 2015
[25] 30(b)(6) Deposition Sweetwater Sound, Inc., by and through David Stewart ("Stewart Depo"), 67:1
[26] Sweetwater CEO Charles Surack, quoted in Sweetwater press release, January 20, 2015

*does not excuse the owner or manager from responsibility or limit the liability of the employer for the consequences of an employee's actions. Sweetwater has also heard claims that the copying was "an honest mistake," which is clearly indefensible; there is no way to "honestly" take someone else's property."* [27]

*"They blatantly copied our page by the same font, the same words, same everything and just -- it was a direct rip-off."* [28]

*"...we would, we would seek -- we would want to know that we have the permission to use it or the rights to use it..."* [29]

*"Well, we do a lot of unique custom content; and to have other people represent it as theirs, that's just not the right thing to do."* [30]

*Copyright: The content, organization, graphics, design, compilation, magnetic translation, digital conversion and other matters related to the Site are protected under applicable copyrights, trademarks and other proprietary (including but not limited to intellectual property) rights. The copying, redistribution, use or publication by you of any such matters or any part of the Site, except as allowed by Section 4 below, is strictly prohibited. You do not acquire ownership rights to any content, document or other materials viewed through the Site. The posting of information or materials on the Site does not constitute a waiver of any right in such information and materials. Some of the content on the site is the copyrighted work of third parties.* [31]

*"In essence, copyright is a set of exclusive rights granted for a limited time that regulate the use or manner in which an idea or information is expressed. Put simply, copyright means "the right to copy". In order to*

---

[27] Sweetwater press release dated January 20, 2015
[28] Deposition of Charles Surack, April 8, 2019 ("Surack Depo"); 88:14
[29] Stewart Depo, 67:1
[30] Surack Depo, 78:24
[31] Sweetwater website "Terms of Use"

28

*qualify for copyright protection, a work must be original. Obviously, you cannot obtain a copyright for someone else's creation. Copyright applies to a wide range of creative or artistic forms or "works." These include musical works, sound recordings, movies, dramatic works, literary works, paintings, photographs, software, live performances, and television or sound broadcasts. Copyright law only covers the form of material expression, not the actual idea or techniques employed by the copyright work."* [32]

*"Intellectual property refers to works realized by the creative mind. Intellectual property comprises inventions, literary and artistic works, and symbols, names, images, and designs used in commerce. According to WIPO (World Intellectual Property Organization), intellectual property is divided into two categories: Industrial property, which includes inventions (patents), trademarks, industrial designs, and geographic indications of source; and Copyright, which includes literary and artistic works such as novels, poems and plays, films, musical works, artistic works such as drawings, paintings, photographs and sculptures, and architectural designs."* [33]

*"Senior V.P. of Marketing Michael Ross said, 'We're taking a stand because we feel we're all in the music retail business together and we should all respect the content and innovations of our fellow retailers, in the same spirit that none of us would like someone stealing a piece of gear off our showroom floor.'* [34]

*Q: Would you say that it's good business practice to police your content and pursue instances of infringement?*

---

[32] Sweetwater article, "What is Copyright?" https://www.sweetwater.com/insync/copyright/
[33] Sweetwater article, "Intellectual Property" on Sweetwater.com:
https://www.sweetwater.com/insync/intellectual-property/
[34] Sweetwater Press Release, February 21, 2014

*A Yes.[35]*

*Sweetwater Founder and President Chuck Surack said, "For years, many companies have been copying the innovative, pioneering stuff we've created on the web. While 'imitation is the sincerest form of flattery,' lifting and copying our content verbatim is entirely different. Like any creative artist would, we need to protect our work and the extraordinary efforts of our employees." [36]*

Defendant's employee/s, in copying the Photograph from D'Pergo's website, altered the name of the digital file, thus frustrating D'Pergo's later efforts to police and enforce his copyrights and trademarks using file names as search criteria in search engines. With reasonable degree of professional certainty, Defendant's employee/s further attempted to mask the theft of the Photograph by altering the digital file type of the Photograph, changing the file from a "JPEG" to a "GIF" file, and deleting any metadata present in the file. Notably, few if any photographs present on Defendant's website are GIF files.

Lacking a license to use the Photograph, Defendant knew or should have known that Defendant's continued display of the Photograph was an infringement of D'Pergo's copyright. By distributing and displaying the Photograph on Defendant's website for more than a decade, Defendant evinced willful blindness and/or acted with reckless disregard for D'Pergo's copyrights, knowingly and willfully infringing on D'Pergo's copyrights.

## VII. RIGHT TO SUPPLEMENT

I understand that Defendant may offer expert testimony to support Defendant's claims in the Matter, and I expect that additional information and documents may

---

[35] Surack Depo, 80:3
[36] Sweetwater Press Release, February 21, 2014

come to light subsequent to my submission of the Report. If requested by D'Pergo, I may offer supplemental reports and/or rebuttal testimony to the opinions expressed by Defendant and Defendant's experts, in accordance with the Court's scheduling order.

