UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


D'Pergo Custom Guitars, Inc.

    v.                           Civil No. 17-cv-747-LM
                                       Opinion No. 2020 DNH 001

Sweetwater Sound, Inc.


**O R D E R**

D'Pergo Custom Guitars, Inc. ("D'Pergo") brings this suit against Sweetwater Sound, Inc. ("Sweetwater"), alleging claims of copyright and trademark infringement and violations of the New Hampshire Consumer Protection Act ("CPA"). D'Pergo alleges that Sweetwater used a copyrighted photograph of D'Pergo's trademarked custom guitar necks and headstock to promote and sell Sweetwater products on Sweetwater's website. Sweetwater moves to exclude two of D'Pergo's experts, Dr. Michael Einhorn and Jeffrey Sedlik. D'Pergo moves to exclude one of Sweetwater's experts, Paul Reed Smith. The opposing party objects to each motion.


**BACKGROUND**

D'Pergo manufactures and sells custom guitars. In 2003, D'Pergo's owner, Stefan Dapergolas, created a photograph showcasing a number of D'Pergo's unique guitar necks and

headstock (the "Photograph"), which D'Pergo published to its website.  D'Pergo used the Photograph on its website from 2003 – 2006, after which it took down the Photograph and replaced it with professional photography.

Sweetwater is a retailer that sells musical instruments, including guitars, through its website.  In 2004, Sweetwater copied the Photograph and published it on Sweetwater's website. More specifically, Sweetwater used the Photograph in its "Electric Guitar Buying Guide" (the "Buying Guide"), in the section titled "Guitar necks explained."[1]  The end of the Buying Guide features a number of guitars from various manufacturers for purchase (not D'Pergo's), as well as a hyperlink to "Shop for Electric Guitars."

In January 2016, D'Pergo contacted Sweetwater about the Photograph and Sweetwater immediately removed the Photograph from its website.  D'Pergo subsequently trademarked its headstock design depicted in the Photograph.

D'Pergo then brought this lawsuit in December 2017.  It asserts five claims: (1) copyright infringement in violation of the Copyright Act (Count I); (2) unfair competition in violation

---

[1] The exact circumstances under which Sweetwater copied and published the Photograph are unclear from the record. Sweetwater represents that it has been unable to determine who posted the Photograph in the Buying Guide in 2004.

of the CPA (Count II); (3) deceptive business practices in violation of the CPA (Count III); (4) false designation of origin and unfair competition in violation of the Lanham Act (Count IV); and (5) trademark infringement in violation of the Lanham Act (Count V).

## DISCUSSION

Sweetwater moves to exclude the opinions of both of D'Pergo's damages experts: Dr. Michael Einhorn and Jeffrey Sedlik. D'Pergo moves to exclude the opinion of Sweetwater's liability expert, Paul Reed Smith.

Federal Rule of Evidence 702 is "[t]he touchstone for the admission of expert testimony in federal court litigation . . . ." Crowe v. Marchand, 506 F.3d 13, 17 (1st Cir. 2007). Under that rule, an expert witness may offer opinion testimony if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. As the structure of this rule suggests, before the factfinder in a case can consider expert testimony

over the adverse party's objection, the trial judge, serving as "gatekeeper," must determine whether the testimony satisfies the relevant foundational requirements. See Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 597 (1993). The party who is the proponent of the expert opinion bears the burden of showing that it is admissible. United States v. Tetioukhine, 725 F.3d 1, 6 (1st Cir. 2013).

I.    Motion to Exclude Dr. Einhorn

In support of its claim for damages for its copyright and trademark infringement claims, D'Pergo retained Dr. Michael Einhorn, an economist, to offer an expert opinion. Sweetwater challenges Dr. Einhorn's opinion as to damages for both categories of claims and argues that his opinion should be excluded in its entirety.

A.    Damages for Copyright Infringement

Under the Copyright Act, a plaintiff who establishes the elements of a copyright infringement claim may recover damages, including "any profits of the infringer that are attributable to the infringement." 17 U.S.C. § 504. "In establishing the infringer's profits, the copyright owner is required to present

proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.

