UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

D'Pergo Custom Guitars, Inc.

    v.                                            Civil No. 17-cv-747-LM
                                                  Opinion No. 2020 DNH 003

Sweetwater Sound, Inc.

## **O R D E R**

D'Pergo Custom Guitars, Inc. ("D'Pergo") brings this suit against Sweetwater Sound, Inc. ("Sweetwater"), alleging claims of copyright and trademark infringement and violations of the New Hampshire Consumer Protection Act ("CPA"). D'Pergo alleges that Sweetwater used a copyrighted photograph of D'Pergo's trademarked custom guitar necks and headstock to promote and sell Sweetwater products on Sweetwater's website. Sweetwater moves for summary judgment on all of D'Pergo's claims. Doc. no. 111. D'Pergo moves for summary judgment on its copyright infringement claim. Doc. no. 112. The opposing party objects to each motion.

**STANDARD OF REVIEW**

A movant is entitled to summary judgment if it "shows that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ.

P. 56(a). In reviewing the record, the court construes all facts and reasonable inferences in the light most favorable to the nonmovant. Kelley v. Corr. Med. Servs., Inc., 707 F.3d 108, 115 (1st Cir. 2013). "Where the parties file cross-motions for summary judgment, [the court] employ[s] the same standard of review, but view[s] each motion separately, drawing all inferences in favor of the nonmoving party." Fadili v. Deutsche Bank Nat. Tr. Co., 772 F.3d 951, 953 (1st Cir. 2014).

## BACKGROUND[1]

D'Pergo manufactures and sells custom guitars. In 2003, D'Pergo's owner, Stefan Dapergolas, created a photograph showcasing a number of D'Pergo's unique guitar necks and headstock, which D'Pergo published to its website (the "Photograph"). D'Pergo used the Photograph on its website from 2003 – 2006, after which it took down the Photograph and replaced it with professional photography.

Sweetwater is a retailer that sells musical instruments, including guitars, through its website. In 2004, Sweetwater copied the Photograph and published it on Sweetwater's website. More specifically, Sweetwater used the Photograph in its

---

[1] The facts in this section are taken from Sweetwater's statement of undisputed material facts, see doc. no. 111-1 at 2-8, and are not challenged by D'Pergo, see doc. no. 125 at 1.

"Electric Guitar Buying Guide" (the "Buying Guide"), in the section titled "Guitar necks explained."[2] The end of the Buying Guide features a number of guitars from various manufacturers for purchase (not D'Pergo's), as well as a hyperlink to "Shop for Electric Guitars."

In January 2015, Dapergolas learned that Sweetwater was using the Photograph in the Buying Guide. D'Pergo later applied for and was granted a copyright registration for the Photograph from the Copyright Office.

In January 2016, D'Pergo contacted Sweetwater about the Photograph and Sweetwater removed the Photograph from its website. D'Pergo subsequently trademarked its headstock design depicted in the Photograph.

D'Pergo then brought this lawsuit in December 2017. It asserts five claims: (1) copyright infringement in violation of the Copyright Act (Count I); (2) unfair competition in violation of the CPA (Count II); (3) deceptive business practices in violation of the CPA (Count III); (4) false designation of origin and unfair competition in violation of the Lanham Act (Count IV); and (5) trademark infringement in violation of the Lanham Act (Count V).

---

[2] The exact circumstances under which Sweetwater copied and published the Photograph are unclear from the record. Sweetwater represents that it has been unable to determine who posted the Photograph in the Buying Guide in 2004.

**DISCUSSION**

Sweetwater moves for summary judgment on all of D'Pergo's claims. D'Pergo moves for summary judgment on its copyright infringement claim in Count I. The opposing party objects to each motion.

I. Sweetwater's Motion

Sweetwater states in its motion for summary judgment that it concedes it used the Photograph without permission in the Buying Guide. It contends, however, that it is entitled to summary judgment on D'Pergo's claims for various reasons. The court addresses each claim in turn.

A. Copyright Infringement (Count I)

"To establish copyright infringement under the Copyright Act, 'two elements must be proven: 1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" Johnson v. Gordon, 409 F.3d 12, 17 (1st Cir. 2005) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Once a plaintiff establishes both elements, it may seek to recover statutory damages, actual damages, and infringing profits under the Copyright Act. See 17 U.S.C. § 504.

Sweetwater does not address the elements of a copyright infringement claim in its motion.  Instead, it argues that it is entitled to summary judgment because D'Pergo cannot recover damages for that claim.

