UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

D'Pergo Custom Guitars, Inc

      v.

Sweetwater Sound, Inc.

Civil No. 17-cv-747-LM
Opinion No. 2021 DNH 026 P

## O R D E R

D'Pergo Custom Guitars, Inc. ("D'Pergo") sues Sweetwater Sound, Inc. ("Sweetwater") for copyright infringement and violations of the New Hampshire Consumer Protection Act, RSA ch. 358-A.  D'Pergo alleges that Sweetwater used a copyrighted photograph of D'Pergo's trademarked custom guitar necks and headstock to promote and sell Sweetwater products on its website.

Presently before the court are the parties' competing jury instructions (doc. nos. 162 and 165), which put at issue the proper interpretation of the damages provision of the Copyright Act, 17 U.S.C. § 504.  Also pending are three motions in limine, filed by Sweetwater, to admit or exclude evidence (doc. nos. 159, 160, and 161).  The court resolves these motions, and the jury instructions issue, as outlined below.

## BACKGROUND

The following facts, drawn from the court's order on the parties' cross-motions for summary judgment (doc. no. 139), are recited for the limited purpose of providing the reader with necessary context.

D'Pergo manufactures and sells custom guitars.  In 2003, Stephan Dapergolas, D'Pergo's owner, created a photograph showcasing a number of D'Pergo's unique guitar necks and headstock (the "Photograph"), which D'Pergo published to its website.  D'Pergo used the Photograph on its website from 2003 until 2006.

Sweetwater is a retailer that sells musical instruments, including guitars, through its website.  In 2004, Sweetwater copied the Photograph and published it on its website.  More specifically, Sweetwater used the photograph in its "Electric Guitar Buying Guide" (the "Buying Guide"), in a section titled "Guitar necks explained."  The end of the Buying Guide features several guitars from various manufacturers for purchase—none of which are D'Pergo guitars—as well as a hyperlink to "Shop for Electric Guitars."

In January 2015, Dapergolas learned that Sweetwater was using the Photograph in the Buying Guide.  D'Pergo later applied for and was granted a copyright registration for the Photograph from the Copyright Office.  In January 2016, D'Pergo contacted Sweetwater about the Photograph.  Sweetwater then removed the Photograph from its website.  D'Pergo subsequently trademarked its headstock design depicted in the Photograph.  In December 2017, D'Pergo brought the instant lawsuit.

## DISCUSSION

The parties submit competing jury instructions (doc. nos. 162 and 165) on the issue of whether D'Pergo must establish a causal nexus between Sweetwater's "gross revenue" and its copyright infringement in order to obtain an award of profits. 17 U.S.C. § 504(b). In addition, Sweetwater moves in limine: (A) to exclude all evidence of Sweetwater's "indirect" profits (doc. no. 161); (B) or alternatively, to exclude evidence of Sweetwater's profits from more than three years before D'Pergo commenced this action (doc. no. 160); and (C) to admit evidence of the parties' respective conduct after they learned of the Photograph's presence on Sweetwater's website (doc. no. 159).

The court addresses these matters in turn, beginning with the jury instructions issue.

## I.    Jury Instructions (Causal Nexus)

The court has previously determined that D'Pergo is entitled to judgment as a matter of law on its copyright infringement claim (doc. no. 139). The only issue left for the jury to decide is the extent to which D'Pergo is entitled to damages.

The damages provision of the Copyright Act is found at 17 U.S.C. § 504. Subsection (a) of that statute provides that a copyright infringer is liable for "the copyright owner's actual damages and any additional profits of the infringer, as provided in subsection (b)." 17 U.S.C. § 504(a). Subsection (b) consists of two sentences. The first sentence states that the copyright owner may recover actual

damages resulting from the infringement plus "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).  The second sentence states: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.

A "highly literal interpretation" of § 504(b)'s second sentence, considered in isolation from its first sentence, would permit recovery of all an infringer's gross revenue, even those portions that are not attributable to the infringement. On Davis v. The Gap, Inc., 246 F.3d 152, 160 (2d Cir. 2001).  For example, under such an interpretation, a "plaintiff in a copyright action against a multidivision, multi-product company such as General Mills, would need to do nothing more than offer an overall gross revenue number—like $11.5 billion—and sit back." Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 711 (9th Cir. 2004).

Seizing on this highly literal interpretation, D'Pergo seeks to instruct the jury that, in order for it to obtain a disgorgement of profits, it need only present evidence of Sweetwater's gross revenues, which triggers a rebuttable presumption that all of those gross revenues are entirely attributable to the infringement.  Although D'Pergo defends its position by emphasizing its fidelity to the statutory text, D'Pergo's requested instruction would allow the jury to award profits without finding that any of Sweetwater's profits are "attributable to the infringement." 17

U.S.C. § 504(b).  By contrast, Sweetwater vies for an instruction that would require D'Pergo to prove a causal relationship between the infringement and the gross revenue number it presents in order to obtain an award of profits.

While the court is not prepared, at this time, to inform the parties of the precise jury instruction on this issue that it will use at trial, it is clear that § 504(b) must be interpreted as requiring D'Pergo to show that the gross revenue figure it presents has "a legally significant relationship to the infringement." Real View, LLC v. 20-20 Techs., Inc. 811 F. Supp. 2d 553, 560-61 (D. Mass. 2011) (quoting Polar Bear, 384 F.3d at 711).  The jury will be instructed, in some fashion, that, in order to award D'Pergo profits, it must conclude that D'Pergo established a causal nexus between Sweetwater's infringement and the gross revenue figure D'Pergo presents.

