# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

---

|  |  |  |
|---|---|---|
| D'Pergo Custom Guitars, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 1:17-CV-00747-LM |
| | ) | |
| v. | ) | |
| | ) | |
| Sweetwater Sound, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

---

## DEFENDANT'S POST-TRIAL MEMORANDUM

Defendant Sweetwater Sound, Inc. ("Sweetwater") submits this Post-Trial Memorandum, in accordance with this Court's (McCafferty, C.J.) Order dated July 1, 2021, to address Plaintiff D'Pergo Custom Guitars, Inc.'s ("D'Pergo") New Hampshire Consumer Protection Act ("CPA") claim, currently under advisement.

## INTRODUCTION

At trial, D'Pergo failed to present any evidence that any consumer received misrepresentations by Sweetwater *within New Hampshire*. The absence of evidence of "offending conduct" within this State mandates judgment against D'Pergo pursuant to Rule 52(c).

Further, even assuming D'Pergo had satisfied the territoriality requirement of its CPA claim, D'Pergo failed to clear the "vigorous" evidentiary standard to show that its headstock had acquired distinctiveness. D'Pergo also failed to demonstrate a likelihood of confusion

among consumers—offering only two arguable instances of temporary confusion over a 12-year coexistence period.

Moreover, D'Pergo presented no evidence of actual damages. For all of these reasons, D'Pergo's evidence in support of its CPA claim is insufficient, and judgment should be entered in favor of Sweetwater.

## STANDARD OF REVIEW

"When a party has finished presenting evidence and that evidence is deemed by the trier insufficient to sustain the party's position, the court need not waste time, but, rather, may call a halt to the proceedings and enter judgment accordingly." *Morales Feliciano v. Rullan*, 378 F.3d 42, 59 (1st Cir. 2004); *see also* Fed.R.Civ.P. 52 advisory committee note ("Subdivision (c) . . . authorizes the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence."); Wright & Miller § 2573.1, at 497-99 (noting that the court's task under Rule 52(c) is to weigh the evidence, without drawing any special inferences in the nonmovant's favor, resolve any conflicts in the evidence, and "decide for itself where the preponderance lies"). Here, the Court has heard all the evidence and is now in a position to make factual findings and legal rulings related to the CPA claim.

## ARGUMENT

### I.   D'Pergo failed to show that any consumer received misrepresentations within New Hampshire.

To prevail on a New Hampshire CPA claim, D'Pergo was required to demonstrate that Sweetwater engaged in an "unfair method of competition" or an "unfair or deceptive act or practice in the conduct of any trade or commerce *within this state*." RSA 358-A:2 (emphasis added). This Court has repeatedly recognized that a CPA violation occurs "within this state"

when "New Hampshire is the 'locus of the offending conduct,' or, put differently, whenever a person receives a misrepresentation in the State of New Hampshire." *Ortiz v. Sig Sauer, Inc.*, 448 F. Supp. 3d 89, 106 (D.N.H. 2020) (Laplante, J.) (quoting *BAE Sys. Information and Elec. Sys. Integration, Inc. v. Spacekey Components, Inc.*, 2011 WL 1705592, at *6 (D.N.H. May 4, 2011) (McCafferty, J.)); *see also Wilcox Indus. Corp. v. Hansen*, 870 F. Supp. 2d 296, 305 (D.N.H 2012) (Barbadoro, J.) ("The NHCPA permits relief only for unfair competition that occurs 'within this state.'"); *Mueller Co. v. U.S. Pipe & Foundry Co.*, 2003 WL 22272135, at *6 (D.N.H. Oct. 2, 2003) (DiClerico, J.) ("In the absence of any alleged unfair method of competition or unfair or deceptive act or practice which took place within New Hampshire, the harm suffered by [the plaintiff] within the state does not state a claim under RSA 358-A:2."); *Environamics Corp. v. Ferguson Enters., Inc.*, 2001 WL 1134727, at *4 (D.N.H. Sept. 24, 2001) (DiClerico, J.) ("The limitation in RSA 358-A:2 to 'conduct of any trade or commerce within this state' has been interpreted to mean that the statute only applies to offending conduct that took place within New Hampshire.").