Respectfully Submitted,

_____   May 1, 2019
Professor Jeffrey Sedlik

Index to Exhibits

A          Professor Jeffrey Sedlik Curriculum Vitae
B          Materials Considered
C          Table of Usages
D          Agency Stock Quotes Combined
E          2019 and 2016 License Fee Samples for License Fee Adjustment 2019 vs 2016
F          Market Rate Adjustment 2019 vs 2016
G          Table of Market Rate Calculations
H          Table of Licenses and Actual Damages

**EXHIBIT A**

# PROFESSOR JEFFREY SEDLIK
## Curriculum Vitae

## Contact Information

Mailing Address    145 North Sierra Madre Boulevard, Suite 4, Pasadena, California 91107 USA
Telephone          626.808.0000 (LA)    212.447.1255 (NYC)    213.716.6627 (Cell)
Email              expert@sedlik.com

## About Professor Sedlik

President & CEO of the PLUS Coalition, the international standards body for the licensing of visual works. Professional photographer, educator, publisher, forensic analyst, graphic designer, product designer, expert witness, fundraiser, negotiator and consultant. Past National President of the Advertising Photographers of America (APA), a leading trade association in the commercial photography industry. Past APA Chief Advisor on Licensing and Copyright. 2005 Photography Industry Leadership Award, International Photography Council.  2006 Photography Person of the Year, Photo Media Magazine. 2007 Industry Leadership Award, Advertising Photographers of America.

Advises clients on industry trends, business practices, copyright and contract issues, fair use, public domain works, moral rights, work-made-for-hire, Creative Commons, digital asset management, asset identification systems, metadata standards, rights languages, valuation of photographs/photography and other visual artworks and related services, licensing, rights of publicity/privacy, social media, investment and acquisition opportunities, strategic partnerships, photographic history, digital and traditional photographic and design techniques and workflows, forensic photographic analysis, graphic design, product design, publishing, and product manufacture. Provides expert witness and consulting services on these and other matters related to photography, advertising, design and the modeling industry.  Provides expert testimony on damages and other liability arising from breach of contract, infringement of copyright, trade dress, removal/alteration of copyright management information, DMCA violations, rights of publicity/privacy, loss/damage/theft of artworks, image manipulation, creative expression, original authorship, employment status, sale tax and other issues. Provides photogrammetric services and forensic analysis of images and video.  Serves as a Professor at the Art Center College of Design.  An accomplished and experienced educator, conducts advanced seminars and workshops for professionals, and teaches college-level courses on copyright, licensing, advertising, design and related business practices.

## Professional Experience

**PLUS Coalition, Inc.**, 2005 – Present.  Serves as President and CEO for the global standards body for the image licensing industries. A non-profit organization, Picture Licensing Universal System ("PLUS") is dedicated to the development and maintenance of international licensing standards and systems in the photography, illustration, publishing, advertising, graphic design, museum, library and education communities in 120 countries. Directed recruitment of trade organizations and other interested parties worldwide and supervised development and implementation of licensing standards, and development of a global rights registry.

**PLUS Coalition, LTD.**, 2005 – Present.  Serves as President, CEO and Director of the London-based subsidiary of the PLUS Coalition, Inc..

**Sedlik Productions/Sedlik Design,** 1986 – Present. Serves as President of a leading commercial photography, design, and film production company.  Also serves as Producer, Director, Photographer, and Director of Photography, creating photography, film and video productions for advertising agencies, graphic design studios, the entertainment industry, and other clients. Operates SedlikStock, a subsidiary dedicated to licensing existing Sedlik images for advertising, editorial and merchandizing usage via affiliates including stock photography agencies and publishers. Maintains relationships with major photography industry manufacturers, testing and demonstrating analog and digital equipment and software. Provides graphic design, advertising design and product design and manufacturing services.

## Partial Client List- Sedlik Productions/Sedlik Design

**Clients:** 3m; 20th Century Fox; A&E Television Network; ABR Information Services; Alpo; AmSouth Bank; Andazia, Inc; Arista Records; Association of Tennis Professionals; AT&T; Avery Dennison; Bank of America; Barrington Music Products; BBC;  Blue Cross; BMG/RCA Records; Bristol Myers Squibb; Buena Vista Pictures; Bureau of Census; CareAmerica; Chesebrough-Ponds; CBS/Sony Music; Cedars Sinai; Century 21; Cherokee; Columbia Pictures; Computer Associates; Concord Records; Conroy's Florist; Direct TV; Disney; Doubleday; Dreyfus; Epson; Essilor; Farmer's Insurance; Federal Express; Fitzgerald-Hartley Co.; Ford; Gannon/Hartley; Geffen Records; Georgia Pacific; Great Performances; Great Western Bank; GRP Records; GTE; Guinness Museum; Hanna-Barbera; Harcourt Publishers; Hopper Papers; Ikea; Infiniti Automobiles; Island Records; Janssen Pharmaceuticals; JVC Musical Industries; Kraft Food Products; Korg, Inc.; LaFace Records; Laura Ashley; Levi Strauss; Mark Taper Forum; Missouri Historical Society; MCA Records; MCA International; Metro Goldwyn Mayer; Microsoft; Motion Picture & TV Fund; Movieland; MSN; MTM Entertainment; MTV Networks; Navisite; NBC Television; Neenah Paper; Nestle'; New World Pictures; Nike; Pacific Bell; Palm Press; Paramount Pictures; Phillip Morris; Polygram Records; Pomegranate Books; Potlatch; Prentice-Hall; San Diego Zoo; Schering Plough; SBC; Signature Eyewear; Smithsonian Institution; Sony Inc.; Southern Natural Gas; Spanish Tourism Office; Sugar Hill Records; Taco Bell; Telarc International; Toyota; Turner Broadcasting; U. C. Press; United Airlines; United Way; Universal Studios; VH-1; Warner Brothers Records; Web TV; Windham Hill Records; Word Records; World Savings; Yamaha; Zellerbach; Ziff-Davis; Zildjian