Dr. Einhorn opines that Sweetwater totaled $6,632,249 in gross revenues reasonably related to its use of the Photograph. According to Dr. Einhorn, that figure represents the revenues Sweetwater derived from its sale of electric guitars during the relevant time period from customers who purchased electric guitars after viewing the Buying Guide, which contained the Photograph. As explained further infra, Dr. Einhorn rendered his opinion based on data from the relevant time period that Sweetwater provided in discovery, including Sweetwater's total revenue from its sale of electric guitars, the number of visitors to Sweetwater's "shop page" where customers could purchase electric guitars, and the total number of customers who viewed the Buying Guide.

Sweetwater argues that the court should exclude Dr. Einhorn's opinion for two reasons. First, Sweetwater takes aim at Dr. Einhorn's methodology. Second, Sweetwater contends that the probative value of his opinion is substantially outweighed

by the prejudicial impact and should be excluded under Federal Rule of Evidence 403.  D'Pergo disputes both arguments.[2]

### 1.  Methodology

Sweetwater raises three challenges to Dr. Einhorn's methodology: (1) he offers no rationale for the formula he uses to determine Sweetwater's gross revenues reasonably related to the infringement; (2) he fails to consider several other factors unrelated to the infringement that affected Sweetwater's gross revenues from the sale of electric guitars; and (3) his opinion is based on the faulty premise that the entire Buying Guide is infringing simply because it contained the Photograph.

### a.  Lack of rationale

In his report and during his deposition, Dr. Einhorn explained how he arrived at the $6,632,249 gross revenue figure. In his expert report, Dr. Einhorn includes the following chart:

---

[2] In his report, Dr. Einhorn also offers various estimates of Sweetwater's net profits from the infringing sales based on a range of profit margins.  Although Sweetwater mentions Dr. Einhorn's profit calculation in its section challenging his methodology, it is unclear whether Sweetwater intended to specifically challenge that portion of Dr. Einhorn's opinion. Because D'Pergo addressed Dr. Einhorn's opinion as to profits in its objection, and for the sake of clarity, the court addresses the issue in this order.

| 1 | 2 | 3 | 4 | 5 |
|---|---|---|---|---|
| YEAR | GUITAR SALES | SHOP VISITORS | GUIDE VISITORS | INFRINGING SALES |
| 2004 | $41,029[3] | NA | NA | |
| 2005 | $380,335 | NA | NA | |
| 2006 | $1,016,809 | 43391 | 4715 | $110,490 |
| 2007 | $1,713,865 | 66760 | 5501 | $141,222 |
| 2008 | $2,227,182 | 87008 | 44797 | $1,146,688 |
| 2009 | $2,405,661 | 176609 | 55014 | $749,367 |
| 2010 | $3,159,778 | 449651 | 84878 | $596,453 |
| 2011 | $4,429,955 | 458570 | 83306 | $804,767 |
| 2012 | $7,682,152 | 599068 | 80949 | $1,038,050 |
| 2013 | $12,937,302 | 908480 | 44797 | $637,936 |
| 2014 | $19,028,826 | 1175673 | 51870 | $839,541 |
| 2015 | $18,739,642 | 1297037 | 39295 | $567,736 |
| SUM | | | | $6,632,249 |

Doc. no. 115-2 at 11.  As he explained in both his report and his deposition, Dr. Einhorn arrived at the infringing sales total in Column 5 by beginning with Sweetwater's electric guitar sales each year Sweetwater used the Photograph (Column 2).  Dr. Einhorn then determined the number of customers who visited Sweetwater's shop page to purchase electric guitars (Column 3), and the number of those customers who also visited the Buying Guide which contained the Photograph (Column 4).  Dr. Einhorn then determined the percentage of total customers who reached the shop page who also viewed the Buying Guide and applied that percentage to Sweetwater's total guitar sales to reach the infringing sales figure in Column 5.  Dr. Einhorn further testified at his deposition why he took this approach.

7

Sweetwater contends that Dr. Einhorn's opinion fails to employ any methodology or rationale in reaching his opinion. That is not the case. Although Sweetwater may contend that there are flaws in Dr. Einhorn's methodology, it may explore any such deficiencies during cross-examination. See, e.g., Gray v. Perry, No. 215CV05642CASJCX, 2019 WL 2992007, at *19 (C.D. Cal. July 5, 2019) (denying motion to exclude Dr. Einhorn's expert opinion on damages for copyright infringement claim because any "purported flaws in his methodology or the evidence he relied upon in reaching his opinion are matters for cross-examination and argument").