As Sweetwater notes, the court held in a previous order that D'Pergo is not entitled to statutory damages because D'Pergo did not register its copyright before Sweetwater's alleged infringement began.  See doc. no. 43 at 8 (citing 17 U.S.C. § 412).  Sweetwater contends that the record evidence shows that D'Pergo cannot recover actual damages or infringing profits.  D'Pergo argues that there is a genuine issue of material fact as to whether it can recover either category of damages.

1.  Actual damages

In a copyright infringement case, actual damages "consist of all income and profits lost as a consequence of the infringement." Bruce v. Weekly World News, Inc., 310 F.3d 25, 28 (1st Cir. 2002).  In addition, in "some cases, a hypothetical license fee is a permissible basis for determining a plaintiff's 'actual damages' arising from an infringement."[3]  Real View, LLC.

---

[3] Actual damages may also include injury to the market value of the copyrighted work.  See World Wide Video, LLC v. Pagola, No. CV 08-10391-RWZ, 2009 WL 10693580, at *1 (D. Mass. Oct. 8,

5

v. 20-20 Techs., Inc., 811 F. Supp. 2d 553, 556 (D. Mass. 2011); see also 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright, §§ 14.02[A]-[B] (1999). A "reasonable licensing fee is generally computed by determining the fair market value. 'Fair market value' is defined as the reasonable license fee on which a willing buyer and a willing seller would have agreed for the use taken by the infringer." World Wide Video, 2009 WL 10693580, at *1 (internal citations and quotation marks omitted).

Sweetwater argues that there is no evidence in the record that D'Pergo suffered actual damages. Specifically, Sweetwater states that D'Pergo's claim for actual damages is based on a hypothetical license fee, but that it cannot recover such damages because: (1) it cannot prove that anyone would have paid for a license to use the Photograph; and (2) D'Pergo's damages expert, Jeffrey Sedlik, relies on improper calculations and assumptions to establish a hypothetical license fee.

As discussed in the court's order denying Sweetwater's motion to exclude Sedlik, see doc. no. 138, D'Pergo may offer Sedlik's opinion at trial. Sweetwater is entitled to cross-examine Sedlik about his opinion and methodology, and present

---

2009). D'Pergo does not claim to have suffered such damages here.

6

the opinion of its rebuttal expert, Ellen Boughn. Because Sedlik's opinion is not excluded, the court must take it into account in ruling on Sweetwater's motion. Viewing the evidence in the light most favorable to D'Pergo, there is a genuine issue of material fact as to whether D'Pergo suffered actual damages from Sweetwater's copyright infringement. Therefore, the court denies Sweetwater's motion for summary judgment as to D'Pergo's request for actual damages for its copyright infringement claim.

### 2. Infringing Profits

A copyright owner is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." § 504. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id. at (b).

The parties disagree as to the burden the Copyright Act places on a plaintiff to prove infringing profits. Sweetwater argues that the majority of courts have held that § 504(b) should not be read literally and have required a plaintiff to establish a "legally significant connection" between the infringement and a defendant's revenues before the burden shifts

to the defendant to show that its profits are attributable to other factors.  See doc. no. 111-1 at 9 (citing cases).  It contends that this principle is especially applicable in "indirect profit" cases such as this, where the defendant is not selling the product in the infringing photograph but instead allegedly uses the photograph to increase the likelihood of the sale of another product or service.  Id. at 12-14 (citing cases).  Sweetwater further states that the First Circuit has not enunciated an exact standard for connecting infringement to profits, but it notes that the court in Jane Doe No. 1 v. Backpage.com, LLC, required a plaintiff to "link the display of a particular image to some discrete portion of the publisher/infringer's profits" in order to meet its burden under § 504(b).  817 F.3d at 28 (1st Cir. 2016), cert. denied, 137 S. Ct. 622 (2017).  Sweetwater contends that D'Pergo cannot show a non-speculative connection between the Photograph and Sweetwater's profits and, therefore, it is not entitled to infringing profits.

D'Pergo counters that Sweetwater overstates a plaintiff's burden under § 504(b).  It notes that the First Circuit has described a plaintiff's burden under that section as "minimal" and requires only that a plaintiff place a defendant's gross revenues into evidence.  See, e.g., Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1173 (1st Cir. 1994),

abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010); see also John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26, 47 (1st Cir. 2003). D'Pergo also argues that even if § 504(b) imposes a higher burden on a plaintiff, it has shown that Sweetwater's gross revenues are connected to the infringement.