Such an instruction is compelled by the sheer weight of authority.  The First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Federal Circuits have all concluded, in some form, that a copyright owner must show a causal relationship between the infringement and the gross revenue figure presented. See Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 28-29 (1st Cir. 2016) (complaint failed to plausibly allege entitlement to infringer's profits under § 504(b) because it failed to "link" the infringement "to some discrete portion of the publisher/infringer's profits"); On Davis, 246 F.3d at 160 ("[T]he term 'gross revenue' under the statute means gross revenue reasonably related to the infringement, not unrelated revenues."); William A. Graham Co. v. Haughey, 646

F.3d 138, 141 (3d Cir. 2011) (to succeed on claim for infringer's profits, "a plaintiff is first required to prove the defendants' gross revenues over the course of the relevant time period, and then to establish a causal nexus between the infringement and the profits sought"); Bonner v. Dawson, 404 F.3d 290, 294 (4th Cir. 2005) (explaining that "'gross revenue' refers only to revenue reasonably related to the infringement"); Powell v. Penhollow, 260 Fed. Appx. 683, 686 (5th Cir. 2007) ("As the copyright owner, Powell bears the burden of putting on evidence of Defendants' gross revenue attributable to the infringement.  The burden then shifts to Defendants to produce evidence of deductible expenses." (citations omitted)); Thoroughbred Software Int'l v. Dice Corp., 488 F.3d 352, 360 (6th Cir. 2007) ("To assess the infringer's profits, the copyright owner must first show evidence of the infringer's gross revenue attributable to the infringement.  Then the burden shifts to the defendant . . . ." (citations omitted)); Taylor v. Meirick, 712 F.2d 1112, 1122 (7th Cir. 1983) (explaining that "gross revenue" in § 504(b) means "gross revenues from the sale of the infringing" product); Andreas v. Volkswagen of Am., Inc., 336 F.3d 789, (8th Cir. 2003) ("The plaintiff has the burden to demonstrate a nexus between the infringement and the . . . profits before apportionment can occur." (quotation and brackets omitted)); Polar Bear, 384 F.3d at 711 ("[A] copyright owner is required to do more initially than toss up an undifferentiated gross revenue number; the revenue stream must bear a legally significant relationship to the infringement."); Univ. of Colo. Found., Inc. v. Am. Cyanimid Co., 196 F.3d 1366, 1375 (Fed. Cir.

6

1999) (copyright owner has the burden to show that infringer's gross revenues had a "connection" to the infringement).

Despite the crushing weight of this authority, D'Pergo supports its requested jury instruction by asserting that the First Circuit swims upstream. Specifically, D'Pergo contends that the First Circuit's opinions in John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26 (1st Cir. 2003), Bruce v. Weekly World News, Inc., 310 F.3d 25 (1st Cir. 2002), and Data General Corp. v. Grumman System Support Corp., 36 F.3d 1147 (1st Cir. 1994), abrogated on other grounds by Reed Elsevier, Inc. v. Muchnik, 559 U.S. 154 (2010), compel an instruction that does not require the jury to find a causal link between the "gross revenue" figure and Sweetwater's infringement. D'Pergo is incorrect.

Although Bruce contains language arguably supporting D'Pergo's interpretation of § 504(b), D'Pergo extrapolates too much from the case's holding. There, the district court refused to award the plaintiff a share of the defendant's revenue streams because the plaintiff failed to present sufficient evidence of revenue. See Bruce, 310 F.3d at 30-31. Although the plaintiff argued on appeal that this was due to the defendant's failure to produce discovery on its revenues, the First Circuit found the plaintiff's contentions "baseless" because he "made no earnest attempt during discovery to obtain all the available evidence relating to [the defendant's] gross revenues." Id. at 31. In other words, the Bruce panel merely affirmed the district court's conclusion that the plaintiff had failed to present sufficient evidence of the defendant's gross revenues. See id. at 30-31. Bruce does

7

not stand for the proposition that a plaintiff need do no more than present an undifferentiated gross revenue figure to obtain a presumption that the revenue figure presented is attributable to the infringement.

As for Grumman, while that case states that a plaintiff must only satisfy a "minimal burden" to trigger apportionment, it does not stand for the proposition that a plaintiff has no burden on causation.  Grumman, 36 F.3d at 1173 (emphasis added).  Rather, in describing a plaintiff's "minimal burden," Grumman merely quotes the language of § 504(b) that, "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue." Id. (quoting § 504(b)).  As already discussed, no Court of Appeals—including the First Circuit—interprets that language in the manner D'Pergo urges.  See, e.g., Backpage.com, 817 F.3d at 28-29.  And while Grumman found that the plaintiff in that case had met its minimal burden, the Grumman plaintiff supplied a connection between the infringement and the revenue figure it presented.  See Grumman, 36 F.3d at 1152-54, 1174.

Nor does Danielson compel the court to adopt D'Pergo's requested jury instruction.  At one point in the opinion, Danielson paraphrases the second sentence of § 504(b).  See Danielson, 322 F.3d at 47.  But, as discussed, no court interprets that sentence in a vacuum.  In addition, whether the Danielson plaintiff met its burden of establishing the infringer's gross revenues was not at issue in that case, as the parties stipulated to the relevant gross revenue figure and the only dispute

8

on appeal was whether a certain commissions figure was a deductible expense.  See id.