In *Ortiz*, the Court ultimately dismissed the plaintiff's CPA claim because the plaintiff had received the "alleged misrepresentations and omissions in Arizona . . . ." *Ortiz*, 448 F. Supp. 3d at 108. Where the plaintiff did not assert that he "received any alleged misrepresentations in New Hampshire or was injured by undisclosed information in the state" dismissal of the claim was appropriate because none of the offending conduct occurred "within the state" for purposes of the CPA. *Id.* Similarly, in *BAE*, the Court dismissed the plaintiff's CPA claim because the plaintiff failed to assert that any of the defendant's alleged misrepresentations were made within New Hampshire because they were not received in New

Hampshire. 2011 WL 1705592, at *6. Notably, *BAE* reached this conclusion even though the defendant was located in New Hampshire. *Id.* at *5; *see also Precourt v. Fairbank Reconstr. Corp.*, 856 F. Supp. 327, 344 (D.N.H. 2012) (McCafferty, J.) (concluding that the defendant was entitled to summary judgment because it had neither shipped any of the relevant product to New Hampshire nor made any representations to anyone in New Hampshire regarding that product, instead concluding that such misrepresentations, if any, had occurred in New York).[1]

Here, the alleged misrepresentation on Sweetwater's part is the alleged implication that D'Pergo is somehow associated with Sweetwater arising from the appearance of the photo of D'Pergo's guitar necks on Sweetwater's website.  D'Pergo presented no evidence that the photo deceived anyone within New Hampshire.  Instead, D'Pergo produced only two witnesses, Kamran Khan and Jesse Lee, who testified to being temporarily discouraged from purchasing a D'Pergo guitar after viewing D'Pergo's photo on Sweetwater's website. Dr. Khan, however, testified that he viewed the photo only in Florida. While he testified that he visited New Hampshire after he had purchased D'Pergo guitars, there is no evidence that he

---

[1] This Court's treatment of the CPA's territorial limitation is consistent with how courts have construed territorial limitations in other consumer protection acts. *See e.g. 600 Lb Gorrillas, Inc. v. Fieldbrook Foods Corp.*, 2018 WL 3475495, at *4 (D. Mass. June 19, 2018) (noting that for claims under Massachusetts' CPA, "suffering a loss in Massachusetts, without more" is not enough to satisfy Massachusetts' "center of gravity" territoriality requirement). D'Pergo cites *Berklee College of Music, Inc. v. Music Industry Educators, Inc.*, 733 F. Supp. 2d 204 (D. Mass. 2010) to support its assertion that the ability to access a website in New Hampshire is sufficient to establish that offending conduct occurred within the state. *Berklee College* is inapposite here because it acknowledged the territoriality requirement under Chapter 93A and denied the defendant's Rule 12(b)(6) motion because whether the plaintiff had satisfied the requirement required findings of fact that "are not appropriately made at the pleading stage." *Id.* at 213.

ever received any alleged misrepresentation in New Hampshire.  Similarly, Mr. Lee testified that he viewed the photo only in Malaysia.

In addition, neither Stefan Dapergolas nor Julien Kasper, two other D'Pergo witnesses, offered any testimony to establish that any allegedly offending conduct occurred within New Hampshire. In fact, Mr. Kasper testified that he was informed of the presence of the D'Pergo photo on Sweetwater's website in Massachusetts, and that he dismissed this information because he knew D'Pergo did not sell guitars through Sweetwater. Mr. Kasper was never confused or believed any affiliation existed between D'Pergo and Sweetwater as a result of the photo appearing on Sweetwater's website. Mr. Kasper also never testified to being dissuaded from purchasing a D'Pergo guitar. Moreover, Mr. Dapergolas—the sole principal of D'Pergo—could not have experienced any confusion as a result of the photo appearing on Sweetwater's website since he knew D'Pergo was not affiliated with Sweetwater.

D'Pergo has argued that there must have been a misrepresentation in New Hampshire because Sweetwater's website is available in New Hampshire.  This argument stretches the facts too far.  The mere possibility that someone could have viewed the photograph in New Hampshire is not the same thing as proving that they did.  Moreover, because D'Pergo never showed that a single New Hampshire-based customer associated its headstock with D'Pergo guitars, it is far from clear that even if someone had viewed the photo in New Hampshire they would have been misled regarding any association between D'Pergo and Sweetwater.