**Advertising Agencies & Design Firms:** Alan Sekuler & Associates; Asher Gould; BBDO;  Bozell, Brierley & Partners; Brooks-Gruman Advertising; Campbell, Mithun, Esty; Cline, Davis, & Mann; Cross & Associates Design; Dailey & Associates; Davis, Elen; Daymark; DDB Needham, Worldwide; Deutsch; Douglas Oliver Design; DVC Marketing; DZN; The Design Group; East/West Network; Fitzgerald & Associates; FKQ Advertising; FP Horak Advertising; Foote, Cone, & Belding; GBF Ayer; Goodby Silverstein; Grey Advertising; Hill & Knowlton; Huerta Design; Ikkanda Design; Interbrand; J. Walter Thompson; Kang & Lee; Kaufman/Stewart; Ketchum Advertising; Klemtner Advertising; Kovel Kresser; Kuester Group; Lehman Millet, Inc; Lintas Campbell Ewald; Mangos; Mediatrix; Melia Design Group; Ogilvy & Mather; OZ Advertising; Phillips Ramsey; Poppe-Tyson; Potter Katz & Partners; John Ryan Company; Saatchi & Saatchi; Seineger Advertising; Slaughter Hanson; SmithKlein Beecham; Strike Group; Team One Advertising; Team Creatif; Torre Lazur; Tracy-Locke; Tribe Design; Vrontikis Design; White Rhino Advertising; Young & Rubicam

**Editorial:** American Film; Arts & Entertainment; CD Review; Cosmopolitan; Details; Downbeat; Elle; Entertainment Weekly; Glamour; GuestInformant; Imperial Press; In Focus; Interiors & Sources; Jazziz; Jazz Times; Life; Los Angeles Magazine; Los Angeles Times Magazine; Mirabella; Music Connection; Newsweek; Photo District News; People; Premiere; Pulse; Q Magazine; Rolling Stone; Select; Spin; Time-Life

**Other Professional Experience**

---

**Linked Content Coalition, (LCC)** 2013 – Present.  Serves as a Founding Director of the Linked Content Coalition (LCC), a UK-based, not-for-profit global consortium of standards bodies and registries. LCC members are organizations engaged in creating and managing data standards associated with content of one or more types, particularly for identifiers, metadata and messaging. The purpose of the LCC is to facilitate and expand the legitimate use of content in the digital network through the effective use of interoperable identifiers and metadata.

**American Society of Collective Rights Licensing (ASCRL),** 2014 – Present. Serves as Founding Director of ASCRL, a non-profit collecting society engaged in collecting and distributing  foreign and domestic royalties to authors and copyright owners in visual works in the United States.

**Copyright Alliance (CA),** 2016 – Present. Serves as Board member on the Copyright Alliance Creators Advisory Board and Academic Advisory Board, collaborating with leading organizations and experts in the creative industries on copyright-related issues including education, legislation, advocacy and other efforts.

**Advertising Photographers of America (APA)**. Served as National President , 2000 – 2002. Served as Chief Advisor on Licensing & Copyright, 2002 – 2012. Directed and supervised all operations of the largest trade organization representing advertising photographers, leading more than seventy volunteer board members located in all areas of the country. Advised federal and state legislators, and senior officials at the Small Business Administration and US Copyright Office. Also served on the Board of Directors of the APA Los Angeles Chapter, and on that chapter's Legal and Legislative Committee, Advocacy Committee and Sales Tax Committee.

**Beijing Intellectual Property Expertise Center of Judicature (JZSC)**, 2007 – Present. Advisor to Chinese governmental agency and the People's Court of China on intellectual property issues in China.

**IPTC Photo Metadata Working Group,** 2006 – Present. Active participant in the International Press Telecommunications Council (IPTC) standards body. Member of the IPTC Photo Metadata Working Group, charged with establishing and maintaining standards for embedded metadata in digital photographs. Co-authored the IPTC Photo Metadata White Paper 2007 and the IPTC-PLUS Photo Metadata Toolkit.

**Universal Photographic Digital Imaging Guidelines (UPDIG),** 2004 – Present.  Active participant in working group charged with developing worldwide standards in the commercial application of digital imaging technologies. Participant in Model Release Working Group, charged with developing international standards for model releases and model release workflow.

**Consultant and Expert Witness,** 2000 – Present. Provide consulting services, forensic analysis and expert testimony on legal, business and technical matters related to digital and traditional photography, illustration, marketing and other topics.

**United States Copyright Office**, 2008 – Present. Advises senior staff members on topics including copyright registration, regulatory, re-engineering and professional workflow issues. Alpha test consultant for online electronic copyright registration system.

**Adobe Photographer's Council,** 2004 – 2010. Advised Adobe Systems on matters related to Adobe products and services, including digital photography technologies, stock photography, and industry standards.

**Adobe Pre-release Testing,** 2004 – Present. Provides pre-release testing services to Adobe, both alpha and BETA testing of Adobe products and services.

**Founder, Digital Technology Advisory Council**, 2002. Founded advisory council comprised of high level representatives from each of the leading photography industry manufacturers.

**Advisory Board Member, WorkbookStock,** 2000 – 2006. Served on the advisory board of WorkbookStock, a leading stock photography agency. Consulted on the development of a vendor contract, copyright registration procedures, and web interface.