### b. Other factors unrelated to infringement

Sweetwater next contends that the court must exclude Dr. Einhorn's opinion because his methodology omits consideration of factors unrelated to the infringement that affected Sweetwater's gross revenues from the sale of electric guitars. For example, Sweetwater notes that Dr. Einhorn did not consider: (1) whether visitors to the Buying Guide actually saw the Photograph; (2) the size or placement of the Photograph within the Buying Guide; (3) images of guitars on the Buying Guide which would have influenced customers' purchasing decisions; (4) the fact that Sweetwater did not sell D'Pergo guitars; and (5) the

relationship between Buying Guide visitors and customers'
decisions to purchase a guitar.

Sweetwater questioned Dr. Einhorn at his deposition about
each of these factors.  Although Sweetwater is dissatisfied with
Dr. Einhorn's answers, that is not a sufficient basis to exclude
his opinion.  To the extent Sweetwater believes that Dr. Einhorn
improperly failed to account for certain factors in reaching his
opinion, it is free to explore that line of questioning during
cross-examination.  See, e.g., Gray, 2019 WL 2992007, at *19
("Einhorn's failure to consider costs when calculating profits
goes to the weight of his testimony and can be addressed on
cross-examination.).

### c.  Commingling

In his expert report, Dr. Einhorn stated that his opinion
is based on the premise that the inclusion of the Photograph in
the Buying Guide rendered the entire Buying Guide infringing.
Specifically, Dr. Einhorn states in his report:  "As a legal
matter, I am advised that the commingling of infringing and non-
infringing elements render the entire page to be an infringing
work."  Doc. no. 115-2 at 11.  Thus, Dr. Einhorn's damages
calculation for D'Pergo's copyright infringement claim does not
seek to parse out the impact of the Photograph itself on

9

Sweetwater's sales, but rather considers the impact of the entire Buying Guide.  Sweetwater takes issue with that theory of damages and contends that Dr. Einhorn's opinion is faulty and must be excluded as a result.

"[A]n infringer who commingles infringing and noninfinging elements 'must abide the consequences, unless he can make a separation of the profits so as to assure to the injured party all that justly belongs to him.'" Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 567 (1985) (quoting Sheldon v. Metro-Goldwyn Pictures Corp., 309 U.S. 390, 406 (1940)).  Thus, it is Sweetwater's burden—not D'Pergo's or Dr. Einhorn's—to separate Sweetwater's profits gained as a result of its use of the Photograph from those which were not.

If Sweetwater carries its burden at trial, it may be that Dr. Einhorn's opinion is of limited or no value.  See, e.g., Oracle Am., Inc. v. Google Inc., No. C 10-03561 WHA, 2016 WL 2342365, at *7 (N.D. Cal. May 3, 2016) (holding that plaintiff's expert's opinion based on commingling theory was admissible but that defendant could offer evidence showing that apportionment of profits was appropriate); Dwyer Instruments, Inc. v. Sensocon, Inc., 873 F. Supp. 2d 1015, 1042 (N.D. Ind. 2012) (holding that plaintiff was entitled to proceed with a commingling theory because "[a]lthough an apportionment of

10

profits will most likely be necessary if infringement is found (because much of the Defendants' profits would still likely be attributable to factors other than the infringement), the burden for such apportionment will be on the Defendants upon the Plaintiff's satisfactory proof of gross revenues").  At this stage, however, exclusion of Dr. Einhorn's opinion is not warranted on the ground that he relied on the commingling theory.

For these reasons, Sweetwater's challenges to Dr. Einhorn's methodology are insufficient to warrant excluding Dr. Einhorn's opinion.  See Daubert, 509 U.S. at 596 ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

### 2.   Danger of unfair prejudice

Federal Rule of Evidence 403 provides: "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Sweetwater argues that the purported flaws in Dr. Einhorn's expert report makes his opinion of little

probative value and that any value is substantially outweighed by the danger of prejudice in that the jury will believe it is "a well-considered calculation of damages, when, in fact, it is mere _ipse dixit_."  Doc. no. 115-1 at 12.