Regardless of whether a plaintiff must meet an initial burden to a show a "legally sufficient causal link" between the infringement and a defendant's gross revenues, viewing the evidence in the light most favorable to D'Pergo, there is a genuine issue of material fact as to whether D'Pergo can establish such a nexus. D'Pergo does not merely point to Sweetwater's gross revenues and put the burden on Sweetwater to prove that its profits are not attributable to the infringement. Rather, through its expert, Dr. Michael Einhorn, D'Pergo offers as evidence of Sweetwater's gross revenues only the profits Sweetwater purportedly derived from customers who purchased electric guitars online after viewing the Buying Guide, which contained the Photograph.[4] See doc. no. 115-2 at 7-11.

The record, viewed favorably to D'Pergo, contains disputes of fact as to whether all profits Sweetwater derived from

---

[4] As with Sedlik, the court has held that Einhorn's opinion as to copyright infringement damages is not excluded. See doc. no. 138.

9

purchases through the Buying Guide were attributable to the Photograph.  Cf. Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 524 (4th Cir. 2003) (stating that the defendants successfully carried their burden of demonstrating the absence of a genuine issue of material fact as to the existence of infringing profits when they proffered affidavits showing that revenues were driven by factors unrelated to the infringing logo design).  Viewing the evidence in the light most favorable to D'Pergo, its claim for infringing profits is sufficiently supported to survive summary judgment.  IvyMedia Corp. v. ILIKEBUS, Inc., No. 15-11918-NMG, 2017 U.S. Dist. LEXIS 80547, at *2 (D. Mass. May 25, 2017) (allowing claim for infringing profits to survive summary judgment even where "evidence of damages and causation is tenuous at best").

    B.    <u>Lanham Act Claims (Counts IV and V)</u>

Counts IV and V allege claims for violation of § 1125(a) of the Lanham Act.[5]  That section provides, in relevant part:

>  (1) Any person who, on or in connection with any goods
>  or services, or any container for goods, uses in
>  commerce any word, term, name, symbol, or device, or
>  any combination thereof, or any false designation of

---

[5] Neither party addresses the difference between Count IV ("False Endorsement/False Association") and Count V ("Trademark Infringement") in its summary judgment briefing.  Because the parties' briefing focuses on a broad argument applicable to both claims, the court does not address the issue.

> origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a). "To succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause consumer confusion." Bos. Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 12 (1st Cir. 2008).

The "Lanham Act extends protection not only to words and symbols, but also to 'trade dress,' defined as the design and appearance of a product together with the elements making up the overall image that serves to identify the product presented to the consumer." Yankee Candle Co. v. Bridgewater Candle Co., LLC, 259 F.3d 25, 37–38 (1st Cir. 2001) (citing cases) (internal quotation marks omitted). "The primary purpose of trade dress protection is to protect that which identifies a product's source." Id. at 38; see also I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 35 (1st Cir. 1998).

11

D'Pergo has consistently represented that it seeks to recover from Sweetwater for infringement of its trademark, not its trade dress. Based on these representations, Sweetwater moves for summary judgment on Counts IV and V, contending that the Headstock Design Trademark is not a "word, term, name, symbol, or device, or any combination thereof" and, therefore, is not entitled to trademark protection. The court agrees. And because D'Pergo has waived a trade dress infringement claim in this case, Counts IV and V must be dismissed.

The Headstock Design Trademark's registration states that the "mark consists of a product configuration consisting of a two dimensional guitar headstock." Doc. no. 44-4 at 2. Thus, as the registration shows and D'Pergo alleges in its amended complaint, the Headstock Design Trademark protects D'Pergo's "distinctive design mark . . . for use with electric guitars." Doc. no. 45 at ¶ 21. D'Pergo alleges in the amended complaint that "the Headstock Design Trademark has become exclusively identified with" D'Pergo. Id. at ¶ 67.

D'Pergo concedes that its Headstock Design Trademark, which protects the "design" and "product configuration" of its guitar headstock, can be classified as trade dress. See doc. no. 125 at 23 (stating that D'Pergo could have brought trade dress infringement claims). D'Pergo argues, however, that even if the

12

Headstock Design Trademark could be entitled to protection as a trade dress, it is also entitled to protection as a trademark.

In support of its argument, D'Pergo cites the Supreme Court's decision in Qualitex Co. v. Jacobson Prod. Co., 514 U.S. 159 (1995). In Qualitex, the Supreme Court stated:

> The language of the Lanham Act describes that universe in the broadest of terms. It says that trademarks "includ[e] any word, name, symbol, or device, or any combination thereof." § 1127. Since human beings might use as a "symbol" or "device" almost anything at all that is capable of carrying meaning, this language, read literally, is not restrictive.