Even if these cases supported D'Pergo's requested jury instruction—and they do not—more recent First Circuit authority makes clear that a plaintiff in an infringement action must establish a "link" between the infringement and the gross revenue figure presented.  Backpage.com, 817 F.3d at 28.  In Backpage.com, the First Circuit upheld the dismissal under Rule 12(b)(6) of a claim for copyright infringement.  See id.  The First Circuit upheld dismissal because the complaint failed to plausibly allege entitlement to any relief, including "profits attributable to the infringement."  Id. at 28.  Specifically, the complaint contained only "generalized assertion[s]" that could not "plausibly be said to link" the alleged infringement "to some discrete portion of the publisher/infringer's profits."  Id.  In so reasoning, Backpage.com makes clear that the First Circuit stands shoulder-to-shoulder with the majority of other circuits in requiring infringement plaintiffs to "link" the infringement complained of to at least a "discrete portion" of the infringer's profits in order to obtain an award thereof.  Id.

Interpreting § 504(b) to require plaintiffs to establish a causal nexus between the defendant's gross revenues and its infringement harmonizes the subsection's two sentences.  See King v. St. Vincent's Hosp., 502 U.S. 215, 221 (1991) (noting the "cardinal rule that a statute is to be read as a whole, since the meaning of statutory language, plain or not, depends on context" (citation omitted)).  The first sentence of § 504(b) states that, in addition to actual damages, a copyright owner may recover

"any profits of the infringer <u>that are attributable to the infringement</u>."  17 U.S.C.

§ 504(b) (emphasis added).  Although the statute goes on to state that, to establish

the infringer's profits, the plaintiff is "required to present proof only of the

infringer's gross revenue," if that phrase were interpreted in a vacuum a copyright

owner could obtain profits that are <u>not</u> attributable to the infringement.  See

Complex Sys., Inc. v. ABN Ambro Bank N.V., No. 08 Civ. 7497 (KBF), 2013 WL

5970065, at *3 (S.D.N.Y. Nov. 8, 2013) (noting that requiring plaintiffs to

demonstrate a causal nexus between revenue and infringement "is rooted in the

text of the statute itself"); <u>see</u> <u>also</u> Andreas, 336 F.3d at 796 ("The burden of

establishing that profits are attributable to the infringed work often gets confused

with the burden of apportioning profits between various factors contributing to the

profits.").

  The better interpretation of § 504(b)'s second sentence is as limited by its

first sentence: a plaintiff can only obtain profits that are attributable to the

defendant's infringement, but the plaintiff need not distinguish the defendant's

profits from its gross revenue.  Assuming the plaintiff establishes a causal nexus

between the gross revenue figure it presents and the infringement, the plaintiff

obtains a presumption that the gross revenues are the defendant's "profits . . .

attributable to the infringement . . . and the infringer is required to prove his or her

deductible expenses and the elements of profit attributable to factors other than the

copyrighted work."  § 504(b); <u>see</u> Andreas, 336 F.3d at 796.

This interpretation not only best harmonizes the text of the statute: it makes common sense.  To paraphrase Judge Posner, if General Motors steals your copyright and puts it in an advertisement which runs a single time, you should not be able to simply put GM's corporate tax return in the record in order to obtain the entirety of the company's gross revenue—billions of dollars—virtually all of which would be unrelated to GM's infringement.  See Meirick, 712 F.2d at 1122.  Rather, the "common sense" approach requires "a demonstration that the infringing acts had an effect on profits before the parties can wrangle about apportionment." Mackie v. Reiser, 296 F.3d 909, 915 (9th Cir. 2002).  "To do otherwise would be inconsistent with . . . rudimentary principles of tort law, to which copyright law is often analogized . . . ."  Id.

For these reasons, the court concludes that, in order to obtain an award of profits, D'Pergo must show a causal nexus between Sweetwater's infringement and the gross revenue figure D'Pergo presents.  Then, if a causal nexus is shown, Sweetwater bears the burden of proving the appropriate apportionment.  See 17 U.S.C. § 504(b).  The jury will be instructed along these lines.


II.   Sweetwater's Motions in Limine

As noted, Sweetwater moves in limine: (A) to exclude all evidence of Sweetwater's "indirect" profits (doc. no. 161); (B) to exclude evidence of Sweetwater's profits from more than three years before D'Pergo commenced this action (doc. no. 160); and (C) to admit evidence of the parties' respective conduct

after they learned of the Photograph's presence on Sweetwater's website (doc. no. 159).  The court addresses these motions in turn below.

A.     Motion to Exclude All Evidence of Indirect Profits (doc. no. 161)

Sweetwater moves in limine to exclude all evidence of "indirect" profits, i.e., profits Sweetwater generated from using D'Pergo's copyright to promote the sales of other products.  Arguing that "the connection between Sweetwater's profits and the infringement is highly speculative," doc. no. 161 at 1, Sweetwater contends that D'Pergo should be precluded from introducing evidence of any such connection.

In the copyright infringement context, "direct profits" refer to profits "that are generated by selling an infringing product."  Mackie, 296 F.3d at 914.  By contrast, indirect profits are those that have a "nexus" to the infringement, but which are not generated directly from sales of an infringing product.  Id.; see also, e.g., Andreas, 336 F.3d at 796 (noting that the case at bar involved indirect profits because "the infringers did not sell the copyrighted work, but used the copyrighted work to sell another product").