Accordingly, any misrepresentations regarding the association between Sweetwater and D'Pergo were received outside of New Hampshire.  D'Pergo offered no evidence of any individual receiving a misrepresentation within New Hampshire as required under *Ortiz* and

*BAE.*  Where D'Pergo failed to adduce any evidence at trial of misrepresentations received within New Hampshire, D'Pergo's CPA claim fails, and judgment must be entered in favor of Sweetwater.

## II.    D'Pergo failed to show that its trade dress—the headstock—acquired secondary meaning.

When a party asserts a trade dress claim via RSA 358-A, as D'Pergo does here, it is required to "show that: (1) its [trade dress] is distinctive; and (2) [defendant's] alleged infringement is likely to cause confusion among consumers."  *Granite State Trade Sch., LLC v. The N.H. Sch. of Mech. Trades, Inc.*, 120 F. Supp. 3d 56, 62 (D.N.H. 2015) (McCafferty, J.); *Gallagher v. Funeral Source One Supply and Equipment Co., Inc.*, 2015 WL 6738733, at *8 n.17 (D.N.H. Nov. 4, 2015) ("[T]his court has previously stated that to succeed on this claim under either federal law *or RSA 358-A:2*, a plaintiff must show, first, that its mark is distinctive, and second, that the defendant's alleged use of the mark is likely to cause confusion among consumers.") (*internal brackets omitted*) (emphasis supplied).

To show that its trade dress is distinctive, D'Pergo needed to demonstrate that it acquired a secondary meaning in the marketplace.  *Gallagher*, 2015 WL 6738733, at *6 (*citing Wal-Mart Stores v. Samarah Bros., Inc.*, 529 U.S. 205, 216 (2000); *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 37 (1st Cir. 2001)).  Demonstrating secondary meaning "requires the trademark holder to establish that 'in the minds of the public, the primary significance of [the mark] is to identify the source of the product rather than the product itself.'" *Philbrick v. eNom, Inc.*, 593 F. Supp. 2d 352, 369 (D.N.H. 2009) (*quoting Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 116 (1st Cir. 2006)).  "Proving secondary meaning has been the downfall of several trademark claims previously brought in this court."  *Id.*  That is because "proof of

secondary meaning entails vigorous evidentiary requirements, ultimately, that a substantial portion of the consuming public associates the mark specifically with the plaintiff's business and, furthermore, that these consumers base purchasing decisions upon seeing the trademark on the product." *Id.* (*internal brackets omitted*) (*citing Flynn v. AK Peters, Ltd.*, 377 F.3d 13, 20 (1st Cir.2004)).

D'Pergo failed to clear this high evidentiary bar. As previously noted, Dr. Khan and Mr. Lee were the only D'Pergo witnesses to testify to recognizing D'Pergo's headstock. Two witnesses—one in Florida and one in Malaysia—do not constitute a substantial portion of the consuming public. Further, a substantial portion of the consuming public could not possibly be familiar with D'Pergo because Mr. Dapergolas testified that it takes him at least several months to make a single guitar and that he has only sold several hundred D'Pergo guitars to date. Accordingly, D'Pergo has failed to adduce sufficient evidence to show that its headstock had acquired a secondary meaning.

To the extent that D'Pergo relies on the presumption of its secondary meaning based on its registration, such reliance is misplaced. Under the Lanham Act, "the registration and its accompanying presumption of secondary meaning operate only prospectively from the date of registration, i.e., the date on which the Patent and Trademark Office ("PTO") determined that secondary meaning had been acquired." *Converse, Inc. v. International Trade Commission Skechers U.S.A., Inc.*, 909 F.3d 1110, 1117 (Fed. Cir. 2018). "This rule is a straightforward application of the Lanham Act, pursuant to which the PTO examines whether secondary meaning has been acquired at the time of registration." *Id.* (citing 15 U.S.C. § 1052(f)). In *Converse*, the Court held that given the multiyear gap between infringement and registration,

"registration cannot even be probative of secondary meaning at the time of infringement." *Id.* at 1118.