**Advisory Board Member, Exactly Vertical**, 1998 – 2000. Served on the advisory board of Exactly Vertical, a company offering interactive business management solutions for photographers. Consulted on issues including web interface, software design, copyright registration, merchandizing, stock licensing, photographers' workflows, and branding.

**Other, 1996 – Present:** Numerous additional consulting  engagements under NDA, including the identification and analysis of investment opportunities, strategic partnerships, acquisition targets, product development and launch strategies, advisory council recruitment, fundraising, negotiations, mediation and deal brokering.

## Awards & Recognition

**APA Photography Industry Leadership Award,** 2007. Presented by Advertising Photographers of America.

**Photography Person of the Year,** 2006. Presented by Photo Media Magazine.

**ICP Photography Industry Leadership Award,** 2005. Presented by the International Photography Council, a non-governmental organization of the United Nations.

**Mamiya Award of Excellence in Photo Education**, 1999. Recognized as a leading arts educator. Selected from all college-level photography instructors, nationwide.

**The Clio Awards. Silver Clio, Director of Photography, Rich Media Advertising**, 1999;

**Selected Additional Awards and Recognition:** Print's Regional Design Annual. Award of Excellence, 1999; Ozzie Awards. Silver Ozzie for Best Photography, 1999; Art Directors Club. Excellence in Photography, 1999; Art Directors Club. Excellence in Photography, 1999; PDN/Nikon Award of Excellence in Self Promotion, 1998; Advertising Photographers of America. Best in Show, 1998; Communication Arts Award of Excellence in Editorial Photography, 1998; The One Show Award for Excellence in Advertising, 1997; Communication Arts Award of Excellence, Unpublished Work, 1997; Communication Arts Award of Excellence in Self Promotion, 1996; Communication Arts Award of Excellence in Advertising Photography, 1994; Communication Arts Award of Excellence, Book Series, 1993; Art Direction Magazine Creativity Award, 1992; Communication Arts Award of Excellence in Editorial Photography, 1992; Communication Arts Award of Excellence in Advertising Photography, 1991; Communication Arts Award of Excellence in Editorial Photography, 1990; Art Direction Magazine. Creativity Award, 1990

## Selected Articles Authored

**ASMP Professional Business Practices in Photography, 2008.** Contributing author.

**United States House Judiciary Committee.** "The Orphan Works Dilemma: Challenges & Recommendations," 2006. Treatise submitted to the House Judiciary Committee by invitation of the General Counsel, in relation to the U.S. Copyright Office "Report on Orphan Works."

**Photo District News.** Contributor to Photo District News, the photography industry's primary trade publication. Authored the "Ask The Expert" column, writing on subjects of business management, licensing, copyright, and creativity.

**In Focus.** Contributor to In Focus Magazine, the magazine of the Advertising Photographers of America, writing on subjects including business management, industry trends, protecting the value of photography, licensing, copyright, creativity.

**Wraparound.** Founder and regular contributor to Wraparound Magazine, writing on legal and business topics.

**APA/LA NewsMagazine.** Contributor to the news magazine published by the Advertising Photographers of America, Los Angeles Chapter.

**Photo Media.** "Get Down to Business" Fall, 2000

**IPTC Photo Metadata White Paper 2007.** Co-author.

## Professional Societies

**Advertising Photographers of America (APA)**

**American Institute of Graphic Arts (AIGA)**

**American Society for Collective Rights Licensing (ASCRL)**

**American Society of Media Photographers (ASMP)**

**American Society of Picture Professionals (ASPP)**

**Copyright Alliance (CA)**

**Copyright Society of the United States of America (CSUSA)**

**Photography Instructors Education Association (PIEA)**

**PLUS Coalition, Inc. (PLUS)**

**Pro Imaging (PI)**

**Selected Speaking Engagements**

---

**Miscellaneous Events and Engagements,** 1977 – Present. Invited speaker/panelist at the industry's major trade shows, speaking on topics including copyright, licensing, advertising, branding, design, publishing, product development, self-promotion, stock image licensing and technical issues. Lectured on photography at LAUSD Community Adult School. Speaks before groups of photographers and creatives worldwide. Wrote and produced the APA "Real World" seminar series on topics ranging from estimating, to licensing, to producing. Participated in the development of Digital Imaging for Photographers, a leading seminar series dedicated to cutting- edge digital techniques and equipment.  Speaker at the "PDN on the Road" seminar series, on copyright, licensing and stock photography.  Speaker at the ASMP Strictly Business Workshops, ASMP Copyright Symposiums, Copyright & Technology Conferences, Digital Asset Management Conferences, World Copyright Summits, Copyright Office Roundtables and many other events.

**Copyright Society of the USA - Copyright Technology Conference**, 2019**.** "Rational Approaches to Online Image Licensing."

**Copyright Society of the USA,** 2018. "Perfect Storm: Embedding, Linking and Copyright Infringement."

**United States Department of Commerce,** 2018. "Developing the Marketplace for Copyright Works: Licensing and Monetization."

**United States Copyright Office,** 2017. "Original Expression and Authorship in Photography."

**Photo+ Expo,** 2017. "They Stole My Work. Now What?"

**Copyright Society of the USA,** 2017.  Mid-winter Meeting**. "**TMI About CMI: The Rash of Recent Claims Under Section 1202 Regarding Removal of Copyright Management Information.

**United States Copyright Office,** 2016. "Copyright Licensing in the Visual Arts."

**International Federation of Reproduction Rights Organizations (IFRRO),** 2016**.** Annual General Meeting. "Licensing Reproduction Rights."