For the reasons discussed _supra_, Dr. Einhorn's opinion has probative value.  Sweetwater does not explain how it would suffer unfair prejudice by the admission of his opinion.  Therefore, Dr. Einhorn may offer his opinion as to D'Pergo's gross revenues.

### 3.   Profits

In his report, Dr. Einhorn also offers various estimates of Sweetwater's net profits from the infringing sales.  Dr. Einhorn provided these estimated amounts because Sweetwater purportedly failed to produce any cost information which would have allowed him to calculate Sweetwater's profits.  To the extent Sweetwater challenges Dr. Einhorn's profit margin estimates, as D'Pergo concedes in its objection, that portion of Dr. Einhorn's report is irrelevant.  D'Pergo's burden is to show Sweetwater's gross revenues and it is Sweetwater's burden to prove its deductible expenses and the elements of profit attributable to factors other than its use of the Photograph.  Thus, Dr. Einhorn's

opinion as to profits is not relevant and he may not present
that opinion to the jury at trial.

### B. Damages for Trademark Infringement

Although "[v]arious damage theories are available" under
the Lanham Act for trademark infringement, the "most
straightforward theory of damages would be that the infringement
had diverted specific sales away from" the plaintiff. Fishman
Transducers, Inc. v. Paul, 684 F.3d 187, 194 (1st Cir. 2012).
D'Pergo advances this theory of damages in support of its Lanham
Act claims. Specifically, it submits the affidavits of two
customers—Kamran Khan and Jesse Lee Guan Yu—who state that they
did not purchase D'Pergo's guitars for a period of time because
they saw the Photograph on Sweetwater's website which negatively
impacted their opinions of D'Pergo. The total lost sales from
Khan and Yu are $128,050.

In his expert report, Dr. Einhorn discusses both affidavits
and the amounts contained therein. He then concludes: "As a
matter of law, plaintiff is entitled to recovery of actual
damages related to profits lost from missed sales. Profits are
the difference between revenues and related costs. I am advised
that D'Pergo will provide a suitable witness to substantiate
costs. I cannot opine on lost profits." Doc. no. 115-2 at 13.

13

Sweetwater moves to exclude Dr. Einhorn's opinion as to
D'Pergo's damages for trademark infringement.  It argues that
the opinion merely parrots the figures stated in Khan's and Yu's
affidavits and offers no analysis.

Although D'Pergo argues that Dr. Einhorn's opinion as to
trademark infringement damages should be admissible, it fails to
explain what opinion Dr. Einhorn offers as to those damages.
The portion of Dr. Einhorn's report devoted to trademark
infringement damages merely paraphrases Khan's and Yu's
affidavits and then states that Dr. Einhorn is unable to opine
on D'Pergo's lost profits.  There is no independent analysis or
opinion as to trademark infringement damages contained in Dr.
Einhorn's expert report or deposition testimony.  Thus, Dr.
Einhorn's testimony as to trademark infringement damages would
not "help the trier of fact to understand the evidence or to
determine a fact in issue." Fed. R. Evid. 702(a).

For these reasons, Sweetwater's motion to exclude Dr.
Einhorn's opinion as to D'Pergo's damages for its Lanham Act
claims is granted.


II.  Motion to Exclude Sedlik's Opinion

In addition to infringing profits, a plaintiff who proves a
copyright infringement is entitled to actual damages under the

Copyright Act.  17 U.S.C. § 504.  Actual damages "consist of all income and profits lost as a consequence of the infringement." Bruce v. Weekly World News, Inc., 310 F.3d 25, 28 (1st Cir. 2002).  In addition, in "some cases, a hypothetical license fee is a permissible basis for determining a plaintiff's 'actual damages' arising from an infringement."[3]  Real View, LLC. v. 20-20 Techs., Inc., 811 F. Supp. 2d 553, 556 (D. Mass. 2011); see also 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §§ 14.02[A]-[B] (1999).