Id. at 162. D'Pergo notes that the United States Patent and Trademark Office ("USPTO") has authorized trademarks for the designs of various shapes, including the Coca-Cola bottle (Registration No. 696147), which shows that its headstock design can be protected under trademark, rather than trade dress, law.

The Supreme Court's holding in Qualitex does not support D'Pergo's contention that it can proceed under a theory of trademark, rather than trade dress, infringement. As Sweetwater notes, the Lanham Act does not define trade dress. Rather, a cause of action for trade dress infringement arose because courts held that the Lanham Act "embrace[d] not just word marks, such as 'Nike,' and symbol marks, such as Nike's 'swoosh' symbol, but also 'trade dress'—a category that . . . encompass[es] the design of a product." Wal-Mart Stores, Inc. v. Samara Bros., 529 U.S. 205, 209 (2000). In other words,

trade dress became protectable under the Lanham Act because courts assumed "that trade dress constitutes a 'symbol' or 'device' for purposes of the relevant sections." Id. D'Pergo offers no persuasive support for its theory that it can protect its "product design" and "configuration"—categories that courts have consistently held are protectable under the Lanham Act as trade dress—under a theory of trademark infringement. Id.; Tracey Tooker & TT Ltd., Inc. v. Whitworth, 212 F. Supp. 3d 429, 434 (S.D.N.Y. 2016) (noting that the Lanham Act "protects trade dress, which includes 'what is at issue in this case: the design or configuration of the product itself.'" (quoting Yurman Design, Inc. v. PAJ, Inc., 262 F.3d 101, 114 (2d Cir. 2001)); see also 1 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1 (5th ed. 2019) (stating that trade dress encompasses "the shape and design of the product itself").

D'Pergo's argument concerning the Coca-Cola bottle's shape does not support its theory. Although Coca-Cola registered its bottle's shape with the USPTO, several courts have noted that the design of the Coca-Cola bottle is protected as a trade dress.[6] See Homeland Housewares, LLC v. Euro-Pro Operating LLC,

---

[6] D'Pergo appears to suggest that registration with the USPTO is prima facie evidence that its Headstock Design Trademark is protectable as a trademark, rather than as trade dress. To the extent D'Pergo makes that argument, it is unavailing. Registration "on the principal register is 'prima facie evidence of the validity of the registered mark'" which

14

No. CV 14-03954 DDP MANX, 2015 WL 476287, at *5 (C.D. Cal. Feb. 5, 2015) (describing the Coca-Cola bottle shape as trade dress); Clearline Techs. Ltd. v. Cooper B-Line, Inc., No. CV H-11-1420, 2012 WL 12893491, at *8 (S.D. Tex. July 2, 2012) (noting that the shape of a Coca-Cola bottle is protected as trade dress); Rauch Indus., Inc. v. Radko, No. 3:07-CV-197-C, 2007 WL 3124647, at *7 (W.D.N.C. Oct. 25, 2007) (same). And, although, as D'Pergo notes, the USPTO has granted trademarks for shapes and designs of guitars, those, too, are considered protectable as trade dress. See, e.g., 1 McCarthy, supra, § 8:7 (listing "[e]xamples of trade dress which have been held to be registerable as trademarks or service marks" and including "the shape of a guitar head" and "the shape of a guitar body" (citing Yamaha International Corp. v. Hoshino Gakki Co., 231 U.S.P.Q. 926 (T.T.A.B. 1986), aff'd, 840 F.2d 1572, 6 U.S.P.Q. 2d 1001 (Fed. Cir. 1988) and Gibson Guitar Corp. v. Paul Reed Smith

---

entitles the owner to a presumption that its mark is valid." Hillside Plastics, Inc. v. Dominion & Grimm U.S.A., Inc., No. 3:17-CV-30037-MGM, 2018 WL 4537205, at *7 (D. Mass. Aug. 6, 2018) (quoting 15 U.S.C. § 1115(a) (further citations and quotation marks omitted)). Thus, registration of a trademark is relevant to the validity of the mark, not whether it is protected as a trademark or trade dress. See, e.g., BBK Tobacco & Foods, LLP v. Galaxy VI Corp., No. 17-CV-4079 (BCM), 2019 WL 4747985, at *9 (S.D.N.Y. Sept. 30, 2019) (noting that registration on the principal register is prima facie evidence of the validity of both plaintiff's trademarks and trade dress).