As discussed, an infringement victim is entitled to its actual damages as well as "any profits of the infringer that are attributable to the infringement" and are not factored into the computation of actual damages.  17 U.S.C. § 504(b).  Because the statute does not differentiate between direct and indirect profits, courts have held that a plaintiff may seek an award of either.  See, e.g., Mackie, 296 F.3d at 914.

Here, the Photograph is the copyrighted work.  Sweetwater did not sell the Photograph or the Buying Guide where it appeared on Sweetwater's website.  Thus, if any of Sweetwater's profits "are attributable to the infringement," 17 U.S.C. § 504(b), they are only indirectly attributable.  See Mackie, 296 F.3d at 914.

In an indirect profits case, the "district court must conduct a threshold inquiry into whether there is a legally sufficient causal link between the infringement and subsequent indirect profits."  Id. at 915.  "It is not enough to show an infringement and then seek all of the defendant's profits, from whatever source."  Andreas, 336 F.3d at 799.  The plaintiff has the burden of demonstrating a causal link.  Am. Cyanimid Co., 196 F.3d at 1375.  The court may exclude evidence of indirect profits if the causal link proffered by the plaintiff is "too speculative."  Mackie, 296 F.3d at 915 (quoting Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 513 (9th Cir. 1985)); see Andreas, 336 F.3d at 799-800 (upholding evidentiary decision precluding admission of infringer's profits from sale of all car models where infringement only related to a particular car model); Complex Sys., 2013 WL 5970065, at *13-*14 (granting motion in limine to exclude evidence of indirect profits where plaintiff "fail[ed] to provide any evidence in support of" a causal link between those profits and the infringement).

Sweetwater argues that D'Pergo must be precluded from introducing evidence of indirect profits because D'Pergo "has failed to identify any specific transaction that is connected to the appearance of the Photograph" in the Buying Guide.  Doc. no. 161-1 at 7.  Sweetwater contends that, because "the Photograph

13

was one of thousands of images that appeared on Sweetwater's website," any causal

link is so "attenuated" that D'Pergo cannot be permitted to present evidence of such

a link to the jury. Id. at 8.

Granting Sweetwater's motion to exclude all evidence of indirect profits

would be tantamount to ruling that Sweetwater is entitled to judgment as a matter

of law on the issue of indirect profits. See Andreas, 336 F.3d at 799-800. However,

the court has already determined, in its order on the parties' cross-motions for

summary judgment, that Sweetwater is not entitled to judgment as a matter of law

on D'Pergo's profits claim. See D'Pergo Custom Guitars, Inc. v. Sweetwater Sound,

Inc., 433 F. Supp. 3d 227, 232-33 (D.N.H. 2020) (doc. no. 139). In that decision, the

court found that a reasonable jury could conclude that D'Pergo's evidence

establishes a causal nexus between Sweetwater's use of the Photograph and its

gross revenues sufficient to trigger Sweetwater's burden of apportionment. See id.

This ruling was based on D'Pergo's anticipated evidence on profits: expert testimony

from Dr. Michael Einhorn, Ph. D., regarding "profits Sweetwater purportedly

derived from customers who purchased electric guitars online after viewing the

Buying Guide, which contained the photograph."[1] Id. at 232.

---

[1] In a separate order issued the same day as the order on the parties' cross-motions for summary judgment, the court denied Sweetwater's motion to exclude Einhorn's testimony under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). See D'Pergo Custom Guitars, Inc. v. Sweetwater Sound, Inc., No. 17-cv-747-LM, 2020 WL 60351, at *1-4 (D.N.H. Jan. 6, 2020) (doc. no. 138). The court denied Sweetwater's motion while recognizing that, if Sweetwater carried its burden of apportionment at trial, "it may be that Dr. Einhorn's opinion is of limited or no value" to the jury. Id. at *3. However, because "it is Sweetwater's burden—

Although a plaintiff's evidence of profits cannot be "unduly speculative," Bruce, 310 F.3d at 31 (quotation omitted), the First Circuit has stated that a plaintiff bears only a "minimal burden" in presenting such evidence. Grumman, 36 F.3d at 1173. Polar Bear, a Ninth Circuit case, illustrates the plaintiff's minimal burden. There, the defendant contracted with the plaintiff to sponsor the plaintiff's production of a film. See Polar Bear, 384 F.3d at 703-04. The defendant's products were featured prominently in the film, and the defendant was granted a one-year license to use the film in its promotional materials. See id. at 704. However, the defendant infringed the plaintiff's copyright when it continued showing the film at trade shows after the one-year license expired. See id. at 704-05. In the litigation that followed, the jury awarded indirect profits, and the defendant challenged that award on appeal. See id. at 712.

The plaintiff in Polar Bear presented evidence of the defendant's profits attributable to the infringement in the form of expert testimony. See id. The expert "reviewed [the defendant's] sales records from the twelve trade shows where it showed the unauthorized . . . materials." Id. The expert calculated that the defendant "yielded an average of $30,000 in sales per show, for a total of $360,000 in gross revenue." Id. "Based on his experience evaluating trade shows, he concluded that approximately 10% to 25% of trade show sales are the result of . . .

_____

not D'Pergo's or Dr. Einhorn's—to separate Sweetwater's profits gained as a result of its use of the Photograph from those which were not," the fact that Einhorn failed to parse the Photograph's impact on Sweetwater's sales from the overall impact of the Buying Guide on Sweetwater's sales was not a basis to exclude his opinion. Id.

the booth promotion, of which the [infringing] materials were a substantial part."
Id. The Ninth Circuit held that this "testimony established the requisite causal
connection between the category of profits sought—revenue from trade booth
sales—and the infringement." Id.