D'Pergo's headstock was registered on August 23, 2016. *See* Plaintiff's Exhibit 3. Any alleged infringement by Sweetwater ended on January 6, 2016. *See* Defendant's Exhibit N. Where D'Pergo's registration post-dates the infringement period, D'Pergo is not entitled to any presumption of secondary meaning of its headstock. In fact, consistent with the Court's opinion in *Converse*, such registration likely offers little probative value as to any secondary meaning of D'Pergo's headstock during the time of infringement. Accordingly, where D'Pergo failed to adduce sufficient evidence at trial to establish a secondary meaning of its trade dress, D'Pergo's CPA claim also fails on this basis, and Sweetwater is entitled to judgment in its favor.

**III.    D'Pergo failed to establish a likelihood of confusion among consumers.**

As noted above, in addition to showing distinctiveness under the CPA, D'Pergo also needed to establish a likelihood of confusion among consumers as a result of Sweetwater's use of the photo. *See Granite State Trade School*, 120 F. Supp. 3d at 62. In weighing likelihood of confusion, whether under federal law or the CPA, the Court considers the so-called "*Pignons* Factors."  *Id.* at 64 (*citing Pignons S.A. de Mecanique de Precision v. Polaroid Corp.*, 657 F.2d 482 (1st Cir.1981)). The *Pignons* Factors are:

(1) the similarity of the marks;

(2) the similarity of the goods;

(3) the relationship between the parties' channels of trade;

(4) the relationship between the parties' advertising;

(5) the classes of prospective purchasers;

(6) evidence of actual confusion;

(7) the defendants' intent in adopting the plaintiff's mark; and

(8) the strength of the plaintiffs' mark.

*Pignons*, 657 F.2d at 487.  Although no one factor is determinative, each must be considered.  *Id.* at 487-92.

As to *similarity of the marks*, the fact that D'Pergo's photo appeared on Sweetwater's website is not dispositive in the likelihood of confusion analysis. In fact, courts have found no likelihood of confusion between nearly identical marks where the other *Pignons* Factors weighed in favor of doing so. *See, e.g., Astra Pharma. Prods., Inc. v. Beckman Instruments, Inc.*, 718 F.2d 1201, 1209 (1st Cir. 1983) (no likelihood of confusion between ASTRA and ASTRA); *Riverbank, Inc. v. River Bank*, 625 F. Supp. 2d 65, 76 (D. Mass. 2009) (no likelihood of confusion between RIVERBANK and RIVER BANK).

Regarding *similarity of the goods*, although the parties both sell guitars, the guitars they sell are different. Notably, courts are wary of "broad generalizations" of products, *Riverbank*, 625 F. Supp. 2d at 72, because  "[b]y increasing the level of generality, any products can be made to appear to fall in the same class." *Alta Vista Corp., Ltd. v. Digital Equip. Corp.*, 44 F. Supp. 2d 72, 77 (D. Mass. 1998). At trial, the founder and CEO of Sweetwater, Chuck Surack, testified that Sweetwater has never sold a D'Pergo guitar or a D'Pergo headstock. Further, Mr. Surack confirmed that Sweetwater does not sell any "bespoke" guitars.  By contrast, Mr. Dapergolas testified that his D'Pergo guitars are bespoke, made from high-end materials unique to New

Hampshire, and customized for each D'Pergo customer. Accordingly, the parties sell different product.

The parties also target different groups of customers through different channels of trade. "Where the parties have different customers and market their goods or services in different ways, the likelihood of confusion decreases." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 637 (6th Cir. 2002); *see also Riverbank*, 625 F. Supp. 2d at 72-73 (finding stark dissimilarities between the parties' channels of trade, channels of advertising, and prospective purchasers despite both parties offering "financial services" in Massachusetts). Further, if the goods are sold to sophisticated customers, confusion is less likely. *Pignons*, 657 F.2d at 489 (noting that sophisticated purchasers are least likely to be confused by the similarities of products' marks).

With respect to *channels of trade*, Sweetwater is a mainstream retailer that sells guitars on the web and in a single brick and mortar store. As noted by Sweetwater's CFO, Greg Clark, Sweetwater sells millions of electric guitars annually. In contrast, D'Pergo sells custom-made guitars only to customers who contact its owner, Mr. Dapergolas, directly. After the initial contact to D'Pergo, customers often spend hours discussing specific preferences with Mr. Dapergolas. Thus, the experience buying a D'Pergo guitar is markedly different than purchasing an electric guitar from Sweetwater's website.