**Joint Photographic Experts Group (JPEG),** 2016. JPEG Committee Meeting – JPEG Privacy & Security Workshop: "Embedded Rights Metadata in Photographs."

**Duke University Law School and New York University Law School**, 2016. "Copyright Office for the 21st Century: Registration and Recordation Functions"

**United States Copyright Office,** 2016.  California Roundtable on Section 512: "Applicable Legal Standards," "Scope and Impact of Safe Harbors," "Technological Standards and Solutions."

**Legal Issues in Museum Administration Conference,** 2015. Smithsonian Institution. "Copyright Clearance and Cultural Heritage."

**International Press Telecommunications Council (IPTC) Conference,** 2015. "The Application of Rights Metadata in Photographs."

**Initiative for a Competitive Online Marketplace (ICOMP),** 2015. "How the Digital and Creative Economies Can Prosper Together."

**International Federation of Reproduction Rights Organizations (IFRRO),** 2015**.** Annual General Meeting. "Measuring the Use of Visual Works."

**International United States Patent and Trademark Office,** 2015. **"**Copyright, Culture, Art and Science in the Digital Age: Hot Topics in the Visual Arts. Painting, Photography and Sculpture – Toward a Copyright Hub."

**Stanford University Law School,** 2014-2015. Copyright Practicum: **"**Copyright in Visual Artworks Identification, Metadata, Registration, Licensing."

**United States House Judiciary Subcommittee on the Courts, Intellectual Property and the Internet**, 2014. Testimony at hearing entitled "Preservation and Reuse of Copyrighted Works."

**United States Copyright Office**, 2014. "Orphan Works & Mass Digitization Round Table."

**University of California Los Angeles**, 2014. "US Copyright Office Recordation Reengineering Roundtable."

**International Confederation of Societies of Authors and Composers (CISAC).** 2013. "World Creators' Summit - Orphan Works:  Balancing Access and Creator's Rights."

**International Press Telecommunications Council (IPTC). IPTC Metadata Conference**, 2013. "Metadata Technology. What the Future Might Bring."

**California Visual Resources Association Conference**, 2014. Image Rights: "Leveraging Rights Metadata to Maximize Access and Minimize Liability."

**United States Patent and Trademark Office.** 2013. "Copyright Policy, Creativity, and Innovation in the Digital Economy."

**National Association of Recording Merchandisers (NARM) Conference,** 2013. "Managing Photographic and Video Archival Assets."

**Advertising Photographers of America (APA)**, 2013. "Social Media, the PLUS system, and Strategic Licensing in the Internet Age."

**Copyright and Technology Conference, 2012**. Rights Registries and Copyright Hubs: "The Holy Grail, or the Enemy of the Good?"

**ICON LA Illustration Conference**, 2010.  **"**Illustrators and Copyright."

**Picture Archive Council of America, International Conference**, 2004.  Image Licensing in the 21st Century

**Createasphere/ EXPLORE Entertainment Technology Exposition**, 2010. Effective Digital Asset Management Workflows

**American Society of Media Photographers**, 2010. Copyright and the New Economy: Issues and Trends Facing Visual Artists

**Photo+ Expo**, 2009. "Strategic Copyright Licensing."

**Museum Computer Network**, 2009. "Copyright in the Cultural Heritage Sector."

**Smithsonian Institution**, 2009. "Beyond the Copyright Field: Current Trends in Rights and Licensing Metadata."

**Photo Marketing Association**, 2008. "Breakthroughs in Photo Archiving using Metadata"

**Picture Archive Council of America (PACA), International Conference**, 2008. "Copyright in the Stock Image Industry."

**Henry Stewart DAM Symposium**, 2008. "Rights, Images and PLUS: Challenges & Solutions"

**IDEAlliance XMP Open Content Metadata Summit**, 2008. "Leveraging XMP to Advance Industry Standards"

**Picture Archive Council of America (PACA)**, 2007. "Searching for a Common Ground: Setting Standards in a Time of Change."

**Library of Congress**, 2007. "Image Preservation with PLUS."

**Japan Photographer's Union**, 2007. "Photography & Copyright: International Issues."

**Digital Library Federation, Fall Forum**, 2007. "Facilitating the Fair Licensing of Digital Images, and Determining Copyright."

**Museum Computer Network, Annual Conference**, 2007. "Museums and Intellectual Property: Challenges and Solutions."

**IDEAlliance XMP Open Content Metadata Summit**, 2007. "Advanced Photography Metadata Workflow Strategies."

**American Society of Picture Professionals, Education Conference**, 2006. "Strategic Licensing: The Art & Science of Maximizing Your Profits."

**International Press Telecommunications Council (IPTC) Conference**, 2006. "PLUS and IPTC, Collaborating on Rights Metadata Standardization."

**Coordination of European Picture Agencies Press Congress (CEPIC) Conference**, 2006. "Implementing International Standards in Image Licensing."

**Oxford University**, 2006. "Digital Object Identifiers and Copyright."

---

**Foundation, Community Service and Charitable Work**

---

**Warren King Foundation**, President, 2000–2002. Created foundation providing endowed photography scholarships to promising photography students. Produced a fundraising event attended by photographers, educators, government officials and media. Lobbied Los Angeles Unified School District to re-launch abandoned

arts education programs in local schools. Arranged for an arts teacher to receive a lifetime achievement award at the Kennedy Center.