In support of its claim for actual damages under the Copyright Act, D'Pergo retained Jeffrey Sedlik, who offered an opinion as to a hypothetical license fee D'Pergo could have obtained for use of the Photograph.  Sweetwater moves to exclude Sedlik's opinion, arguing that it is unreliable because it is based on a legally improper measure of damages in three ways: (1) Sedlik used a subjective, rather than an objective, standard; (2) his use of multipliers to determine damages was punitive, which cannot be included in an actual damages calculation; and (3) he used inapposite comparators to calculate his license fee.

---

[3] Actual damages may also include injury to the market value of the copyrighted work.  See World Wide Video, LLC v. Pagola, No. CV 08-10391-RWZ, 2009 WL 10693580, at *1 (D. Mass. Oct. 8, 2009).  D'Pergo does not claim to have suffered such damages here.

A.   Subjective Perspective

A "reasonable licensing fee is generally computed by determining the fair market value. 'Fair market value' is defined as the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." World Wide Video, 2009 WL 10693580, at *1 (internal citations and quotation marks omitted).  Thus, there must be "objective evidence supporting the fair market value of a hypothetical license fee," rather than evidence showing merely the subjective valuations of the parties.  Real View, 811 F. Supp. 2d at 557.

Sweetwater contends that Sedlik's opinion does not consider what a hypothetical willing buyer and willing seller would have agreed for the buyer's use of the Photograph.  Sweetwater argues that, instead, Sedlik's opinion is based on what he believes Sweetwater would have been willing to pay D'Pergo for use of the Photograph, which is an improper measure of damages.  Sweetwater cites four instances of Sedlik using a subjective, rather than an objective, standard.

1.  Sedlik's admissions during his deposition

Sweetwater points to two statements Sedlik made during his deposition that purportedly show that he used a subjective standard.  The first is that Sedlik testified that in calculating a hypothetical license fee, he "looks at the parties that are actually involved."  Doc. no. 116-3 at 3.  The second is that Sedlik testified: "does the identity of the parties make -- would the identity of the parties, if known at the time of the transaction, make a difference in the license transaction? And, in my opinion, you have to consider that."  Id. at 4.

Sedlik's statements during his deposition do not require the court to exclude his testimony.  Sedlik reiterated several times in his expert report and during his deposition testimony that he was using the standard of a hypothetical willing buyer and willing seller, and that he used the parties' identities merely to give context to his analysis.  See doc. no. 116-2 at 23; doc. no. 121-1 at 9.  Sweetwater has not shown that such considerations are improper.  See, e.g., World Wide Video, 2009 WL 10693580, at *1 (noting that a determination of fair market value must consider "the use the infringer made" of the copyrighted work).  To the extent Sweetwater believes Sedlik's calculation went beyond that limit, which is not readily

17

apparent from his deposition testimony or report, it may explore
that topic on cross-examination.

<br>

### 2. Rights managed license

Sedlik explained in his expert report that to calculate the
hypothetical license fee, he first needed to determine the
appropriate licensing model.  He stated that clients acquire
rights to images under various licensing models, each of which
he listed and described in his report.  Sedlik opted for a
"rights managed" licensing model, in which "usage fees are based
not on file size, but upon the scope of usage desired by the
client."  Doc. no. 116-2 at 13.

Sweetwater contends that Sedlik's use of a rights managed
model shows that he used a subjective standard in determining a
hypothetical license fee.  Specifically, Sweetwater asserts that
Sedlik used a rights managed model purely because Sweetwater
took the Photograph from a competitor, D'Pergo, rather than
going to a "stock agency."  Sweetwater contends that under an
objective standard, Sedlik should have considered only what a
hypothetical willing buyer would have been willing to pay, which
would have been a less expensive license than a rights managed
model.

At his deposition, Sedlik explained that he used a rights managed model for several reasons, including that Sweetwater took the Photograph from an individual photographer (rather than a stock industry photograph) and that individual photographers often offer only rights managed licenses. See doc. no. 121-1 at 4, 21-22. Sweetwater takes issue with Sedlik's reasoning, and has its own expert, Ellen Boughn, who issued a rebuttal report to Sedlik's and who opines that a different licensing model is appropriate in this case. See doc. no. 125-14. Sweetwater may offer Boughn's opinion at trial and cross-examine Sedlik as to his use of a rights managed model, but it has not shown a sufficient basis to exclude Sedlik's opinion on the appropriate licensing model. See Under a Foot Plant, Co. v. Exterior Design, Inc., No. CV BPG-15-871, 2017 WL 3593014 (D. Md. Aug. 21, 2017) (rejecting challenge to Sedlik's use of a rights managed model in calculating a hypothetical license fee).