Guitars, LP, 423 F.3d 539, 76 U.S.P.Q. 2d 1372, 2005 FED App. 0387P (6th Cir. 2005), cert. denied, 126 S. Ct. 2355 (2006))).

To be clear, there is no dispute that the Lanham Act protects trade dress, and that D'Pergo may have been able to recover under a theory of trade dress infringement. But, as the court has noted in prior orders and D'Pergo does not dispute, D'Pergo has waived any claim for trade dress infringement in this case. See, e.g., doc. no. 92 at 4-7. D'Pergo's Headstock Design Trademark, which protects the "design" and "product configuration" of its guitar headstock, is protectable as trade dress, not a trademark. Therefore, Sweetwater is entitled to summary judgment on Counts IV and V.

C. Consumer Protection Act Claims (Counts II and III)

D'Pergo asserts two claims under the New Hampshire Consumer Protection Act, RSA § 358-A. The CPA provides, in relevant part:

> It shall be unlawful for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state. Such unfair method of competition or unfair or deceptive act or practice shall include, but is not limited to, the following:
>
>     I. Passing off goods or services as those of another;

> II. Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

RSA 358-A:2.

D'Pergo alleges in Count II that Sweetwater's use of the Photograph in the Buying Guide effectively passed off D'Pergo's guitars as Sweetwater's and caused a likelihood of confusion as to the source of its goods. Count III similarly alleges that Sweetwater's use of the Photograph in its Buying Guide caused a likelihood of confusion as to the source of its guitars.[7]

Sweetwater contends that D'Pergo's CPA claims are identical to its Lanham Act claims. It argues that because it is entitled to summary judgment on D'Pergo's Lanham Act claims, it is also entitled to judgment on the CPA claims.

Sweetwater is mistaken. The CPA is "a comprehensive statute whose language indicates that it should be given broad sweep." Ne. Lumber Mfrs. Assoc. v. N. States Pallet Co., 710 F. Supp. 2d 179, 188 (D.N.H. 2010). By "its plain language, the scope of unlawful activity covered by the CPA is broader than the trademark infringement claims governed by the Lanham Act." Id. Thus, even when a defendant's conduct may be insufficient to establish a claim under the Lanham Act, it may still violate the CPA. Id. (granting plaintiff's motion for summary judgment

---

[7] As with its Lanham Act claims, the difference between D'Pergo's CPA claims is unclear.

17

on its CPA claim but denying plaintiff's motion as to its Lanham Act claim because "[r]egardless of what the scope of [plaintiff's] marks are," defendant passed off his goods as having approval or certification that they did not have).

For these reasons, Sweetwater is not entitled to summary judgment on D'Pergo's CPA claims.

### D. Summary

Sweetwater is entitled to summary judgment on D'Pergo's claims for trademark infringement (Counts IV and V). It is not entitled to summary judgment as to D'Pergo's claim for violation of the Copyright Act (Count I) or the CPA (Counts IV and V).

## II. D'Pergo's Motion for Partial Summary Judgment

D'Pergo moves for summary judgment on its claim for copyright infringement in Count I. As discussed supra, to prevail on a copyright infringement claim under the Copyright Act, a plaintiff must prove two elements: "1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Johnson 409 F.3d at 17 (internal quotation marks and citation omitted).

D'Pergo asserts that there is no genuine issue of material fact that it has established both elements of a copyright infringement claim. In response, Sweetwater does not dispute

that assertion. Instead, it argues that D'Pergo is not entitled to summary judgment on Count I because there is a genuine issue of material fact as to whether D'Pergo is entitled to damages for that claim.

Although, as discussed supra, the extent of D'Pergo's damages as to Count I is an open question, that fact does not preclude the entry of summary judgment in favor of D'Pergo as to liability for purposes of that claim. To establish liability for copyright infringement, a plaintiff must prove two elements. Once a plaintiff establishes both elements, it may seek to recover damages under the Copyright Act. See § 504.

Because the undisputed facts in the record show that Sweetwater infringed D'Pergo's copyright, D'Pergo is entitled to summary judgment on Count I.[8] Whether and to what extent D'Pergo is entitled to damages on that claim is a question that, for the reasons discussed supra, is best left to a jury.

**CONCLUSION**

For the foregoing reasons, Sweetwater's motion for summary judgment (doc. no. 111) is granted as to Counts IV and V but is

---

[8] Sweetwater does not raise any affirmative defense to its infringement, such as fair use, which might otherwise preclude summary judgment in D'Pergo's favor.

19

otherwise denied.  D'Pergo's motion for summary judgment as to Count I (doc. no. 112) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 6, 2020

cc: Counsel of Record