Here, Einhorn has prepared an expert report on D'Pergo's behalf. See doc.
no. 161-3. Einhorn's report estimates the amount of revenue Sweetwater earned
from the sale of electric guitars and guitar accessories from persons who navigated
to Sweetwater's retail shop page after viewing the Buying Guide. Based on sales
data for Sweetwater's product transactions from 2004-2016 (the years the
Photograph appeared in the Buying Guide), Einhorn determined that Sweetwater
generated approximately $91 million in revenue from online sales of guitars during
those years, and from sales of guitar accessories to persons who had previously
bought a guitar during those years. Based on additional data provided by
Sweetwater, Einhorn determined that approximately 5.25 million unique viewers
came to shop on Sweetwater's online retail sales page, and approximately 500,000
viewed the Buying Guide, for a proportion of 9.4%. Recognizing that the
approximately $91 million in revenue in online sales cannot be entirely attributed
to the Buying Guide, Einhorn calculates Sweetwater's gross revenue attributable to
the infringement to be approximately $8.5 million (which is 9.4% of the
approximately $91 million in total revenue from online sales of guitars and
accessories during the infringing period).

Although loosely connected at best, this evidence of indirect profits is not so "unduly speculative" that it must be kept from the jury.  Bruce, 310 F.3d at 31 (quotation omitted).  As in Polar Bear, the plaintiff's anticipated evidence provides a link between the infringement and the gross revenue figure it submits: customers purchased Sweetwater's guitars and guitar accessories after viewing infringing promotional materials featuring the Photograph.

Einhorn's anticipated testimony on indirect profits is minimally sufficient to permit D'Pergo to present the argument to the jury.  A reasonable jury may well conclude, however, that the mere fact that the Photograph appeared in a sales publication that generated revenue is insufficient to establish a causal link.  This is particularly true where the Photograph is one of several in the Buyer's Guide, and the Photograph depicts D'Pergo guitar necks—which Sweetwater does not sell.

Under such circumstances, it may be difficult for D'Pergo to persuade a jury on causation without a witness who can testify that the Photograph caused him to be more interested in Sweetwater's guitars and guitar accessories.  See Complex Sys., 2013 WL 5970065, at *3 (observing that § 504(b) requires a "causal nexus," rather than merely "some non-causal connection").  Alternatively, the jury might reasonably conclude that, even if Einhorn's testimony satisfies D'Pergo's initial burden of showing a causal nexus, Sweetwater adduced sufficient evidence to rebut that causal showing.  See Grumman, 36 F.3d at 1175 ("The defendant's burden under the apportionment provision of Section 504(b) is primarily to demonstrate the absence of a causal link between the infringement and all or part of the profits

17

claimed by the plaintiff.").  Nonetheless, D'Pergo's evidence of a causal nexus is minimally sufficient to survive this challenge.  See Polar Bear, 384 F.3d at 712; see also IvyMedia Corp. v. ILIKEBUS, Inc., No. 15-11918-NMG, 2017 U.S. Dist. LEXIS 80547, at *2 (D. Mass. May 25, 2017) (denying judgment as a matter of law to defendant on claim for infringement profits even though the "evidence of damages and causation is tenuous at best").  And, while Sweetwater may believe that Einhorn deployed a faulty methodology in concluding that a causal relationship exists, "any purported flaws in [Einhorn's] methodology or the evidence he relied upon in reaching his opinion" do not justify keeping it from the jury; rather, they "are matters for cross-examination and argument." Gray v. Perry, No. 2:15-cv-05642-CAS (JCx), 2019 WL 2992007, at *19 (C.D. Cal. July 5, 2019) (denying Daubert motion to exclude Einhorn's testimony on defendant's net profits in infringement case); accord D'Pergo, 2020 WL 60351, at *3 (doc. no. 138).

    In sum, a plaintiff's burden for a claim of infringer's profits under § 504(b) is "minimal." Grumman, 36 F.3d at 1173.  The plaintiff is required only to present evidence that the defendant profited at all from the infringement; apportioning the extent to which the profits are attributable to the infringement is the defendant's burden.  See 17 U.S.C. § 504(b); Grumman, 36 F.3d at 1173-75; Andreas, 336 F.3d at 796 (noting that the copyright owner has the burden of proving that the defendant "profited from the infringing [material] at all," and the defendant has the burden regarding "the extent [to which] it profited from the infringement").  Thus, contrary to Sweetwater's argument, the fact that Einhorn's report does not connect

any particular transaction to the use of the photograph in the Buying Guide does not render D'Pergo's indirect profits claim so speculative that D'Pergo may present no evidence of indirect profits.  See Andreas, 336 at 797 ("[W]e reject the notion that [the plaintiff] was required to put a . . .  buyer on the stand to testify that she bought the car because of the commercial in order to meet his burden of a causal connection.").

For these reasons, the court denies Sweetwater's motion in limine to exclude all evidence of indirect profits (doc. no. 161).


B.   Motion to Exclude Evidence of Profits Generated More Than Three Years Before D'Pergo Filed Suit (doc. no. 160)

As an alternative to its motion to exclude all evidence of indirect profits, Sweetwater moves in limine to preclude evidence of profits it generated more than three years before D'Pergo filed suit.  Relying upon the United States Supreme Court's opinion in Petrella v. Metro-Goldwyn-Mayer, Inc., 572 U.S. 663 (2014), and the Second Circuit's recent application of it in Sohm v. Scholastic, Inc., 959 F.3d 39 (2d Cir. 2020), Sweetwater asserts such evidence is irrelevant under Federal Rule of Evidence 401 because the relief available in an infringement suit is limited to a three-year lookback period from the time the suit is filed.