As to the parties' *advertising*, Sweetwater's Chief Digital Officer, Mike Clem, testified to the various ways in which Sweetwater markets its products, including the Guitar Gallery on its website, search engine optimization, Google Adwords, and social media. Mr. Clem also

testified to the fact that Sweetwater spends millions of dollars annually on these various advertising techniques. In contrast, D'Pergo does not use social media and presented no evidence of any advertising expenses. D'Pergo further claimed that it took efforts to make its website more difficult to locate using Google. About the only evidence that D'Pergo presented of competitive advertising were two exhibits showing advertisements for Sweetwater and D'Pergo in different magazines around the same time.

Further, the parties' *targeted customers* are different. Mr. Dapergolas testified that his D'Pergo guitars typically retail between $10,000 - $20,000. In addition, D'Pergo customers are sophisticated consumers with detailed knowledge about guitars. For example, Dr. Khan testified about the hours-long phone conversations he had with Mr. Dapergolas prior to purchasing one of his guitars. Mr. Dapergolas similarly offered testimony confirming that he typically has ongoing and detailed communications with clients in order to create a bespoke guitar suitable to the customers' individual preferences. In contrast, Sweetwater customers include novice guitar players, who can purchase guitars for under $1,000 on Sweetwater's website. As Mr. Dapergolas acknowledged under questioning, he had previously testified that D'Pergo was analogous to Gucci while Sweetwater was analogous to Wal-mart.

Regarding *actual confusion*, D'Pergo's scant evidence of actual confusion over a 12-year coexistence period suggests no likelihood of confusion among consumers. *See, e.g., Astra*, 718 F.2d at 1207-08 (two instances of actual confusion over four years is *de minimis*); *see also Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.*, 103 F.3d 196, 200-01 (1st Cir. 1996) ("Just as one tree does not constitute a forest, an isolated instance of confusion does not prove probable confusion."). At trial, D'Pergo was able to offer just two

instances of temporary confusion over the 12-year period of Sweetwater's use of the photo. While Dr. Khan and Mr. Lee testified to being temporarily discouraged from purchasing a D'Pergo guitar after viewing the photo on Sweetwater's website, each eventually resolved any confusion they had and eventually purchased guitars from D'Pergo. Accordingly, these two instances of temporary confusion over a 12-year period are *de minimis*, and in fact, indicate that confusion was unlikely.

With respect to Sweetwater's *intent*, D'Pergo did not produce any direct evidence at trial that Sweetwater acted willfully. While D'Pergo's expert, Jeff Sedlik, testified to the change in the file format of the photo from a JPEG to a GIF, among other minor changes, Mr. Sedlik was in no position to testify that Sweetwater acted willfully. Further, Sweetwater's witness, Mr. Clem, testified that the file format change likely occurred innocently through a recommendation from the Photoshop application. Specifically, Photoshop made file format recommendations to users for photos uploaded to a website to increase the speed of the website's loading time. To the extent these actions are probative of intent, they go only to the intent to use the photo, not the intent to use the D'Pergo trade dress visible within the photo to signify an association between Sweetwater and D'Pergo.

Finally, regarding the *strength of D'Pergo's mark*, Mr. Surack, who has been in the guitar retail business for 40 years, testified that he never heard of D'Pergo prior to this suit. Mr. Surack further testified that, even after discussing the case with friends and colleagues, he did not know of anyone who had heard of D'Pergo. Further, aside from the isolated testimony of Dr. Khan and Mr. Lee, D'Pergo failed to provide any evidence of the strength of its mark.

Where D'Pergo cannot show a likelihood of confusion among consumers as a result of the photo appearing on Sweetwater's website, D'Pergo's CPA claim also fails on this basis, and Sweetwater is entitled to judgment in its favor.