**Other Community Service and Charitable Work.** Conduct visiting lectures on the art and history of photography for elementary school students in the Los Angeles Unified and Pasadena Unified School Districts. Judge photography exhibitions at the high school, college, and amateur, and professional levels.  Photograph pro-bono or reduced-fee public service campaigns for charitable organizations such as the LA Times "Reading by Nine" program, Jewish Family Services, Motion Picture and Television Fund, United Way, and others. Volunteered time to leadership in the Boy Scouts and public schools. Donated original photographic prints to each of the Focus on Aids annual fundraising auctions 1987-2003, Woodcraft Rangers, Pediatric Aids Foundation and other vital charitable organizations.

**Boy Scouts of America,** Eagle Scout, 1972-1977.

## Academic

**Continuing Education,** 1986-Present. Attends workshops and seminars on business, legal and technical issues affecting photographers, illustrators, designers and other visual creators, with an emphasis on intellectual property, business management, stock photography, and digital technology courses. Consults with manufacturers and distributors in testing new equipment to stay abreast of the latest developments in digital imaging, design and manufacturing technologies.

**Brooks Institute,** 2008, MFA, HC.

**Art Center College of Design,** 1986,  BFA.

**University of California at Santa Barbara,** 1980-1983, Liberal Studies major with emphasis in Art, Art History, Economics, Business Management.

**EXHIBIT B**

**MATERIALS CONSIDERED**

**#**   **Description**

1    First Amended Complaint, with Exhibits. Filed 8/23/18
2    Declaration of David Stewart in Support of Defendant's Objection to Motion for Leave to Amend. Filed 7/23/18
3    Plaintiff D'Pergo's Surreply to Defendant's Reply to Its Motion for Reconsideration. 2/28/19
4    Defendant"s Reply to Plaintiff's Objection to Defendant"s Motion for Reconsideration. Filed 02/20/19
5    Defendant'S Objection to Motion to Amend Answers to Request for Admissions. Filed 02/28/19
6    Videotaped Deposition of Stefan Dapergolas. Taken on 11/14/18
7    Videotaped 30 (b) (6) Deposition of D'Pergo Custom Guitars, Inc By its Representative Stefan Dapergolas. Taken on 11/15/18
8    Defendant's Amended Answer and Affirmative Defenses. Filed 05/15/18
9    Defendant's Amended Answer and Affirmative Defenses. Filed 05/15/18
10   Plaintiff's Answer and Affirmative Defenses to Defendant's Counterclaims and Demand for Jury Trial. 1/21/2019
11   Certificate of registration. 7/9/15
12   Defendant's Response to Plaintiff's Second Set of Interrogatories.
13   Declaration of Kamran Khan. 9/22/18
14   Defendant's Motion for Reconsideration. Filed 01/27/19
15   Defendant's Surreply to Plaintiff's Reply in Support of Its Motion to Withdraw and Amend its's responses to Defendant's Request for Admissions. Filed 03/18/19
16   Professor Jeffrey Sedlik Letter. 09/25/18
17   Complaint. Filed 12/26/17
18   For Attorneys' Eyes Only Deposition of Michael Ross.
19   Defendant's Supplemental Response to Discovery
20   Attorneys' Eyes Only 30 (b) (6) Deposition of Sweetwater Sound, Inc. By and Through David Stewart. 04/09/19
21   For Attorneys' Eyes only Deposition of Charles Surack. 04/08/19
22   Declaration of Jesse Lee Guan Yu. 09/29/18
23   Deposition of Kamran Khan taken on behalf of the Defendant. 01/15/19
24   Plaintiff D'Pergo's Memorandum in Support of it's Motion to Withdraw and Amend Its response to Defendant's Request for Admissions. 02/14/19
25   Plaintiff's Memorandum of Law in Support of It's Objection to Defendant Sweetwater Sound, INC.'s Motion to Strike or Dismiss first Amended Complaint. 09/18/18
26   Memorandum of Law in Support of Defendant Sweetwater Sound, Inc.'s Motion for Judgment on the Pleadings on Copyright Statutory Damages and Attorney's Fees. Filed06/08/18
27   Defendant's Motion to Dismiss Counts II and III. Filed 03/28/18
28   Assent to- Motion for Leave to File reply Breif. Filed 03/07/18
29   Defendant Sweetwater Sound, Inc.'S Motion to Strike or Dismiss First Amended Complaint. Filed 09/05/18
30   Plaintiff's Motion to Withdraw and Amend its Response to Defendant's Request for Admissions. 02/14/19
31   Professor Jeff Sedlik Image Comparison. 12/22/15