### 3. Scarcity multiplier

In reaching his opinion, Sedlik calculated a "base fee," which was the approximate market value of licenses for Sweetwater's alleged unauthorized use of the Photograph. Sedlik determined that the base fee did not contemplate the scarcity of the Photograph in 2016, in that "few if any similar stock

photographs are offered for licensing."  Doc. no. 116-2 at 26.
Therefore, he applied a "scarcity multiplier . . . to adjust the
fair market value of generic, common photographs to the value of
a relatively scarce photograph of guitar necks and headstocks."
Id.

Sweetwater contends that Sedlik's use of a scarcity
multiplier improperly incorporates Sweetwater's actual conduct,
rather than determining what a hypothetical willing buyer would
have done.  Specifically, Sweetwater contends that, according to
Sedlik, the Photograph:

> is only scarce in the sense that he assumes Sweetwater
> needed exactly that image and not a substitute because
> Sweetwater happened to "choose" that image. If
> Sweetwater is removed from this equation, the alleged
> scarcity of the image evaporates because Mr. Sedlik
> identifies no other party who ever licensed this image
> for anything.

Doc. no. 116-1 at 9.

Sweetwater's arguments do not require exclusion of Sedlik's
opinion.  As with many of Sweetwater's other complaints, its
challenge to Sedlik's use of a scarcity multiplier appears to
suggest that Sedlik should not have considered anything about
the actual facts of this case, even if merely to give context to
his opinion.  Sweetwater does not cite any case that supports
that contention.

As Sedlik testified during his deposition, he considered the fact that Sweetwater used the Photograph, rather than obtaining a photograph from a stock photo agency, as evidence to show that the Photograph was scarce.  Doc. no. 121-1 at 20. Sedlik also stated that he conducted his own search and "could not identify any similar image."  Id. at 17.  Although Sweetwater may challenge Sedlik's conclusion, the court perceives no error requiring exclusion of Sedlik's opinion on this basis.


### 4.    Competitive use multiplier

Sedlik also used a multiplier for competitive use to capture the "scenario in which an image licensor is approached by a direct competitor seeking to purchase licenses to make competing use of the licensor's photographs."  Doc. no. 116-2 at 27.  Sweetwater contends that Sedlik's computation with a competitive use multiplier shows a subjective approach because Sedlik considered the status of Sweetwater and D'Pergo as competitors.

Once again, Sedlik's consideration of the factual background of this case does not show that he used a subjective standard so as to require the court to exclude his opinion. Sedlik testified at his deposition that Sweetwater's status as

D'Pergo's competitor required a competitive use multiplier, but that his calculation would be the same for any competitor. Doc. no. 121-1 at 13. Whether a competitive use multiplier is appropriate in this case is a question that may be explored at trial, but Sedlik's use of the multiplier does not show that he employed a subjective standard. See Under a Foot Plant, 2017 WL 3593014, at *5-6 (rejecting defendant's arguments that Sedlik improperly employed a competitive use multiplier).

In short, none of Sweetwater's challenges shows that Sedlik improperly applied a subjective, rather than an objective, standard. Sweetwater may cross-examine Sedlik as to any perceived deficiencies in his opinion and present its rebuttal expert.[4]

B.    Punitive Multipliers

Sweetwater also contends that Sedlik's use of multipliers is improperly punitive. It cites cases that have rejected the use of multipliers in Copyright Act cases, see doc. no. 116-1 at 13 (citing cases), and a case in which Sedlik himself purportedly testified that the use of multipliers is punitive,

---

[4] As with its motion to exclude Dr. Einhorn, Sweetwater argues briefly that the court should exclude Sedlik's opinion under Rule 403 because admission of the opinion would be unduly prejudicial and would be misleading to the jury. The court finds that argument unpersuasive.

see id. (citing Straus v. DVC Worldwide, Inc., 484 F. Supp. 2d
620, 648–49 (S.D. Tex. 2007)).