The Copyright Act provides that a civil action asserting an infringement claim must be "commenced within three years after the claim accrued."  17 U.S.C. § 507(b); accord Warren Freedenfeld Assocs., Inc. v. McTigue, 531 F.3d 38, 44 (1st Cir. 2008).  Courts use one of two methods for determining when an infringement

19

claim accrues: the injury rule or the discovery rule.  See 6 Patry on Copyright §§ 20:17, 20:18.  Under the "injury rule," a claim accrues at the time of the injury, i.e., at the time of the infringement.  See William A. Graham Co. v. Haughey, 567 F.3d 425, 433 (3d Cir. 2009).  Thus, under this rule, an infringement claim must be brought within three years of the infringement's occurrence, regardless of when the plaintiff became aware of the infringement.  See id.; § 507(b).  Under the "discovery rule," a claim accrues at the time the plaintiff discovers or reasonably could have discovered the infringing conduct.  See McTigue, 531 F.3d at 44.  Thus, under this rule, an infringement claim must be brought within three years of when the plaintiff discovered or reasonably could have discovered the infringing conduct.  See id.; § 507(b).  Most courts—including the First Circuit—use the discovery rule rather than the injury rule for purposes of § 507(b).  See Petrella, 572 U.S. at 670 n.4; McTigue, 531 F.3d at 44.

Here, the parties do not dispute that the discovery rule applies or that D'Pergo's suit is timely.  Indeed, as previously noted, the court has already determined as a matter of law that Sweetwater infringed D'Pergo's copyright.  Instead, Sweetwater contends that Petrella imposes a three-year damages bar for infringement claims even if those claims are timely brought.

This is not the first time Sweetwater has so argued in this litigation.  In its objection to D'Pergo's motion to compel discovery (doc. no. 63), Sweetwater argued that Petrella limits Sweetwater's liability for infringement to the three years prior to the date D'Pergo filed this action.  Both then and now, Sweetwater cites language

from <u>Petrella</u> observing that § 507(b) provides for "retrospective relief running only three years back from the date the complaint was filed." <u>Petrella</u>, 572 U.S. at 672. This court has already rejected Sweetwater's argument in a written order, and ruled that D'Pergo was entitled to discovery pertaining to Sweetwater's liability for copyright infringement "beyond the three-year limitations period in" § 507(b) because "the three-year lookback rule for damages" cited in <u>Petrella</u> does not apply to claims that are timely under the discovery rule. Doc. no. 76 at 7-8. Although <u>Petrella</u> referenced a three-year lookback rule, it did so in the context of explaining why a plaintiff cannot recover for claims that are not timely; <u>Petrella</u> did not articulate a freestanding limit on damages for otherwise timely claims. <u>See</u> <u>id.</u>

Sweetwater first argues that this court's prior ruling is not controlling on the admissibility of evidence of its profits from outside the three-year window because it was rendered in the context of resolving a discovery dispute. It is of course true that evidence need not be admissible to be discoverable. <u>See</u> Fed. R. Civ. P. 26(b)(1). The court does not agree, however, that the procedural context of its prior ruling renders it inapplicable to this evidentiary issue. Evidence of Sweetwater's profits from the sale of electric guitars in the years prior to 2014 is relevant—and therefore discoverable—because D'Pergo can seek disgorgement of those profits notwithstanding the three-year statute of limitations. <u>See</u> 17 U.S.C. § 504(b).

Sweetwater argues that the Second Circuit's recent decision in <u>Sohm</u> should cause this court to revisit its prior ruling. Because <u>Sohm</u> interprets <u>Petrella</u>, it is helpful to review <u>Petrella</u> before considering <u>Sohm</u>. <u>See</u> <u>Sohm</u>, 959 F.3d at 51-52.

In 1991, the Petrella plaintiff gained ownership over the copyright for the 1963 screenplay for "Raging Bull." See Petrella, 572 U.S. at 673-74. In 2009, the plaintiff sued MGM, who had previously been assigned the rights to the screenplay. See id. The plaintiff alleged that the company's continued distribution of the film violated her copyright. See id. at 674-75. Although MGM committed arguably infringing acts from the time the plaintiff gained the copyright in 1991, she "sought relief only for acts of infringement occurring on or after January 6, 2006," i.e., within three years of when she filed suit. Id.

Because the plaintiff did not seek to hold MGM liable for infringements occurring more than three years before she filed suit, whether she could have done so under the discovery rule was not at issue in Petrella.[2] Instead, the primary issue was whether the Ninth Circuit erred by holding that the equitable defense of laches barred the plaintiff's claims even though they were brought within three years of accrual. See id. at 676-77.

The Court began its analysis by explaining when a "claim ordinarily accrues." Id. at 670. It stated that, under the injury rule, copyright claims generally accrue "when an infringing act occurs." Id. at 670 & n.4. In addition, the Court observed that, although it had "not passed on the question, nine Courts of Appeals have adopted, as an alternative to [this] rule, a 'discovery rule,' which starts the

---

[2] Indeed, the plaintiff conceded that she knew of MGM's reproductions and distributions of the film at the time she obtained the copyright but waited to file because the film was mired in debt and she thought it unlikely she'd recover anything. See id. at 682.

limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" Id. at 670 n.4 (quoting Haughey, 567 F.3d at 433).