### IV.    D'Pergo is not entitled to actual damages.

Even assuming that D'Pergo had adduced sufficient evidence at trial to support its CPA claim, D'Pergo has failed to offer any evidence of actual damages beyond pure speculation, and damages cannot be awarded on a speculative basis. *Pacamor Bearings, Inc. v. Minebea Co., Ltd.*, 918 F. Supp. 491, 508 (D.N.H. 1996) (Recognizing that in a matter arising under RSA 358-A lost profits "damages may not be purely speculative"); *Northeastern Lumber Manufacturers Association v. Northern States Pallet Co., Inc.*, 2011 WL 320619, at *6 (D.N.H. Jan. 31, 2011) (McCafferty, J.) (Acknowledging in an RSA 358-A case "the enduring rule that damages must be established by a reasonable certainty and may not be recovered if purely speculative.") (*internal citations and quotations omitted*).

Dr. Khan and Mr. Lee both testified to subsequently purchasing hundreds of thousands of dollars of D'Pergo guitars. D'Pergo claims that it was damaged because these purchases would have begun sooner but for Dr. Khan and Mr. Lee viewing the photo on Sweetwater's website. The assumption implicit in D'Pergo's argument is that Dr. Khan and Mr. Lee represented an infinite stream of revenue that, once turned on, would continue in perpetuity. In order to support this theory of recovery, it was not enough for Dr. Khan to testify that he delayed his purchases from D'Pergo. He also needed to testify that he would have made those purchases *and* a similar number of purchases in the future to establish that D'Pergo actually lost out on sales as a result of Dr. Khan viewing the photograph. Dr. Khan

did not offer such testimony, and in fact testified that he did not own exclusively D'Pergo guitars, thus suggesting that he still buys from other manufacturers as well.  Dr. Khan also testified to other factors that may have contributed to his initial dissuasion from purchasing a D'Pergo guitar. For example, Dr. Khan had seen mixed reviews online about D'Pergo guitars. During the same time, Dr. Khan was also convinced to purchase a DeTemple guitar by the owner, Michael DeTemple. It took Mr. DeTemple three years to make and deliver that guitar, thus accounting for most of the alleged delay between Dr. Khan seeing the photo and subsequently purchasing a D'Pergo guitar. Similarly, Mr. Lee was a teenager at the time he viewed the photo on Sweetwater's website, and D'Pergo offered no evidence that Mr. Lee had the financial ability to purchase multiple guitars at that time.  Thus, any suggestion that D'Pergo is entitled to recover the revenue from purchases that Dr. Khan and Mr. Lee did make in addition to revenue from purchases they did not make is too speculative a basis on which to award damages.

Moreover, D'Pergo's own witness, Ted Rasch, testified that D'Pergo's production capabilities could not meet the demand for guitars in his store.  Mr. Dapergolas himself also admitted that it can take anywhere from four months to three years to build a guitar.  Thus, even if the evidence regarding lost purchases of Dr. Khan and Mr. Lee were not unduly speculative, D'Pergo would still fail to establish damages because it did not show it had the capacity to manufacture hundreds of thousands of dollars in additional guitars during the period it alleges lost sales.  Accordingly, D'Pergo has not proven any actual damages with reasonable certainty.

## CONCLUSION

Judgment must be entered against D'Pergo on its CPA claim because D'Pergo presented no evidence at trial of any consumer receiving misrepresentations within New Hampshire. In fact, D'Pergo presented evidence only of misrepresentations received in Florida and Malaysia, which confirms that the locus of any offending conduct was outside this State. In addition, D'Pergo's CPA claim fails because D'Pergo failed to adduce sufficient evidence at trial that its headstock is distinctive. Recognition of the headstock by two individuals does not satisfy the high evidentiary burden for showing secondary meaning among a substantial portion of the consuming public. Moreover, D'Pergo failed to show a likelihood of confusion among consumers as a result of the photo appearing on Sweetwater's website; to the contrary, two instances of temporary confusion over a 12-year period suggests that confusion was unlikely.

Dated:  July 9, 2021

Respectfully submitted,
Attorneys for Defendant,
SWEETWATER SOUND, INC.
Bernstein, Shur, Sawyer & Nelson, P.A.

/s/ Edward J. Sackman
Edward J. Sackman, Bar No. 19586
Richard C. Gagliuso, Bar No. 874
Lauren M. Pritchard, Bar No. 271587
670 N. Commercial Street, Suite 108
P.O. Box 1120
Manchester, New Hampshire 03105
(603) 623-8700
nsackman@bernsteinshur.com
rgagliuso@bernsteinshur.com
lpritchard@bernsteinshur.com