32    Objection by D'Pergo Custom Guitars, Inc. to Motion for Judgment on the Pleadings. Filed 06/22/18
33    Plaintiff D'Pergo's Objection to Defendant's Motion for Reconsideration. 02/08/19
34    Memorandum by D'Pergo Custom Guitars, Inc. In Support of Objection to Motion to Dismiss Counts II and III. Filed 04/205/18
35    Order. Filed 05/01/18
36    Order. Filed 04/18/19
37    Order. Filed 12/11/18
38    Plaintiff D'Pergo's Objection to Sweetwater Sound, Inc.'s Motion to Strike or Dismiss First Amended Complaint. 09/18/18
39    Reply to Plaintiff's Objection to Defendant Sweetwater Sound, Inc.'S Motion for Judgment on the Pleadings on Copyright Statutory Damages and Attorney's Fees. Filed 06/25/18
40    Plaintiff's Reply in Support of its's Motion to Withdraw and Amend its response to Defendant's Request for Admissions. 03/11/19
41    Reply to Plaintiff's objections to Defendant's Motion to Dismiss. Filed09/25/18
42    Supplemental - D'pergo Custom Guitars, Inc. Responses and objections to Defendant's First Set of Interrogatories. 02/14/19
43    Supplemental - Plaintiff's Objections and Responses to Defendant's first Request for Documents and Things. 09/25/18
44    Supplemental - Plaintiff's Objections and Responses to Defendant's Second request for Documents and Things. 02/05/19
45    Plaintiff's Surreply to Defendant Sweetwater Sound, Inc's Motion to Dismiss First Amended Complaint. 10/01/18
46    Defendant's notice of service of supplemental response to request for production by D'Pergo Custom Guitars, Inc. 12/10/18
47    Defendants' Notice of Service of Amended Response to Request for Admissions by D'Pergo Custom Guitars, Inc. 12/10/18
48    Defendant's Response to Plaintiff's First Set of Interrogatories. 09/10/18
49    Defendant Sweetwater Sound, Inc.'s Motion for Judgement on the Pleadings. Filed 06/08/18
50    Defendant's Notice of Service of Response to second requests for production by D'Pergo Custom Guitars, Inc. 03/06/19
51    Defendant's Notice of Service of Amended Response to Second Requests for Production By D'Pergo Custom Guitars, Inc. 03/20/19
52    Defendant's Supplemental Response to Discovery. 01/30/19
53    Defendant Sweetwater Sound, Inc.'s Expert Request for Production to Plaintiff. 05/25/18
54    Sweetwater RFP 101 Production
55    Sweetwater RFP 102 Production
56    Sweetwater RFP 102 Additional Production
57    Sweetwater December 6 Production
58    Unique Visitors5.pdf
59    Guitar Accessories 2002-2016.pdf
60    DF Resp RFP SS000001-SS000037.pdf
61    Sweetwater 0004035 - 0004036
62    Defendant's Supplemental Response to Discovery 1/30/19
63    DPERGO00001-DPERGO00146.pdf
64    DPERGO00147-DPERGO00148.pdf
65    DPERGO00149-DPERGO00272.pdf
66    DPERGO00273-DPERGO00279.pdf

67   DPERGO00280-DPERGO00286.PDF
68   DPERGO-00287-DPERGO-00308.pdf
69   DPERGO-00309-DPERGO-00423.pdf
70   DPERGO-00537-00576.pdf
71   DPERGO-00577-0648.pdf
72   DPERGO-00651-DPERGO-00653.pdf
73   DPERGO-00654-DPERGO-00655.pdf
74   DPERGO-00656-DPERGO-00662.pdf
75   DPERGO-00663-DPERGO-00664.pdf
76   DPERGO-00665-DPERGO-00680.pdf
77   DPERGO-00681-DPERGO-00687.pdf
78   DPERGO-00688-DPERGO-00688.pdf
79   DPERGO-00689-DPERGO-00689.pdf
80   DPERGO-00690-DPERGO-00690.pdf
81   DPERGO-00691-DPERGO-00692.pdf
82   DPERGO-00693-DPERGO-00694.pdf
83   DPERGO-00695-DPERGO-00696.pdf
84   DPERGO-00697-DPERGO-00698.pdf
85   DPERGO-00699-DPERGO-00700.pdf
86   DPERGO-00701-DPERGO-00703.pdf
87   DPERGO-00704-DPERGO-00706.pdf
88   DPERGO-00707-DPERGO-00710.pdf
89   DPERGO-00487-DPERGO-00513.pdf
90   DPERGO-00649-DPERGO-00650.pdf
91   www.sweetwater.com
92   www.archive.org
93   www.tineye.com
94   www.youtube.com
95   SWEETWATER 00004038
96   Copy of pageviewDataByYearForDPergo.xlsx
97   https://www.sweetwater.com/about/press-releases/
98   https://youtu.be/eTWTTZIggig?t=299
99   https://youtu.be/eTWTTZIggig?t=308
100  https://www.sweetwater.com/about/press-releases/00077
101  https://www.sweetwater.com/about/press-releases/00383
102  https://www.thanxmedia.com/case-studies/sweetwater-sound-case-study/
103  https://customer-experience-management.cioreview.com/cxoinsight/the-art-of-customer-service-in-a-technical-industry-nid-25577-cid-118.html
104  https://www.falcon.io/case-stories/sweetwater/
105  https://web.archive.org/web/20130412181758/http://www.sweetwater.com/shop/guitars/electric-guitars/buying-guide.php
106  http://www.sweetwater.com/shop/guitars/electric-guitars/buying-guide.php
107  http://www.sweetwater.com/insync/electric-guitar-buying-guide/
108  https://web.archive.org/web/20130609011614/http://www.sweetwater.com/insync/electric-guitar-buying-guide/
109  http://useplus.org
110  Telephonic Interview of Stefan Dapergolas, April 29, 2019

| | |
|---|---|
| 111 | guitar_necks.gif |
| 112 | gal-necks.jpg |
| 113 | Original Neck Photo.JPG |
| 114 | https://pjmedia.com/lifestyle/2015/8/25/mitch-gallagher-sweetwater-interview/ |
| 115 | https://www.namm.org/nammu/marketing/retail-marketing-master-class-google-branding |
| 116 | https://justajobtodo.wordpress.com/2013/11/12/the-value-of-images/ |
| 117 | https://www.sweetwater.com/about/press-releases/00099 |
| 118 | https://www.sweetwater.com/about/press-releases/00340 |
| 119 | https://www.sweetwater.com/about/press-releases/00354 |
| 120 | https://www.sweetwater.com/about/press-releases/00299 |
| 121 | https://www.sweetwater.com/about/press-releases/00316 |
| 122 | https://www.youtube.com/watch?v=sD6eKXkD9R8 |
| 123 | https://www.youtube.com/watch?v=PABqBrVvmzM&app=desktop |
| 124 | http://www.journalgazette.net/business/Fine-tuning-the-guitar-market-9581618 |