Both D'Pergo and Sedlik agree that the use of multipliers
as a punitive measure in determining actual damages is
impermissible under the Copyright Act.  According to Sedlik,
however, he did not use punitive multipliers in this case, but
instead used multipliers to properly account for fair market
value.

This is not the first time Sedlik has distinguished between
the use of multipliers as a punitive measure as opposed to using
them to account for fair market value.  Indeed, in Leonard v.
Stemtech Int'l Inc, the Third Circuit upheld a jury's damages
award for copyright infringement that was based on Sedlik's
opinion, which included multipliers.  834 F.3d 376, 393 (3d Cir.
2016).  The Third Circuit acknowledged that certain district
courts have rejected the use of multipliers as a component of
actual damages under the Copyright Act.  Id.  The court added:

> We agree with the reasoning of these district courts
> that, under the Copyright Act, an actual damages
> award may not include such a punitive component.  We also
> agree with Leonard that this case does not involve the
> use of a multiplier to penalize unauthorized use.
> Rather, the record demonstrates that the multiplier
> here was used to calculate fair market value.

Id.  The court then discussed Sedlik's testimony that the
"multipliers here reflected a premium that, according to Sedlik,

the market would find acceptable given the scarcity and exclusivity of the images as compared to the images for which he had secured rates for comparative purposes."[5]  Other courts have also accepted Sedlik's use of multipliers in Copyright Act cases.  See Brittney Gobble Photography, LLC v. Wenn Ltd., No. 3:16-CV-306-HSM-DCP, 2019 WL 2446997, at *8 (E.D. Tenn. Feb. 19, 2019), report and recommendation adopted sub nom. Brittney Gobble Photography, LLC v. USA Entm't News, Inc., No. 3:16-CV-306, 2019 WL 1125644 (E.D. Tenn. Mar. 12, 2019); Under a Foot Plant, 2017 WL 3593014, at *4-5.

Here, Sedlik stated in his expert report that the use of multipliers was not punitive in this case, but rather necessary to calculate fair market value.  See doc. no. 116-2 at 26-27. As with its other challenges, Sweetwater may cross-examine Sedlik on his use of multipliers, and rely on its own damages expert to rebut his testimony.  But Sweetwater has not shown that exclusion of Sedlik's opinion is warranted on that basis.

C.  Inapposite Comparators

Sweetwater contends that Sedlik used "inapposite comparators in calculating his 'base' license fee."  Doc. no.

_____

[5] The court referenced Sedlik's testimony in Straus, noting that Sedlik stated "that use of a multiplier would be punitive in that case."  Id.

[116-1](#) at 15. Specifically, Sweetwater contends that Sedlik's use of a rights managed license is improper because such licenses are typically the province of professional photographers, whereas the Photograph was taken by an amateur.

A nearly identical challenge to Sedlik's use of a rights managed license in his expert opinion was considered and rejected by the District of Maryland in [Under a Foot Plant, 2017 WL 3593014](#). The court there held that nothing "imposes a particular licensing model on an amateur photographer, and Sedlik supported his choice and application of a rights managed model with testimony that meets the threshold of reliability required by Rule 702." _Id._ at *11. That was because Sedlik "explained in detail how a rights managed model works, and why, in his opinion, it was the most appropriate license type given plaintiff's expressed desire to control the use of its images and the integrity of its brand." _Id._ The court added that it "cannot conclude that this testimony is unreliable as a matter of law, or that no reasonable jury could accept Professor Sedlik's conclusions." _Id._

Like the District of Maryland, this court sees no reason to exclude Sedlik's opinion regarding a rights managed license. As discussed _supra_, Sweetwater has an expert who disagrees with Sedlik's use of a rights managed model and opines that a

different licensing model is appropriate.  Sweetwater is free to challenge Sedlik's licensing model at trial through cross-examination and by offering its own expert's opinion.

    D.   <u>Summary</u>

Sweetwater raises several challenges to Sedlik's opinion, many of which are addressed in its expert's rebuttal report. Such challenges may be addressed during cross-examination and do not require exclusion of any part of Sedlik's opinion.