The Court then explained "the separate-accrual rule that [also] attends the copyright statute of limitations." Id. at 671. The Court stated that, under the separate-accrual rule, "each time an infringing work is reproduced or distributed, the infringer commits a new wrong," and "[e]ach wrong gives rise to a discrete claim." Id. (internal quotation marks omitted). Furthermore, "each infringing act starts a new limitations period." Id.

Synthesizing the injury rule and the separate-accrual rule as they bore on the facts of the case at hand, the Court stated that: (1) under § 507(b) and the injury rule, "an infringement is actionable within three years, and only three years of its occurrence"; and (2), because each infringement gives rise to a discrete claim, "the infringer is insulated from liability for earlier infringements of the same work." Id. In other words, although the plaintiff's pre-2006 claims were barred because they were outside the limitations period, that did not prevent her from pursuing infringement claims for conduct occurring within three years of when she filed suit because "the statute of limitations runs separately from each violation." Id. Because it was undisputed that the plaintiff's post-2006 claims were timely under the statute, the Court held that the Ninth Circuit erred in concluding that "infringing acts occurring before January 6, 2006, bar all relief . . . for infringement occurring on or after that date." Id. at 677.

23

Petrella does, however, contain statements which, read in isolation, suggest that an infringement plaintiff cannot recover profits generated more than three years before commencement of the action even if her claims are timely.[3] For example, the Court stated that § 507(b) allows for "retrospective relief only three years back from the time of the suit.  No recovery may be had for infringement in earlier years.  Profits made in those years remain the defendant's to keep."  Id. at 677.  Although the Petrella Court stated that "[n]o recovery may be had for infringement in earlier years," and that "the infringer is insulated from liability from earlier infringements of the same work," these statements and others like them must be read in context.  The reason "[n]o recovery may be had" for infringements that occur more than three years prior to the commencement of the action is because, if—as in Petrella— the injury rule applies, such infringements are outside the limitations period.  Id. at 671, 677.

In Sohm, the Second Circuit interpreted Petrella to have "explicitly delimited damages to the three years prior to the commencement of a copyright infringement action" regardless of the action's timeliness.  Sohm, 959 F.3d at 51.  The Second Circuit noted that the Supreme Court "explicitly asserted that 'a successful plaintiff can gain retrospective relief only three years back from the time of suit' and that 'no recovery may be had for infringement in earlier years.'"  Id. at 52 (brackets omitted)

---

[3]  As this court noted in its prior discovery order, infringement defendants seized on this and similar language from the opinion, arguing that the Supreme Court had established a three-year limit on damages independent of, and in addition to, § 507(b)'s timeliness requirement.  See doc. no. 76 at 6-7.

(quoting Petrella, 572 U.S. 677).  Because the Second Circuit concluded that such statements were not dicta, it held that Petrella requires courts to use the discovery rule to determine a claim's timeliness while simultaneously requiring courts to use "a three-year lookback period from the time a suit is filed to determine the extent of the relief available."  Id.  After conducting another close reading of Petrella in light of Sohm, this court respectfully disagrees with the Second Circuit's interpretation.

As discussed, when viewed in context, this court does not agree that Petrella is best understood as "limiting damages to the three years prior to when the suit is filed" regardless of whether the suit is timely.  Sohm, 959 F.3d at 52.  The reason that the Petrella plaintiff could not obtain relief for infringements occurring more than three years before she filed suit was because any claim based on those infringements would not have been timely.  See Petrella, 572 U.S. at 671, 674-75. When, as in Petrella, the injury rule applies, a plaintiff cannot recover for infringements occurring more than three years before the commencement of its action because such infringements are outside the limitations period.  When, as here, the discovery rule applies, recovery may be had for an infringement that occurs more than three years prior to the commencement of the action.  So long as the action is commenced within three years after the plaintiff discovered or reasonably could have discovered the infringement, the action is timely under § 507(b) and the plaintiff may seek all remedies to which it is entitled under § 504(b).

This court is not alone in its interpretation of Petrella.  Most district courts to have considered the issue have held that the limitations on damages discussed in Petrella do not apply to claims that are timely pursuant to the discovery rule.  See Mitchell v. Capitol Records, LLC, 287 F. Supp. 3d 673, 678 (W.D. Ky. 2017) (noting that the "relevant date . . . has always been the date of accrual," and that, "[w]hile Petrella uses language that suggests that no damages may be recovered for acts of infringement which occurred more than three years prior to the initiation of the suit, these statements cannot be isolated from the Court's initial statement fixing accrual at the date of occurrence"); Menzel v. Scholastic, Inc., No. 17-cv-05499-EMC, 2019 WL 6896145, at *6-*7 (N.D. Cal. Dec. 18, 2019) (rejecting argument that Petrella created a three-year damages bar independent of the three-year limitations period and faulting the defendant for "isolat[ing] language used in Petrella from the broader context of the case"); Design Basics, LLC v. McNaughton Co., No. 3:17-cv-258, 2017 WL 11068761, at *4-*5 (M.D. Pa. Nov. 15, 2017) (joining those courts that have "rejected the notion that § 507(b) serves dual purpose as a time limit for civil actions and a contrarily interpreted limitation on damages"); Oracle USA, Inc. v. Rimini Street, Inc., No. 2:10-CV-00106-LRH-PAL, 2015 WL 5089779, at *6 (D. Nev. Aug. 27, 2015) (denying motion in limine to exclude evidence of infringement damages incurred more than three years before filing of suit because plaintiffs' claims were timely under the discovery rule and "Petrella expressly declined to reject the discovery rule"); Panoramic Stock Images, Ltd. v. McGraw-Hill Global Educ. Holdings, LLC, No. 12-C-9881, 2015 WL 393381, at *1-*2 (N.D. Ill. Jan. 27,