4

**EXHIBIT C**

## Table of Usages

| Usage # | Photo # | Use | Format | Circulation | Duration | Placement | Size | Web. Top Level Domain | Webpage URL | Country | Usage Description | Start Date | End Date | Years |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| U1 | I1 | Dig tal Media | Corporate and promot ona l s te | NA | Up to 1 year | Repeated use | Up to 1/4 page | sweetwater.co m | http://www.sweetwater.com /shop/guitars/electr c-gu tars/buying-gu de.php | USA | Digital Media, corporate and promotional s te, up to 1 year, repeated use, up to 1/4 page. | 8/5/04 | 1/6/16 | 12 |
| U2 | I1 | Advertisin g - Print, display and TV | Display - Point of sale | Up to 50 | Up to 1 year | NA | Up to 1/4 of ad | NA | NA | USA | Advertising - print, display and TV, display - point of sale, up to 50, up to 1 year, up to 1/4 of ad. | 1/1/07 | 1/6/16 | 10 |
| U3 | I1 | Dig tal Media | Social Media | Over 1 million followers | Up to 1 year | NA | NA | sweetwater.co m | https://www.sweetwater.co m/insync/electr c-gu tar-buying-gu de/ | USA | Dig tal Media, social Media, over 1 million followers, up to 1 year. | 6/9/13 | 1/6/16 | 3 |

**EXHIBIT D**

Agency Stock Quotes Combined



Ad_POS_50qt_1yr_1:4_Dissolve



Ad_POS_50qt_1yr_1:4_Getty

Agency Stock Quotes Combined



Ad_POS_50qt_1yr_1:4_Masterfile



DigMed_CorpPromo_1yr_Rep_1:4_Dissolve

Agency Stock Quotes Combined



DigMed_CorpPromo_1yr_Rep_1:4_Getty



DigMed_CorpPromo_1yr_Rep_1:4_Masterfile

Agency Stock Quotes Combined



DigMed_SocMed_1mil_1yr_Dissolve



DigMed_SocMed_1mil_1yr_Getty

Agency Stock Quotes Combined



DigMed_SocMed_1mil_1yr_Masterfile

**EXHIBIT E**

2019 and 2016 License Fee Samples for License Fee Adjustment 2019 vs 2016



Getty_Mkt_Promo_2016



Getty_Mkt_Promo_2019

**EXHIBIT F**

## Market Rate Adjustment 2019 vs 2016

| Agency | Reference Image | Media Description | Sample License Fee (2016) | Sample License Fee (2019) | Difference | Decrease |
|--------|-----------------|-------------------|---------------------------|---------------------------|------------|----------|
| Getty Images | 3004-001117 | Marketing, Brochure and direct mail, up to 1/8, inside, up to 1,000, electronic distribution, up to | $4,570.00 | $4,570.00 | 0 | 0.00% |

**EXHIBIT G**

Table of Market Rate Calculations

| License Type # | License Type Code | License Type Description | Dissolve Img# D1234_6_539 | Getty Images Img# 56468512 | Masterfile Img# 872-08140677 | Average Market Rate, Per Year (2019) | Average Market Rate, Per Year (2016) |
|---|---|---|---|---|---|---|---|
| T1 | DigMed_CorpPromo_1yr_Rep_1/4 | Digital Media, corporate and promotional site, up to 1 year, repeated use, up to 1/4 page. | $1,568.00 | $1,170.00 | $980.00 | $1,239.33 | $1,239.33 |
| T2 | Ad_POS_50qt_1yr_1/4 | Advertising - print, display and TV, display - point of sale, up to 50, up to 1 year, up to 1/4 of ad. | $1,386.00 | $1,870.00 | $1,280.00 | $1,512.00 | $1,512.00 |
| T3 | DigMed_SocMed_1mil_1yr | Digital Media, social Media, over 1 million followers, up to 1 year. | $437.00 | $530.00 | $710.00 | $559.00 | $559.00 |

**EXHIBIT H**

Table of Licenses and Actual Damages

| License # | Usage # | Photo # | License Type # | License Type Code | License Type Description | License Units | Average Market Rate, Per Year (2016) | Total Actual Damages |
|---|---|---|---|---|---|---|---|---|
| L1 | U1 | I1 | T1 | DigMed_CorpPromo_1yr_Rep_1/4 | Digital Media, corporate and promotional site, up to 1 year, repeated use, up to 1/4 | 12 | $1,239.33 | $14,872.00 |
| L2 | U2 | I1 | T2 | Ad_POS_50qt_1yr_1/4 | Advertising - print, display and TV, display - point of sale, up to 50, up to 1 year, up to 1/4 of ad. | 10 | $1,512.00 | $15,120.00 |
| L3 | U3 | I1 | T3 | DigMed_SocMed_1mil_1yr | Digital Media, social Media, over 1 million followers, up to 1 year. | 3 | $559.00 | $1,677.00 |
| **Total Base Actual Damages** | | | | | | | | **$31,669.00** |