## III. <u>Motion to Exclude Paul Reed Smith</u>

Sweetwater offers Paul Reed Smith, the Managing General Partner of Paul Reed Smith Guitars Limited Partnership, as an expert in the "guitar industry in general."  Smith offers several opinions, including that (1) the Photograph's appearance in the Buying Guide "had no negative effect whatsoever on D'Pergo's reputation" and that if anything, "it improved D'Pergo's reputation" because Sweetwater's reputation is "stellar"; (2) D'Pergo's headstock looks "generic"; (3) D'Pergo has had "no impact on the musical instrument industry"; (4) the Photograph "has no value or potential value as used to sell musical instruments"; (5) Smith "never heard of a photograph being paid for in our industry in the way that D'Pergo seeks

payment"; and (6) when photographs are used in the guitar industry, "the photographer is typically paid by a flat fee and not per use of the photograph."  Doc. no. 131-2 at 3-4.

D'Pergo seeks to exclude Smith's opinions, arguing that Smith is not an expert with respect to the opinions he offers, his opinions are not relevant, his opinions are mere speculation and unsupported conclusions, and his opinions do not help the trier of fact to understand the evidence or to determine a fact in issue.  Sweetwater disputes each argument.

The court agrees with D'Pergo that several of the opinions Smith offers in his expert disclosure are not relevant to the issues in this case.  For example, the effect of the use of the Photograph in the Buying Guide on D'Pergo's reputation, Smith's impression of D'Pergo's trademarked headstock design as looking "generic," and D'Pergo's purported impact on the musical industry generally have no bearing on any of D'Pergo's claims in the case.  Thus, even if Smith were qualified to offer such opinions at trial, he is not permitted to do so because those opinions are not relevant.

Smith's remaining opinions are relevant to D'Pergo's claim for damages.  For example, whether the use of a photograph such as D'Pergo's helps to sell musical instruments is directly relevant to D'Pergo's claims for damages on its Copyright Act

claim.  Indeed, informing his opinion, Dr. Einhorn relies on his interpretation of the testimony of Sweetwater's Rule 30(b)(6) witness, David Stewart, concerning the impact of photographs to help sell guitars.  In addition, the fees typically paid for photographs in connection with selling musical instruments are directly relevant to Sedlik's opinion as to the appropriate license fee.

Smith states in his expert disclosure that, as the managing general partner of a large manufacturer of electric guitars whose company advertises guitars in various music publications and on its website, he has personal experience regarding the use of photographs in selling musical instruments and the typical fees associated with those photographs.  See doc. no. 131-2 at 4.  Thus, in light of Smith's "experience," he may "testify in the form of an opinion or otherwise" because his "specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.

Such testimony, however, must be limited to Smith's personal knowledge about these issues.  Smith states that he has been interviewed and quoted hundreds of times, that he is under constant requests to do interviews and clinics, and that his company's guitars are played by world-famous guitar players. Smith, however, has not authored any publications or been

28

qualified as an expert in the past.  Although Smith appears to be a highly respected person in his industry, Sweetwater has not shown that he is qualified under Federal Rule of Evidence 702 to offer his opinions about the general practice in the guitar industry to the extent it is not based on his personal knowledge.[6]

For these reasons, Smith may testify about his experience regarding the use of photographs to sell electric guitars, the impact of those photographs on sales, and the typical fee and fee arrangement regarding guitar companies' purchase of those photographs.  He may not offer an opinion as to the parties' respective reputations, his impression of D'Pergo's headstock design, or D'Pergo's impact on the musical industry.

**CONCLUSION**

For the foregoing reasons, Sweetwater's motion to exclude the opinion and testimony of Dr. Michael Einhorn (doc. no. 115) is granted as to Dr. Einhorn's opinion on trademark infringement damages but is otherwise denied and its motion to exclude the opinion and testimony of Jeffrey Sedlik (doc. no. 116) is

---

[6] Sweetwater points to the fact that Smith "is likely the most successful luthier turned guitar manufacturer in the industry."  Doc. no. 136-1 at 9.  It is unclear how Smith's experience as a maker of stringed instruments has any bearing on his qualifications to offer the opinions in his expert report.

denied.  D'Pergo's motion to exclude the opinion and testimony
of Paul Reed Smith (doc. no. 131) is granted in part and denied
in part as provided in this order.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 6, 2020

cc:  Counsel of Record