2015) (holding that <u>Petrella</u> did not require application of a three-year damages rule
to a claim that was timely under the discovery rule).  <u>But see</u> <u>Navarro v. Procter &</u>
<u>Gamble Co.</u>, No. 1:17-cv-406, 2021 WL 184591, at *31-33 (S.D. Ohio Jan. 19, 2021)
(agreeing with <u>Sohm</u> that <u>Petrella</u> "seems to adopt a three-year lookback for
damages" independent of the statute of limitations).

For all of these reasons, and after careful consideration of <u>Sohm</u> and a close
review of <u>Petrella</u>, the court adheres to its prior ruling that the limitations on
damages discussed in <u>Petrella</u> do not apply to claims that are timely under the
discovery rule.  Because the parties do not dispute that D'Pergo's infringement
claim is timely under that rule, <u>Petrella</u> does not bar D'Pergo from recovering
profits generated more than three years before D'Pergo filed suit.

Finally, Sweetwater argues that, because it cannot be liable for profits
attributable to its infringement which arose more than three years before this
action commenced, evidence of such profits is irrelevant under Rule 401 and should
be excluded under Rule 403.  However, for the reasons already explained,
Sweetwater may be held liable for such profits.  Any evidence of such profits is
therefore relevant.

For these reasons, the court denies Sweetwater's motion in limine to exclude
evidence of profits it generated more than three years before D'Pergo filed suit (doc.
no. 160).

27

C.    Sweetwater's Motion to Admit Evidence of the Parties' Respective
      Conduct Upon Learning of the Infringement (doc. no. 159)

Sweetwater next moves in limine to admit evidence of the parties' respective conduct after learning that D'Pergo's photograph appeared on Sweetwater's website.  Sweetwater claims that, when D'Pergo's owner, Stephan Dapergolas, learned that a photograph of his guitar necks appeared on Sweetwater's website, he "did not immediately alert Sweetwater, but instead promptly retained a damages consultant."  Doc. no. 159-1 at 2.  Sweetwater contends that Dapergolas then worked with this consultant for nearly a year before finally contacting Sweetwater.  By contrast, Sweetwater states that when it learned of the Photograph's presence on its website, Sweetwater "immediately removed [it] and apologized for its use."  Id.  Sweetwater claims that D'Pergo then waited almost another year before bringing this lawsuit.

D'Pergo agrees that evidence of its conduct and Dapergolas's conduct is admissible.  However, D'Pergo contends evidence of Sweetwater's conduct is inadmissible.  Sweetwater counters that the evidence of both parties' conduct is admissible to provide context to D'Pergo's infringement claim.  See Faigin v. Kelly, 184 F.3d 67, 81 (1st Cir. 1999) (noting the "well-settled" proposition that "context evidence is generally admissible").

The court agrees with Sweetwater.  Although the jury will only decide the extent of Sweetwater's liability for copyright infringement, evidence of both parties' conduct surrounding the infringement is "admissible to 'paint the backdrop' of the case."  Bartlett v. Mut. Pharm. Co., Inc., No. 08-cv-00358-JL, 2010 WL 3210724, at

*1 (D.N.H. Aug. 10, 2010) (brackets omitted) (quoting Faigin, 184 F.3d at 81).

Providing the jury with this case's "relevant background information" will allow

them "to stitch together an appropriate context" to assess evidence of Sweetwater's

liability for copyright infringement. United States v. McKeeve, 131 F.3d 1, 13 (1st

Cir. 1997) (noting that trials are "meaty affairs," and "courts should not insist that

all taste be extracted from a piece of evidence before a jury can chew on it").

D'Pergo next contends that, even if evidence of Sweetwater's conduct is

relevant to provide context, its probative value is substantially outweighed by the

danger of unfair prejudice.  See Fed. R. Ev. 403.  D'Pergo states its belief that

Sweetwater may inappropriately argue from this evidence "that it was an innocent,

inadvertent infringer of D'Pergo's copyright."  Doc. no. 185 at 4.  Though the court

expresses no opinion on whether such argument would be appropriate, the

possibility that Sweetwater may make an inappropriate argument to the jury does

not constitute a basis to exclude Sweetwater's post-notification conduct under Rule

403.  To the extent D'Pergo finds Sweetwater's arguments at trial objectionable, it is

free to object to those arguments at the time they are made.

For these reasons, the court grants Sweetwater's motion in limine to

admit evidence of the parties' respective conduct after learning of the

Photograph's presence on Sweetwater's website (doc. no. 159).

## CONCLUSION

The jury will be instructed, in some fashion, that D'Pergo must prove a causal nexus between Sweetwater's infringement and the gross revenue figure D'Pergo presents.  Sweetwater's motion in limine to exclude evidence of indirect profits (doc. no. 161) is denied, as is its motion to exclude evidence of profits generated more than three years before D'Pergo filed suit (doc. no. 160).  Sweetwater's motion to admit evidence of the parties' respective conduct after learning of the Photograph's presence on Sweetwater's website (doc. no. 159) is granted.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

January 28, 2021

cc:  Counsel of Record.